# UNITED STATES OF COURT OF APPEALS
# FOR THE TENTH CIRCUIT

**ANTHONY THOMPSON**

v.                                                              No: 23-3103

**GLEN VIRDEN, et al...**

## STATEMENT OF THE ISSUES

### ISSUE I

**Whether district court erred when it awarded summary judgment holding good faith applied without first considering whether the defendant's use and disclosure of the extra territorial communications was unlawful?**

### ISSUE II

**Did the district court's summary the judgment award holding good faith for the defendant's unlawful interception misapply the facts to the Workman panel decision?**

## STATEMENT OF THE CASE

Mr. Thompson initially filed his complaint against defendants Timothy Brown, Tony Wolf, and Glen Virden on May 14, 2015. See District of Kansas, Case No. 15 cv 3117-HLT, ECF Doc. 1. (Hereafter Thompson Doc#). The complaint charged the defendants with the unlawful interception, use, and disclosure of extra territorial wire, oral, and electronic communications. Id. After a series of litigation the plaintiff filed a motion to amend the complaint which was partially granted by the district court. See Thompson Doc. 70. The defendants individually responded with motions to dismiss which were eventually granted by the district court on good faith

1

grounds. See Thompson Doc. 111. After unsuccessfully filing a motion to reconsider Mr. Thompson filed a notice to appeal from the district court's order. See Thompson Doc. 137. After full briefing this court affirmed part of the district court's order but remanded further proceedings on the statutory wiretap claims involving the interception use and disclosure of the extra territorial communications. See Thompson v. Platt, No. 19-3072 (10th Cir. May 12, 2020). Back in the district court the case was consolidated with co-plaintiff Banks case for purposes of discovery. See Thompson Doc. 170. Counsel was also appointed to assist in the discovery phase. Id. After substantial litigation the defendants individually filed summary judgment. See Banks v. Opat, No. 15-3093 ECF 174,176,180 (Hereafter Banks Doc.). The plaintiffs jointly responded that the undisputed facts and binding precedent showed summary judgment should not be granted because the communications were knowingly unlawful at the time of the defendant's conduct. See Banks Doc. 198. The district court awarded the defendants summary judgment under good faith for the unlawful interception claim. See Banks Doc. 208. The district court was silent on how the use or disclosure elements were relevant to summary judgment under good faith. Id. This appeal follows.

### STATEMENT OF FACTS RELEVANT TO THE ISSUES PRSENTED

It is not disputed that the wiretap orders in question impermissibly authorized interceptions to take place in any jurisdiction in the United States. See United States v. Banks, Case No. 13-cr-40060-DDC (ECF 650) (Hereafter Criminal Doc.). There is also no dispute that defendants Tony Wolf, Timothy Brown, and Glen Virden were all head law enforcement officials from their respected agencies. See Banks Doc. 174-4 (Glen Virden Declaration). The defendants all endorsed their signatures on the unlawful wiretap order which only required a district judges' of competent jurisdiction. Id. The reasoning, however, behind why the defendants signed the

order is different based on each defendant's response. See Doc. 174 at 10. (Virden explaining he signed the wiretap order to show he understood that minimization was required); But See Doc 176 at 15 (Brown explaining that his signature was simply an acknowledgment that he received the wiretap order while noting he never researched the law assumed the order was valid); But See Also Doc. 180 at 2-3 (Wolf explaining he signed the order because he was required to sign it but does not recall if he read the order or even saw the order prior to signing). The state wiretap statute, federal wiretap statute, and precedential case law all informed the defendants that the extra jurisdictional wiretap orders they authorized, to intercept, use and disclose to federal agencies were unlawful at the time of their actions. See 18 U.S.C 2518 (3)(territorial jurisdiction); KSA 22-2516 (3)(territorial jurisdiction); United States v. Mcnulty 729 F.2d 1243, 1266 (10th Cir. 1983)(The federal wiretap statute, 18 U.S.C. § 2516(2), requires federal courts to defer to state law "on the question of the validity of [a] wiretap order obtained in state court under state law) ; See Also State v. Adams 2 Kan. App. 2d 135, 138, 576 P.2d 242 (1978)( district judge in Kansas only has authority to authorize interceptions of wire communications within his judicial district).

The defendant's liability took place in 2013. In 2013 both Mcnulty and State v. Adams were precedent which if researched with a minimum effort would have easily been located by the defendants. See Doc. 197 at 25. The district court committed several errors when it relied exclusively on United States v. Workman, 863 F.3d 1313 (10th Cir 2017) to award summary judgment. See Doc. 208. First, the Workman panel decision did not overturn the Mcnulty panel decision as they focused on two different areas of law. Mcnulty stands for the proposition that the federal law itself requires that state law controls the admissibility of a state issued wiretap being used in federal court. See Mcnulty, 729 F.2d 1265. Because this case involves a state issued

wiretap being used in federal court the Mcnulty panel decision still controls the current case. See United States v. Banks, Case No. 13-cr-40060-DDC (ECF 517) (applying Mcnulty/Adams to the determination of the validity of the state wiretap orders use in federal court). Second, the defendants could not have become aware of the rational in Workman until four years after they became liable for their actions. The mens rea in this case took place in 2013 while the Workman decision did not become law until 2017. Third, the district court failed to acknowledge the essential part of the panel decision from Workman which is relevant to this case. When deciding whether officers receive good faith objective reasonableness sometimes turns to the clarity of the existing law. See United States v. Workman, 863 F.3d at 1321. The district court brushed past the clarity of the existing law (Mcnulty/Adams) which alerted the defendants that their actions of intercepting, using, and disclosing the extra territorial communications was unlawful. Finally, and maybe most important, the district court also failed to acknowledge two of the plaintiff's key elements from his complaint, which went undisputed prior to summarily dismissing the complaint. The complaint, response to summary to judgment, Statement of Facts, and Declaration by the plaintiff all charged defendants with unlawful use and disclosure but the district court did not even recognize that fact prior to awarding summary judgment. See Doc.208 at 9-10. The uncontested facts from the record shows that Judge Platt only authorized the evidence to be used for evidence of state of Kansas crimes. See Doc. 196-2 at par. 7. But the defendants in this case used and disclosed the unlawful interceptions to further a federal investigation by the United States Attorney's Office regarding federal crimes which are distinct from those state crimes authorized by Judge Platt in the state wiretap order. Id. Further the record is devoid of any evidence from the criminal case, the discovery or disclosure phase of the civil case which would lead a rational trier of fact to believe that Judge Platt authorized a subsequent

wiretap order allowing the evidence to be used for the federal crimes. This court has stated the exclusive remedy for a past disclosure in violation of 18 U.S.C. § 2517(5) is the civil action created by 18 U.S.C. § 2520. See United States v. Levy, 905 F.2d 326, 329 (10th Cir. 1990).

## SUMMARY OF THE ARGUMENT

Mr. Thompson presents two issues on appeal. First, he argues that the district court erred in awarding summary judgment for the defendants on good faith grounds. The district court failed to consider how the undisputed facts surrounding the use and disclosure claim applied to the relevant law. Had the district court acknowledged how the law applied to the facts from the use and disclosure claim the district court would have had no option but to allow those two claims to move forward to trial. The facts from the wiretap orders showed that Judge Platt only authorized the interceptions to be used and disclosed as evidence of crimes against the state of Kansas. The declaration filed by the plaintiff states the crimes investigated and authorized in the wiretaps were evidence from crimes against the state of Kansas. There is no evidence in the record that Judge Platt subsequently authorized the use and disclosure of the communications to be used for evidence of federal crimes as mandated in 18 U.S.C 2517(5). Second Mr. Thompson argues that the district court erred when it relied on United States v. Workman, 863 F.3d 1313 (10th Cir. 2017), instead of United States v. Mcnulty, 729 F.2d 1243 (10th Cir. 1983). Workman was a case where a federal warrant was used to install software on a child pornography website. The magistrate who issued the warrant was located outside the Tenth Circuit. Using the software, the FBI was able to catch Workman in the act of downloading child pornography. Id Workman 863 F.3d at 1315-16. The district court suppressed the evidence, and this court overturned the district court finding good faith was applicable. Mcnulty on the other hand is on point precedent to the facts of this case. Mcnulty stands for the proposition that the federal statute itself requires

this court to defer to state law on the question of the validity of the wiretap order obtained in state court under state law. Id Mcnulty, 729 F.2d at 1266. Had the district court turned to Mcnulty prior to making its good faith determination summary judgment would not have been denied. This is because under state law the wiretaps in question were clearly unlawful based on state binding precedent at the time of the defendant's actions. See Workman at 1316. It is not objectively reasonable for law enforcement to violate binding precedent and then receive good faith before this Court. The district court also was required to apply Mcnulty's rule prior to making its summary judgment ruling. The district court failed to consider the undisputed facts and apply them to binding precedent from Mcnulty. The facts from Workman are clearly distinguishable from the facts of this case. Had the district court reviewed the facts from this case and applied the Workman panel's reasoning the district court would have come up with a different conclusion. For example, in Workman the magistrate who authorized the warrant was in Eastern District of Virginia which was the same location of the intercepting device. Id Workman at 1317. The fact from this case shows that the intercepting device was located at the KBI office in Shawnee County. See Banks Doc. 174-4 at pg. 4. (Glen Virden Declaration). Judge Platt the authorizing judge was located Geary County the Eight Judicial District and only had jurisdiction under state law to authorize interceptions received in Geary County. See Thompson Doc. 54 at 1; See Also Banks Doc. 174-4 at pg. 4. Further troubling is the fact that the actual order was unlawful under precedential state and federal law at the time of the wiretaps. See United States v. Mcnulty, 729 F.2d 1243 (10th Cir. 1983) -2516(3)(territorial jurisdiction; United States v. Mcnulty 729 F.2d 1243, 1266 (10th Cir. 1983)(The federal wiretap statute, 18 U.S.C. § 2516(2), requires federal courts to defer to state law "on the question of the validity of [a] wiretap order obtained in state court under state law); See Also State v. Adams, 2 Kan. App. 2d 135, 138, 576

P.2d 242 (1978) )( district judge in Kansas only has authority to authorize interceptions of wire communications within his judicial district). Other facts favor the district court denying the defendant's summary judgment. The defendants failed to even attempt to research the relevant wiretap law prior to intercepting, using, or disclosing the communications. See Banks Doc. 174-4 at pg. 8 ( Glen Virden declaration explaining he did not make a conscious evaluation at the time the wiretap orders); See Banks Doc. 176 (Brown's statement of facts admitting to signing the wiretap order and arranging for Task force to have headquarters in Junction City and conduct investigative duties); See Banks Doc. 180 (Wolf statement of facts explaining he does not recall if he saw or even read the wiretap order prior to signing it).

.

## ARGUMENT

### ISSUE #1

**THE DISTRICT COURT ERRED WHEN IT AWARDED SUMMARY JUDGMENT HOLDING GOOD FAITH WITHOUT FIRST CONSIDERING WHETHER THE FACTS FROM DEFENDANT'S USE AND DISCLOSURE OF THE EXTRA JURISDICTIONAL COMMUNIATIONS WERE UNLAWFUL.**

*Standard of Review*

The facts of this case, adduced for summary judgment purposes, are presented in the light most favorable to appellant, and he must be given the benefit of every reasonable inference therefrom. See Mann v. United States, 204 F,.3d 1012, 1016 (10th Cir. 2000). Under our interpretation of Title III…. First, the wording of the statute, while broad, requires that interceptions be intentional before liability attaches, thereby excluding inadvertent interceptions. Second, Title III liability for use or disclosure of the contents of an intercepted communication

requires both intentional conduct and knowledge that "the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection."

*Analysis*

The district court in its memorandum and order awarded Virden, Brown, and Wolf summary judgment. See Banks Doc. 208 at 6-10. While the district court thoroughly explained why it awarded summary judgment for the interception claim it totally ignored two key elements which were pleaded in the complaint and factually undisputed within the record. Id. The facts from the record clearly indicate that Mr. Thompson pleaded that Wolf, Brown and Virden used and disclosed Mr. Thompson's private communications in violation of the Kansas Wiretap Act. See Thompson's Doc. 54 at 7(***Thompson's Amended* Complaint** *pleading* "Tony Wolf, Timothy Brown, and Glen Virden violated the Kansas Wiretap Act when they intercepted, disclosed used, or procured others to intercept disclose or use plaintiffs' private communications). The complaint also lodged similar claims against the defendants under the Federal Wiretap Act. Id at 7-8 (similar claims pleaded under the Federal Wiretap Act). The facts also allege that the defendants all were aware that the communications were intentionally being intercepted. Id.

Mr. Thompson also filed a declaration which currently stands undisputed by any factual evidence within the record. See Banks Doc. 196-2 at 2(***Thompson Declaration*** "The only crimes authorized to be used and disclosed pursuant to the wiretap orders were State of Kansas crimes. The defendant's used and disclosed interceptions to further proceedings regarding federal crimes which were distinct from those state crimes authorized in the state wiretap order"). 18 U.S.C 2517(5) requires a subsequent application and order before such disclosure may occur. The fact from this case shows pursuant to 2517(5) no such subsequent order was granted, and neither such order or application were ever produced in discovery in this case or the underlying criminal case.

See Banks Doc, 196-2. This Court has reminded the lower courts that where law enforcement intercept communications relating to crimes "other than those specified in the order he or she *must* obtain judicial permission before disclosing those communications, or evidence derived therefrom in a proceeding. See United States v. Levy, 905 F.2d 326, 329 (10th Cir. 1990) (citing 18 U.S.C. 2517(5)). Based on personal knowledge obtained from witnessing dozens of pretrial and post-trial hearings in the criminal case Mr. Thompson declared that calls and text messages as well as information derived from those calls and text messages were disclosed to federal law enforcement and or federal prosecutors by the defendants or people who were procured to do so by defendants). Banks Doc. 196-2 at 2-3. There is no doubt that the crimes authorized to be used and disclosed in the wiretap orders were only state of Kansas crimes. Id. There is also no doubt based on a review of the facts that prior to the evidence being turned over to the Federal authorities the defendants took turns monitoring and collecting data about the calls and text as part of their investigation. See Banks Doc. 174-4 at 5 (Glen Virden Declaration). Because the defendants failed to obtain a subsequent order authorizing the use and disclosure for evidence of federal crimes which led to the federal indictment and conviction 18 U.S.C 2517(5) was violated. Even more damaging is the fact is a district court judge purporting to authorize interception contrary to the explicit language of the statute (and to the bounds of the entire United States) is by itself a sufficient fact for a rational factfinder to conclude that Brown and others should have known the orders were unlawful or at least should have investigated further. See Quigley v. Rosenthal, 327 F.3d 1044, 1070-71 (10th Cir. 2003) (criticizing defendants for failing to research the disclosure and use issue). The exclusive remedy for a past disclosure in violation of 18 U.S.C. § 2517(5) is the civil action created by 18 U.S.C. § 2520. See. Levy, 905 F.2d at 329. The district court committed error by awarding summary judgment without first addressing the facts

viewed in favor of the non-moving party with all relevant inferences and then proceeding to review the relevant law surrounding the use and disclosure claim.

## The Kansas Crimes Authorized in The Wiretap Orders Are Distinct From The Crimes Charged and Prosecuted in Federal Court

The facts from the record show that the state authorized wiretaps did not explicitly authorize the use or disclosure of the communications for evidence of federal crimes. See Banks Doc. 196-2 (all wiretaps only authorized the use and disclosure for evidence of crimes against the State of Kansas). The complaint and undisputed facts from the record charges the defendants with using and disclosing the unlawful communications to further an investigation to federal authorities as evidence of crimes against the Untied States of America. See Thompson's Doc. 54 at 3; See Also Banks Doc. 196-2 at 2-3. The facts reveal that there was no subsequent authorization permitting the defendants to use and or disclose the communications for evidence of federal law violations. Id. Mr. Thompson presumes the defendants will argue that the state crimes authorized in the state wiretap to use and disclose the unlawful communications are very similar if not identical to the elements of the crimes used by federal authorities. State and federal offenses, no matter how similar they may be to our distinct crimes under the law. The dual-sovereignty doctrine recognizes that "a crime under one sovereign's laws is not `the same offence' as a crime under the laws of another sovereign. See Gamble v. United States 139 S. Ct 1960,1964 (2019). Therefore, "a single act ... may subject a person to successive prosecutions if it violates the laws of separate sovereigns. See Puerto Rico v. Sanchez Valle, 136 S. Ct 1863, 1867 (2016).

The facts from the record indicate that there was no subsequent authorization allowing the use and disclosure of the communications for evidence of federal crimes. See Banks Doc.

196-2. The record also indicates that Mr. Thompson personally witnessed the use and disclosure of the communications in a number pretrial and post-trial hearings in federal court. Id. The statue requires a subsequent authorization prior to law enforcement using the communications for evidence of crimes distinct from the ones authorized in the wiretap order. See 18 U.S.C 2517(5). The defendants failed to obtain such authorization. There is no remedy for past violations in criminal proceedings. See United States v. Levy, 905 F.2d 326, 329 (10 Cir. 1990) ("Even if the use of those witnesses violated Title III, Levy would not have been entitled to the dismissal of the CCE count. The exclusive remedy for a past disclosure in violation of 18 U.S.C. § 2517(5) is the civil action created by 18 U.S.C. § 2520"). Mr. Thompson followed the instructions of this Court, but the district court ignored the entire use and disclosure claim. See Banks Doc. 208 at 6-9. The district court therefore committed a reversible error when it failed to address the use and disclosure elements prior to awarding summary judgment. Id.

## ISSUE II

**THE DISTRICT COURT'S SUMMARY JUDGMENT AWARD HOLDING GOOD FAITH FOR THE DEFENDANT'S UNLAWFUL INTERCEPTIONS VIOLATED SEVERAL OF THIS COURT'S PRECEDENT.**

*Standard of Review*

The facts of this case, adduced for summary judgment purposes, are presented in the light most favorable to appellant, and he must be given the benefit of every reasonable inference therefrom. See Mann v. United States, 204 F,.3d 1012, 1016 (10th Cir. 2000). Under our interpretation of Title III.... First, the wording of the statute, while broad, requires that interceptions be intentional before liability attaches, thereby excluding inadvertent interceptions. Second, Title III liability for use or disclosure of the contents of an intercepted communication requires both intentional conduct and knowledge that "the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection."

*Analysis*

The district Court understood that the federal law itself requires its deference to state law on the question of validity of the wiretap order obtained in state court under state law. See Banks Doc. 208 (citing United States v. Mcnulty, 729 F.2d 1243, 1266 (10th Cir. 1983). Even though the precedent from Mcnulty is spot on precedent in determining if the defendants should be awarded summary judgment the district court turned to United States v. Workman, 863 F.3d 1313 (10th Cir. 2017). See Banks Doc. 208 at 7-10. Workman is a child pornography case surrounding a federal issued warrant which the defendant was granted suppression in the district court because the magistrate lacked jurisdiction under Rule 41(b). The problem with the district court's decision is 18 U.S.C 2516 (2) is the statue which controls the validity of state issued wiretaps. See United States v. Mcnulty, 729 F.2.d 1243, 1266 (10th Cir. 1983). The district court turned to United States v. Workman, 863 F.3d 1313 (10th Cir. 2017) to determine whether good faith applied to the defendants. See Banks Doc. 208 at 6-10. The problem with the district court's decision is the Workman court dealt with interpretation of the lack of jurisdiction from federal issued warrant under Rule 41(b). Id Workman 863 F.3d at 1316. Had the district court applied the

Workman reasoning to the facts from the instant case a different result would have been merited. Mr. Thompson will review the facts from the current case and apply Workman's reasoning to those facts. First for the sake of argument the Workman court assumed the magistrate lacked jurisdiction to issue the warrant. Id. It then considered whether a well-trained officer would have known the warrant was invalid despite the magistrate's authorization. Id at 1320. The district court in this case started with a similar presumption that the executing officers acted in good faith. See Banks Doc. 208 at 8. After that initial legal finding by the district court the Workman reasoning does not line up with the facts from the instant case. First in Workman the software was located on a government server which was located within the same district as the authorizing judge. See Workman at 1320. Unlike Workman our case factually shows the government server was located outside the district of the authorizing judge. See Banks Doc. 174-4 at pg. 6. Then the Workman panel found all the information yielded from the search would be retrieved in the same district as the authorizing judge. Id Workman at 1320. But the fact from our case shows all the information was searched, gathered, and obtained outside the district of the authorizing judge's jurisdiction. Id Banks Doc. 174-4 at pg. 6. (Glen Virden Declaration stating all intercepting equipment and law enforcement monitoring will take place in Topeka Kansas even though the judge's jurisdiction was Junction City (Geary County)). There is on more fact which the district court did not consider in applying Workman. There was a clear violation of state and federal law. Both 18 U.S.C 2518 (3) and KSA 22-2516 (3) mandate that interceptions can only take place within the authorizing judges jurisdiction. Under federal law to determine the validity of state issued wiretaps a court is to turn to state law. See United States v. Mcnulty, 729 F.2.d 1243, 1266 (10th Cir. 1983). Turning to state law it was clear that when the law enforcement defendants signed the wiretap order to intercept anywhere in the entire United States they knew or should

have known they were acting unlawful for several reasons. See State v. Adams 2 Kan. App. 2d 135, 138, 576 P.2d 242 (1978) (district judge in Kansas only has authority to authorize interceptions of wire communications within his judicial district). Even Workman warned the district court that objective reasonableness sometimes turns on the clarity of existing law. Id Workman 863 F.3d at 1321.

The district court awarded the law enforcement defendants good faith using the application of the principles from Workman finding the defendants action were in reliance on the judge's authorization. See Doc. 208. The facts show that the defendants authorized the order themselves. See Banks Doc. 174-4. The law expressly forbidden extra territorial interceptions at the time the defendants signed the initial wiretap order. See KSA 22-2516 (3). The defendants either knew or should have known their actions of singing the initial wiretap order was unlawful. See United States v. Gonzales, 399 F.3d 1225, 1230 (10th Cir. 2005) (a reasonably well-trained officer should have known of the order's deficiency despite the judge's authorization. This clear precedent alone is a fact which would lead a rational trier of fact to infer in favor of the plaintiff for summary judgment purposes.

Also, there was explicit statutory language limiting an authorizing judge's jurisdiction to intercept communications only within its own district. See KSA 22-2516 (3). There was settled case law interpreting the statute making it clear that the authority was limited to a judge's judicial district. See State v. Adams. And there was an order authorized/or signed by the law enforcement defendants which delimited the jurisdiction far beyond the bounds allowed by Kansas Law. See Banks Doc. 174-4. Good faith should not be awarded when viewing the facts from this case while applying all reasonable inferences to the nonmoving party.

*The District Court's Alternative Holding That Wolf and Brown Would Not Be Liable Under the Federal Statute Was Factually Inaccurate*

The district court made an alternative holding via a footnote that Mr. Thompson did not allege any facts supporting the proposition that Brown or Wolf personally participated in the intercepted, use, or disclosed communications. See Banks Doc. 208 at 9. The district court is factually incorrect. There is evidence that both Brown and Wolf signed the initial wiretap order themselves. See Banks Doc. 174-4 at pg. 7. A rational trier of fact could conclude that Brown and Wolf's signature on the wiretap order is evidence of them authorizing the interception use and disclosure of the communications. Id. Further Glen Virden declared that the officers were required to sign the wiretap to document the monitoring officers. Id. Even though Brown and Wolf both signed the wiretap order they both factually state they did not monitor use or disclose any interceptions. At the very least Virden's declaration is sufficient factual dispute to whether Brown and Wolf ever monitored the communications. Mr. Thompson also presented evidence of Brown and Wolf speaking at a public press conference as Lead Law Enforcement Agents. Both defendants addressed the media explaining how hard they personally participated in the investigations. Brown and Wolf signed the wiretap order, Virden declared that the signatures were for monitoring officers, Brown and Wolf also spoke to the media about their personal participation in the investigation. A rational trier of fact could conclude that sufficient evidence that both Brown and Wolf personally participated in the interception use and disclosure of the communications. The district court's alternative holding should also be rejected as a misapplication of the facts at the summary judgment phase.

*Good Faith Does Not Apply to Title III for Mistake of Law*

This Court has made it clear that there is no good faith for Title III for mistake in the law. See Heggy v. Heggy, 944 F.3d 1537, 1542 (10th Cir. 1991). In Heggy the husband argued that he did not know anything was illegal about wiretapping his wife without consent. Id at 1541. The Court held there is no good faith defense for misunderstanding the law. Id art 1542. In this case all defendants claim to not have been aware of the binding precedent from State v. Adams which would have alerted them that their actions were unlawful. Preventing law enforcement from good faithing away their misunderstanding of the law comports with the policy of fairness. See United States v. Nicholson, 721 F.3d 1236, 1242 (10th Cir. 2013). And this rule does not only apply to plain and unambiguous laws. Id at 1241. But See Heggy, 944 F.2d at 1539 (finding Title III to be clear and unambiguous). Another Court held a defendant may invoke the good faith defense reliance on a court order only if he can demonstrate (1) a subjective good faith reliance on a court order that he acted legally pursuant to a court order and (2) that this belief was reasonable. See Charles F. Dahl, 744 F.3d 623 631 (10th Cir. 2014). While the defendants may argue that they had a subjective belief that they acted in reliance on a court order. The facts show that the defendants authorized the order themselves. This fact takes them out of that argument. And there is no way their belief could be considered reasonable standing in the face of binding precedent informing them that their actions were unlawful. Under either decision good faith would not apply in the face of the facts presented in this case.

## CONCLUSION

The defendants affixed their signatures to the wiretap order which authorized the interception use and disclosure of unlawful communications. The law prevented extra jurisdictional interceptions and only allowed for judges (not law enforcement) to issue wiretap authorizations. The district court did not address the use and disclosure clams and had it done so

summary judgment would been denied. Good faith does not apply regardless of which precedent is applied. The case should be remanded with instructions to move forward with the state and federal wiretap laws violation.

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Thompson does not request oral argument in this matter unless the Court believes it would be of assistance.

## CERTIFICATE OF SERVICE

I certify under penalty of perjury pursuant to 18 U.S.C 1746 that on 8-11-23, I Anthony Thompson placed a true and correct copy of this brief in the United States Postal Service at 1823 Stout Street Denver Colorado 80257 and

Respectfully submitted this 10th day of August 2023

*[signature]*

Anthony Thompson
1316 SW Western Avenue apt 1
Topeka Kansas 66604
Acthompson8254@gmail.com



Anthony Thompson
1316 SW Western Ave Apt #1
Topeka Kansas 66604

Clerk
Byron White Court House
1823 Stout Street
Denver, Colorado 80257

US Marshal

7022 2410 0000 5217 8397

U.S. POSTA[GE]
FCM LETTE[R]
TOPEKA, K[S]
AUG 11, 20[23]
$5.8[?]
R2307M15
80257
Retail
RDC 99