Case No. 23-3103

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

**Anthony Thompson,**
*Plaintiff-Appellant*

v.

**Glen Virden, Timothy Brown & Tony Wolf**
*Defendants-Appellees*

---

**Brief of Appellee Tony Wolf**

---

Appeal from the United States District Court for the District of Kansas
Honorable Holly L. Teeter, United States District Court Judge
Case No. 15-3117

---

Respectfully submitted,

FOULSTON SIEFKIN LLP

Eric Turner, KS #25065
7500 College Boulevard, Suite 1400
Overland Park, Kansas 66210
Telephone:  913.498.2100
Facsimile:  913.498.2101
Email: eturner@foulston.com

*Attorney for Defendant-Appellee*
*Tony Wolf*

**No oral argument requested**

## <u>TABLE OF CONTENTS</u>

Table of Contents.................................................................................... 2

Statement of Related Cases.................................................................... 4

Statement of the Issues.......................................................................... 6

Statement of the Case............................................................................ 7

Summary of the Argument.................................................................... 11

Argument and authorities..................................................................... 12

**CERTIFICATE OF COMPLIANCE**................................................. 18

**CERTIFICATE OF DIGITAL SUBMISSION**.............................. 18

**CERTIFICATE OF SERVICE**........................................................ 19

**Attachment: D. Kan. Memorandum and Order, Doc. 208, filed 12/27/2021**

# TABLE OF AUTHORITIES

## *United States Supreme Court Cases*

*Carpenter v. United States*, 138 S. Ct. 2206 (2018) ..................................................... 4

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................... 12

*Dahda v. United States*, 138 S. Ct. 1491 (2018) ....................................................... 15

*Malley v. Briggs*, 475 U.S. 335 (1986) ...................................................................... 16

## Tenth Circuit Court Cases

*Chase Manufacturing, Inc. v. Johns Manville Corporation*, 79 F.4th 1185
(10th Cir. 2023) ...................................................................................................... 12

*Mountain Highlands, LLC v. Hendricks*, 616 F.3d 1167 (10th Cir.
2010) ................................................................................................................. 14, 15

*Pace v. Swerdlow*, 519 F.3d 1067 (10th Cir. 2008) ..................................................... 2

*United States v. Wilson*, 820 F. App'x 763 (10th Cir. 2020) ................................... 15

*United States v. Workman*, 863 F.3d 1313, 1318 (10th Cir. 2017) ...................... 15, 16

## District of Kansas Cases

*United States v. Banks*, 2014 WL 4261344, at *5 (D. Kan. Aug. 29,
2014) ....................................................................................................................... 9

*United States v. Banks*, No. 13-CR-40060-DDC, 2015 WL 2401048,
at *1 (D. Kan. May 15, 2015), *vacated on other grounds by* 138 S.
Ct. 2707 (2018) .................................................................................................. 8, 9

## Statutes

18 U.S.C. § 2515 ........................................................................................................ 9

18 U.S.C. § 2520 ....................................................................................... 11, 13, 15, 16

K.S.A. 22-2517 ........................................................................................................... 9

K.S.A. 22-2518 ........................................................................................... 11, 13, 15, 16

## STATEMENT OF RELATED CASES

Albert Banks has a similar civil appeal pending in this Court based on the same issues as this appeal, though Tony Wolf is not a defendant in that case (*See* below, Related civil appeal). Anthony Thompson had two prior civil appeal based on the same set of facts in this Court. (*See* below, Prior civil appeals).

Banks and Thompson were among 14 criminal defendants charged in a drug-trafficking conspiracy in United States District Court District of Kansas Case No. 13-CR-40060-DDC, which resulted in multiple convictions. The United States Supreme Court vacated the convictions of Thompson and Banks based on *Carpenter v. United States*, 138 S. Ct. 2206 (2018) and the use of cell-site location information (*See* below, Prior criminal appeals of plaintiff). The Tenth Circuit remanded the criminal cases of Banks and Thompson to the district court for a determination of whether their convictions may be upheld on alternate grounds in light of *Carpenter. See United States v. Thompson*, 740 F. App'x 166 (10th Cir. 2018). The district court upheld Banks' conviction. *United States v. Banks*, No. 13-40060-01-DDC, 2019 WL 3412305 (D. Kan. July 29, 2019). The convictions of three other co-defendants were affirmed by the Tenth Circuit (*See* below, Prior criminal appeals of plaintiff's co-defendants).

None of the civil appeals involve the issue of cell-site location information.

Related civil appeal

*Banks v. Opat*, *et al.*, Appeal No. 23-3102 (pending)

Prior civil appeals of plaintiff

    *Banks v. Opat, et al.*, Appeal No. 19-3073, 814 F. App'x 325 (10th Cir. 2020)

Prior criminal appeals of plaintiff

    *United States v. Thompson*, Appeal No. 19-3173, 2021 WL 3826532 (10th Cir. Aug. 27, 2021)

    *United States v. Thompson*, Appeal No. 15-3313, No. 15-3324, 740 F. App'x 166 (10th Cir. 2018)

    *United States v. Banks*, Appeal No. 15-3324, 706 F. App'x 455 (10th Cir. 2017), *vacated by* 138 S. Ct. 2707 (2018)

Prior criminal appeals of plaintiff's co-defendants

    *United States v. Madkins*, 866 F.3d 1136 (10th Cir. 2017)

    *United States v. Thompson*, 866 F.3d 1149 (10th Cir. 2017), *vacated by* 138 S. Ct. 2706 (2018)

    *United States v. Ivory*, 706 F. App'x 449 (10th Cir. 2017)

    *United States v. Johnson*, 878 F.3d 925 (10th Cir. 2017)

    *United States v. Thompson*, 740 F. App'x 166 (10th Cir. 2018)

## CERTIFICATE OF SEPARATE BRIEF

A separate brief is necessary for Tony Wolf because Wolf's participation was limited, thus his argument that he didn't intercept, disclose or use any of Anthony Thompson's communications is unique to him. This argument is substantially different than those of the other appellees.

## STATEMENT OF THE ISSUES

Anthony Thompson brought claims alleging violation of state and federal wiretap laws against former Geary County Sheriff Tony Wolf based on the investigation and prosecution of Thompson and his colleagues for conspiracy to distribute crack cocaine. The district court granted summary judgment on these claims, and Thompson renews his arguments before this Court.

There are up to two issues for this Court's review:

I.      Should the Court affirm the grant of summary judgment in Wolf's favor for alleged violations of state and federal wiretap statutes because there is no evidence in the record that Wolf intercepted, disclosed, or used any of Anthony Thompson's communications.

II.     In the alternative, should the Court affirm the grant of summary judgment in Wolf's favor for alleged violations of state and federal wiretap statutes because Wolf is entitled to statutory good-faith defenses under state and federal wiretap statutes?

\* \* \*

## STATEMENT OF THE CASE

This appeal is about whether the Court should affirm the grant of summary judgment of claims of state and federal wiretap violations brought by Anthony Thompson against Tony Wolf, the former Geary County Sheriff. Thompson and his colleagues came to the attention of Kansas law enforcement officers, and eventually Thompson was convicted in federal court of conspiracy to distribute crack cocaine and four counts of distribution of crack cocaine. District of Kansas Case No. 13-CR-40060-DDC. Thompson and some of his co-defendants filed civil lawsuits against state officials, including Wolf.

Thompson pursued claims against Wolf for alleged violations of state and federal wiretap statutes. The district court granted Wolf's motion for summary judgment based on statutory good-faith defenses under state and federal law. ROA, Vol. VII, at 370-383.[1]

*Background of criminal investigation of Anthony Thompson*

This civil action arises from a criminal investigation into a drug-trafficking conspiracy in northeast Kansas.[2] The Kansas Bureau of Investigation, the Junction City Police Department, the Geary County Sheriff's Office, and the Riley County Police

---

[1] Citations are to the Record on Appeal filed July 7, 2023.
[2] This section includes facts from the records of the criminal case against Banks and his co-defendants, Case No. 13-CR-40060-DDC. *See, e.g., Pace v. Swerdlow*, 519 F.3d 1067, 1072-73 (10th Cir. 2008) (finding court may take judicial notice of court materials).

Department intercepted cellular communications as part of the investigation of Albert Banks, Anthony Thompson, and others.

Steven Opat, then the Geary County Attorney, applied for a wiretap, and on March 5, 2013, a Geary County District Court judge entered orders authorizing the interception of "wire communications" of Thompson and others. Glen Virden, a special agent with the Kansas Bureau of Investigation, executed the wiretap orders with directions to Sprint, Virgin Mobile, and other service providers to intercept communications transmitted to and from the targeted phones as set forth in the orders. Wolf, Virden, and Timothy Brown, former chief of the Junction City Police Department, were among about 70 people who added their signatures to a copy of the wiretap order after it had been issued. ROA, Vol. V, at 163-171. The investigating agents then intercepted phone calls and text messages from Banks' phone and others' phones. Ultimately, federal prosecutors filed charges against Banks and others in federal court.

*Federal court considers motions to suppress in criminal case*

In 2014, the federal district court in Thompson's criminal case suppressed wiretap evidence that was intercepted outside of the state court judge's judicial district. *United States v. Banks*, No. 13-CR-40060-DDC, 2015 WL 2401048, at *1 (D. Kan. May 15, 2015), *vacated on other grounds by* 138 S. Ct. 2707 (2018). The court concluded that suppression was required based on the text of the Kansas and federal wiretap statutes, noting that the judicially created good-faith exception to the Fourth Amendment's exclusionary rule did not apply to the Kansas wiretap statutes. *See id.* at *4-5 (citing

K.S.A. 22-2517, 18 U.S.C. § 2515). But in doing so, the court noted in dicta that the good-faith exception ordinarily would apply because "one would not expect the officers executing the search warrants to have apprehended the subtle, technical jurisdictional defect that forms the basis of the Court's threshold suppression ruling." *Id.* at *3. The court acknowledged that 18 U.S.C. § 2520(d) provides for a good-faith defense to civil liability even though suppression was statutorily required. *Id.* at *4.

In a separate ruling, the same District of Kansas judge denied motions to suppress text messages. *United States v. Banks*, 2014 WL 4261344, at *5 (D. Kan. Aug. 29, 2014). The motions were filed by three of Banks' co-defendants after two wireless carriers did not provide text messages because they believed the wiretap orders encompassed "wire communications" (phone calls) but not "electronic communications" (text messages). *Id.* at *1. In April 2013, the Geary County District Court judge issued orders clarifying that wiretap orders also authorized the interception of text messages. *Id.* at *4. The District of Kansas judge determined that the statutory suppression requirement did not apply to electronic communications and ruled that the intercepted text messages fell within the good-faith exception to the Fourth Amendment's exclusionary rule. *Id.* at *5. Specifically, the criminal court found that "the issuing judge and executing officers both understood the intended scope of the wiretap authorization, and that the authorization included interception of text messages." *Id.* The court expressly found that the executing officers' reliance on this understanding was objective reasonable. *Id.*

9

*Procedural history: The district court granted summary judgement in Wolf's favor*

This lawsuit was filed in 2015. ROA, Vol. I, at 5. The Amended Complaint alleged four counts against four defendants, naming Wolf in each count: Count I alleging violation of the Kansas Wiretap Act, Count II alleging violation of the Federal Wiretap Act, Count II alleging violation of the Fourth Amendment, and Count IV alleging conspiracy to commit the other three counts. ROA, Vol. I, at 29-39.

The district court dismissed all claims in the Amended Complaint in November 2018. ROA, Vol. I, at 40-55. This Court affirmed in part in June 2020, but it remanded to the district court for further proceedings on Thompson's state and federal statutory wiretap claims. ROA, Vol. I, at 117-139. On remand, the district court granted Wolf's motion for summary judgment. ROA, Vol. VII, at 383. Thompson appeals. ROA, Vol. I at 27.

\* \* \*

## SUMMARY OF THE ARGUMENT

This Court should affirm the grant of summary judgment in Tony Wolf's favor for claims alleging violations of state and federal wiretap laws. There is no evidence in the record that shows that Wolf intercepted, disclosed, or used any of Anthony Thompson's communications in violation of state and federal wiretap laws.

In the alternative, Wolf has a complete defense to these claims under Kansas and federal wiretap statutes based on a good-faith reliance on a court order. *See* K.S.A. 22-2518(2), 18 U.S.C. § 2520(d).

\* \* \*

## **ARGUMENT AND AUTHORITIES**

The district court granted Tony Wolf's motion for summary judgment on claims alleging violations of state and federal wiretapping laws. ROA, Vol. VII, at 375-379, 383. The district court ruled that Wolf was entitled to summary judgment based on his statutory good-faith defenses under Kansas and federal law because it was reasonable for him to rely on the state judge's authorization. ROA, Vol. VII, at 375-379. The district court also ruled that Wolf wasn't liable under the federal wiretap statute because Thompson failed to allege any facts that showed Wolf personally intercepted, disclosed, or intentionally used his text messages in violation of federal law. ROA, Vol. VII, at 378-379, n.7. In addition, Wolf presented alternate arguments not ruled on by the district court. ROA, Vol. VII, at 378-379, n.7. For the following reasons, this Court should affirm the district court's grant of summary judgment in Wolf's favor.

### Standard of Review

This Court reviews a summary judgment order de novo, giving no deference to the district court and applying the same legal standard as the district court. *Chase Manufacturing, Inc. v. Johns Manville Corporation*, 79 F.4th 1185, 1195 (10th Cir. 2023). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

12

**A.    Wolf didn't violate state or federal wiretap laws because he didn't intercept, disclose, or use Thompson's communications nor procure anyone to do so.**

Appellee Tony Wolf, the former sheriff of Geary County, is entitled to summary judgment on wiretap claims asserted by Anthony Thompson because Wolf had minimal involvement in the investigation, and there's no evidence in the record that he intercepted, disclosed, or used any of Thompson's communications nor did he procure anyone to do so. Wolf preserved this argument below. ROA, Vol. V, at 135.

Federal wiretap law allows a civil action against a person who intercepted, disclosed, or intentionally used another person's wire, oral, or electronic communication. 18 U.S.C. § 2520(a). Similarly, Kansas wiretap law allows "a civil cause of action against any person who intercepts, discloses or uses, or procures any other person to intercept, disclose or use" any other person's wire, oral or electronic communication. K.S.A. 22-2518(1).

The evidence in the record is that Wolf didn't intercept, disclose, or use any of Thompson's communication. ROA, Vol. V, at 132, 151-152. And there is no evidence in the record to show that Wolf procured any other person to do so. Other than attend one meeting with more than 60 other law enforcement officers, Wolf had no further involvement in the investigation. ROA, Vol. V, at 131-132, 151-152. The district court granted summary judgment on the federal wiretap claim because Thompson didn't allege any facts to show that Wolf personally intercepted, disclosed, or intentionally used his text messages in violation of federal law. ROA, Vol. VII, at 378 n.7.

On appeal, Thompson argues there is some legal significance to Wolf adding his name and signature to a copy of a wiretap order a day after Judge Platt signed it. Opening Brief at 15; ROA, Vol. V, at 168-170. There is no legal significance as Wolf provided evidence that his name and signature was only an acknowledgment of his attendance at a meeting and an acknowledgment of his obligation to keep the investigation confidential. ROA, Vol. V, at 151-152. Thompson also attempts to place significance on Wolf speaking at a post-arrest news conference. Opening Brief at 15. The fact that Wolf spoke as the head of the county sheriff's office at a news conference doesn't show that Wolf himself was personally involved in the investigation. In the 24 seconds that Wolf spoke in the video, he made no statement of his personal involvement in the investigation. He was introduced as an agency head, and he spoke only as an agency head. The context of the video shows that Wolf used "we" to represent multiple agencies working together for long hours, not that he himself worked late hours or long hours as part of the investigation.

Thompson doesn't cite evidence in the record that shows Wolf personally intercepted, disclosed, intentionally used Thompson's communications or procured anyone else to do so. At most, Thompson argues that his Amended Complaint pled that Wolf used and disclosed Thompson's communications. Opening Brief at 8. But Thompson cannot rely on allegations from the complaint to defeat summary judgment. *See Mountain Highlands, LLC v. Hendricks*, 616 F.3d 1167, 1170 (10th Cir. 2010) ("On those issues for which it bears the burden of proof at trial, the nonmovant 'must go

beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to its case in order to survive summary judgment.'"). Thus, Thompson fails to meet his burden to show enough evidence that would allow a jury to find that Wolf violated state or federal wiretap law. Summary judgment should be affirmed on this basis.

      **B.**    **Wolf's good-faith reliance on Judge Platt's court orders is a complete defense under state and federal wiretap statutes.**

Wolf did not violate state and federal wiretap statutes because his "good faith reliance provides a complete defense to Plaintiff's wiretap claims." *See* 18 U.S.C. § 2520(d)(1); K.S.A. 22-2518(2). Wolf preserved this argument below. ROA, Vol. V, at 136-137.

In particular, the Tenth Circuit has held in the suppression context that the good-faith reliance exception "applies even if the magistrate judge had exceeded geographic constraints in issuing the warrant." *United States v. Workman*, 863 F.3d 1313, 1318 (10th Cir. 2017). It is settled as a matter of law that the same extra-territorial language at issue here doesn't render a wiretap order facially invalid. *See Dahda v. United States*, 138 S. Ct. 1491, 1499 (2018) ("The Orders do contain a defect, namely, the sentence authorizing interception outside Kansas, which we set forth above. But not every defect results in an insufficiency."); *United States v. Wilson*, 820 F. App'x 763, 770 (10th Cir. 2020) ("Like in *Dahda*, this language is 'surplus'—it purports to allow interceptions when neither the target phone nor the government's listening post is within the court's territorial

jurisdiction."). Thus, the mistaken inclusion of one sentence didn't give Wolf a reason to question the authority of Judge Platt to enter the wiretap orders.

A law enforcement officer is generally not required to second-guess a judge's decision. *Workman*, 863 F.3d at 1321; *see also Malley v. Briggs*, 475 U.S. 335, 346 n.9 (1986) ("It is sound presumption that the magistrate is more qualified than the police officer to make a probable cause determination, and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable."). In *Workman*, the Court concluded that that law enforcement officers without sophisticated legal training could reasonably rely on a magistrate judge's authorization of a warrant despite a lack of territorial jurisdiction. 863 F.3d at 1320. The district court found similarity between *Workman* and this case, concluding that "it was reasonable for these officers, who are without sophisticated legal training, to rely on the state judge's authorization" and that "it is not an officer's job to research caselaw and correct the judge." ROA, Vol. VII, at 377-378.

The uncontroverted evidence is that Wolf doesn't recall reading the wiretap order and, even if he did, he wasn't aware that any communications would be intercepted outside Judge Platt's judicial district or that Judge Platt lacked legal authority to authorize interception of communications outside his judicial district. ROA, Vol. V, at 151-152. For these reasons, Wolf is entitled to summary judgment based on his good-faith reliance on a court order. *See* K.S.A. 22-2518(2); 18 U.S.C. § 2520(d)(1).

16

## **CONCLUSION**

Wolf is entitled to summary judgment based on his lack of personal participation in intercepting, disclosing, or using Thompson's communication and the statutory defenses of good-faith reliance on a court order or other arguments preserved below.

Respectfully submitted,

FOULSTON SIEFKIN LLP

By: */s/ Eric Turner*
Eric Turner, KS # 25065
7500 College Boulevard, Suite 1400
Overland Park, Kansas 66210
Telephone:  913.498.2100
Facsimile:  913.498.2101
Email: eturner@foulston.com

*Attorney for Appellee Tony Wolf*

17

## <u>CERTIFICATE OF COMPLIANCE</u>

This Memorandum Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this pleading has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Garamond font.

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 2,562 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

## <u>CERTIFICATE OF DIGITAL SUBMISSION</u>

No privacy redactions were necessary in this document. The hard copies submitted to the Court are exact copies of the version submitted electronically. The document is a native PDF document. The digital submission has been scanned for viruses with the most recent version of a commercial virus scanning program, Trellix Endpoint Security, which was most recently updated October 16, 2023. According to the program, the document is virus free.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 16, 2023, I electronically filed the foregoing with the Clerk of the Tenth Circuit Court of Appeals by using the CM/ECF system, which will electronically notify all counsel currently electronically registered with the Court. I will mail, by U.S. Mail, postage prepaid, a copy of this brief to:

Anthony Thompson
1316 SW Western Avenue, Apartment 1
Topeka, KS 66604

*Pro se appellant*

By: <u>*/s/ Eric Turner*</u>
Eric Turner, KS #25065

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**ALBERT DEWAYNE BANKS,**

     **Plaintiff,**

     **v.**                 **Case No. 5:15-cv-03093-HLT-GEB**

**STEVEN L. OPAT, et al.,**

     **Defendants.**

---

**ANTHONY THOMPSON,**

     **Plaintiff,**

     **v.**                 **Case No. 5:15-cv-03117-HLT-GEB**

**GLEN F. VIRDEN, et al.,**

     **Defendants.**

## <u>MEMORANDUM AND ORDER</u>

Plaintiffs Albert Banks and Anthony Thompson[1] bring claims under state and federal wiretapping laws against Defendants Steven L. Opat, Glen F. Virden, Timothy Brown, and Tony Wolf ("Individual Defendants"). They also bring claims against Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS, and T-Mobile USA Inc. ("Carrier Defendants"). All Defendants move for summary judgment. Docs. 173, 175, 177, 179, 181. For the reasons outlined below, the Court grants Individual Defendants' motions for summary judgment. But the Court denies Carrier Defendants' motion for summary judgment.

---

[1]    Banks and Thompson filed their cases separately, both initially proceeding pro se. Banks asserts claims against Opat, Virden, Brown, and Sprint. Thompson asserts claims against Virden, Brown, Wolf, and T-Mobile. The cases have since been consolidated, *see* Doc. 160, and the Court appointed counsel to represent both Plaintiffs. *Id.* Unless otherwise specified, all docket citations are to Case No. 15-03093, which is the lead case.

## I.     BACKGROUND

Starting in February 2012, the Kansas Bureau of Investigation ("KBI"), the Junction City Police Department, the Geary County Sheriff's Office, and the Riley County Police Department jointly conducted a narcotics-trafficking investigation. Doc. 174 at 4; Doc. 198 at 2. The lead law enforcement officer for the KBI during the investigation was KBI Special Agent Glen Virden. Doc. 174 at 3-4; Doc. 198 at 4. The Chief of the Junction City Police Department was Timothy Brown. Doc. 176 at 8; Doc. 197 at 3. Tony Wolf was the Sheriff of Geary County starting in January 2013. Doc. 180 at 2; Doc. 199 at 1. Pursuant to this investigation, then-Geary County Attorney Steven Opat applied for and received several wiretap orders from Judge David Platt in Kansas's Eighth Judicial District. *See, e.g.*, Docs. 174-2 & 174-3. For all the applications, probable cause was supported by Virden's affidavit. *See id.*

In the spring of 2013, Judge Platt issued several wiretap orders. Relevant to Plaintiffs, the initial orders only authorized interception of wire communications (not electronic communications, i.e. text messages). *See* Doc. 174-2 at 1; Doc. 174-3 at 75, 154; Doc. 174-6 at 224. The orders also authorized interception even if the phones were taken outside the territorial jurisdiction of the Eighth Judicial District, which is where Judge Platt sat. *See* Doc. 174-3 at 75, 154; Doc. 174-6 at 224. Subsequent wiretap orders by Judge Platt explicitly authorized interception of electronic communications, but they still applied extra-territorially. *See* Doc. 379-25 at 257; Doc. 379-27 at 270. Other orders in the investigation that were directed at different individuals and phone numbers were later clarified to include text messages because certain carriers refused to intercept messages without clarification from Judge Platt. *See* Doc. 182-13 at 2; Doc. 182-14 at 2. Sprint/Nextel was one of the carriers who sought a clarification order for one of Judge Platt's

wiretap orders, but it did not seek any clarification for the orders at issue in this case. Doc. 182-14 at 2. The clarification orders do not apply to the wiretap orders in this case.[2]

As a result of the investigation, Banks and Thompson were charged in federal court with controlled-substance offenses. Banks and Thompson moved to suppress text messages that were intercepted pursuant to orders that only authorized intercepting wire communications. *Banks*, 2014 WL 4261344, at *1. The court denied the motion to suppress because it determined that text interceptions fell within the good-faith exception to the Fourth Amendment's exclusionary rule. *Id.* at *5. The court did, however, suppress 60,000 communications that were intercepted outside Judge Platt's jurisdiction. Doc. 174 at 15; Doc. 198 at 5. Still, the court noted in one of its subsequent rulings (in dicta) that the executing officers were almost certainly acting in good faith as to the extra-territorial interceptions "because one would not expect the officers executing the search warrants to have apprehended the subtle, technical jurisdictional defect that form[ed] the basis of the Court's threshold suppression ruling." *United States v. Banks*, 2015 WL 2401048, at *3 (D. Kan. 2015). Banks and Thompson were ultimately convicted of multiple controlled substance offenses. *See United States v. Thompson*, 2021 WL 3826532 (10th Cir. 2021) (declining to vacate conviction); Order, *United States v. Banks*, No. 5:13-cr-40060 (D. Kan. 2021), ECF No. 1368 (same).

Plaintiffs separately brought civil actions claiming violations of state and federal wiretap statutes, violations of the Fourth Amendment, and conspiracy. This Court dismissed their claims. *Banks v. Opat*, 2018 WL 6031188, at *8 (D. Kan. 2018); *Thompson v. Virden*, 2018 WL 6046469,

---

[2] Plaintiffs dispute the validity of the clarification orders. Doc. 196 at 8. But Plaintiffs' arguments are unpersuasive, not supported by appropriate evidence, and do not create a genuine dispute. Plaintiffs' arguments are additionally undermined because they relied on one of the clarification orders in their complaints. *See* Doc. 74 ¶13; Amended Complaint, *Thompson v. Virden*, No. 5:15-cv-03117 (D. Kan. 2018), ECF No. 71 ¶13. And the clarification orders were also used in Plaintiffs' criminal proceedings. *See United States v. Banks*, 2014 WL 4261344, at *4 (D. Kan. 2014). Thus, there is no genuine dispute of fact about the clarification orders. *See* Fed. R. Civ. P. 56(e).

at *8 (D. Kan. 2018). The Tenth Circuit affirmed in part, but it remanded for further proceedings

on Plaintiffs' state and federal statutory wiretap claims stemming from Individual Defendants'

interception and disclosure of extra-territorial communications and Carrier Defendants'

interception and disclosure of text messages. *Banks v. Opat*, 814 F. App'x 325, 338 (10th Cir.

2020); *Thompson v. Platt*, 815 F. App'x 227, 240 (10th Cir. 2020). On remand, Defendants have

all moved for summary judgment on these issues. Docs. 173, 175, 177, 179, 181.

## II.    STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party

bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that

genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586-87 (1986). In applying this standard, courts view the facts and any reasonable inferences in a

light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567,

569 (10th Cir. 1994). "An issue of material fact is genuine if a 'reasonable jury could return a

verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)).

## III.   ANALYSIS

### A.    Individual Defendants

#### 1.  Absolute Prosecutorial Immunity—Opat

Opat argues that he is entitled to absolute immunity because all his challenged actions were

undertaken in his role as a prosecutor and advocate for the State of Kansas. Banks[3] argues that

---

[3]   Only Banks asserts a claim against Opat.

Opat's actions were administrative or investigative in nature, and thus absolute immunity is not appropriate. "Functions that serve as an 'integral part of the judicial process' or that are 'intimately associated with the judicial process' are absolutely immune from civil suits." *Benavidez v. Howard*, 931 F.3d 1225, 1230 (10th Cir. 2019) (citation and alteration omitted). Absolute immunity is less likely to attach to a function that is more distant from the judicial process. *Id.*

In *Burns v. Reed*, 500 U.S. 478 (1991), the Supreme Court held that a prosecutor was absolutely immune from suit for his participation in a probable-cause hearing. *Id.* at 487. The Court reasoned that "[t]he prosecutor's actions at issue here—appearing before a judge and presenting evidence in support of a motion for a search warrant—clearly involve the prosecutor's 'role as advocate for the State,' rather than his role as 'administrator or investigative officer.'" *Id.* at 491 (citation omitted).

In contrast, in *Kalina v. Fletcher*, 522 U.S. 118 (1997), the Supreme Court held that although the prosecutor was absolutely immune for filing an information and a motion for an arrest warrant, she was not absolutely immune when she gave sworn testimony as a witness. *Id.* at 129-31. Specifically, to establish the grounds for a warrant, the prosecutor had executed a document entitled "Certification for Determination of Probable Cause," where she personally vouched for the truth of the facts set forth in the certification under penalty of perjury. *Id.* at 121.

Here, Opat was acting as an advocate for the state in the judicial process and not as a complaining witness. Like the prosecutor in *Burns*, Opat was acting as an advocate in a probable-cause hearing to secure a warrant. Unlike the prosecutor in *Kalina*, Opat's application was based on Virden's affidavit rather than his own testimony. *See, e.g.*, Doc. 174-3 at 73. Notably, Judge Crow of this Court ruled that Opat was entitled to absolute prosecutorial immunity in a nearly

identical case filed by Banks's co-conspirator Johnny Ivory. *See Ivory v. Platt*, 2016 WL 5916647, at \*11-12 (D. Kan. 2016).

Banks points to *Mitchell v. Forsyth*, 472 U.S. 511 (1985), to argue that Opat is not entitled to absolute immunity. *Mitchell* stands for the rule that the Attorney General is not absolutely immune for actions taken pursuant to his national security duties, which are distinct from judicial actions. *Id.* at 523. But aside from the underlying factual similarity of a wiretap occurring, *Mitchell* has little bearing on this case. Therefore, the Court grants Opat's motion for summary judgment based on absolute prosecutorial immunity.[4]

### 2. Good Faith—Virden, Brown, and Wolf

Both Plaintiffs assert claims against Virden and Brown for violations of state and federal wiretap statutes. Thompson brings the same claims against Wolf. Virden, Brown, and Wolf all assert statutory good-faith defenses, namely that they were acting in good faith based on Judge Platt's orders. Because there is significant overlap between the arguments by Virden, Brown, and Wolf, the Court addresses their good-faith arguments jointly.

The Court must decide, assuming these officers violated Plaintiffs' statutory rights, whether the officers were acting in good faith. Plaintiffs assert that the officers violated their statutory rights by intercepting, disclosing, and/or procuring communications outside Judge Platt's jurisdiction, in violation of Kansas law. K.S.A. § 22-2516(3). They also assert that the extra-territorial interceptions violate federal law under *United States v. McNulty*, 729 F.2d 1243, 1266 (10th Cir. 1983) (en banc) ("[T]he federal statute itself requires our deference to [state] law on the question of the validity of the wiretap order obtained in state court under state law.").

---

[4]   Opat argues in the alternative that he is entitled to summary judgment based on either qualified immunity, statutory good-faith defenses, issue preclusion, or *Heck v. Humphrey*. Opat also argues that Banks's purported damages are limited by the statute of limitations. The Court does not address these arguments because it holds for Opat on prosecutorial-immunity grounds.

Under state and federal law, any person who intercepts wire, oral, or electronic communications in good-faith reliance on a court order has a complete defense against any civil action. 18 U.S.C. § 2520(d); K.S.A. § 22-2518(2). "To be in good faith, the officers' reliance must have been objectively reasonable." *Davis v. Gracey*, 111 F.3d 1472, 1484 (10th Cir. 1997).[5]

The statutory good-faith defense is like the good-faith exception to the exclusionary rule for Fourth Amendment violations. *Banks*, 814 F. App'x at 331 (citing *United States v. Moore*, 41 F.3d 370, 376 (8th Cir. 1994)). Thus, Fourth Amendment good-faith law is instructive in understanding federal statutory good faith. Furthermore, Kansas has adopted the good-faith exception to the exclusionary rule without modification. *State v. Hoeck*, 163 P.3d 252, 265 (Kan. 2007). Therefore, Fourth Amendment caselaw also sheds light on the state-law defense.

In *United States v. Workman*, 863 F.3d 1313 (10th Cir. 2017), the Tenth Circuit reversed the district court's exclusion of evidence based on an invalid warrant because the executing agents acted in an objectively reasonable manner. *Id.* at 1315, 1321. There, the plaintiff had argued the warrant was invalid because the magistrate judge who issued it "lacked territorial jurisdiction under Rule 41(b) of the Federal Rules of Criminal Procedure and the Federal Magistrates Act, 28 U.S.C. § 636(a)." *Id.* at 1316. Under Rule 41(b), magistrate judges only have the authority to issue a warrant to seize a person or property located within their districts. *See* Fed. R. Crim. P. 41(b).

---

[5]   The Court recognizes that the circuits disagree on whether statutory good faith has a subjective component or is completely objective. *See, e.g.*, *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 249-54 (5th Cir. 2017) (examining the circuit split over a nearly identical good faith provision pertaining to stored electronic communications). The Tenth Circuit has used a good-faith test with a subjective component. *See Dahl v. Charles F. Dahl, M.D., P.C. Defined Benefit Pension Tr.*, 744 F.3d 623, 631 (10th Cir. 2014) ("[A] defendant may invoke the defense of good faith reliance on a court order only if he can demonstrate (1) that he had a subjective good faith belief that he acted legally pursuant to a court order; and (2) that this belief was reasonable." (alteration in original)). The Tenth Circuit, however, declined to adopt the subjective-objective test for future good-faith cases. *See id.* The Tenth Circuit cited an objective test when it remanded these cases. *Banks*, 814 F. App'x at 331; *Thompson*, 815 F. App'x at 233. Thus, the Court uses the objective test in *Davis*. Notably, Plaintiffs do not contest Virden's, Brown's, or Wolf's subjective good-faith belief. Therefore, the definitive question under either test is whether the reliance on the warrants was objectively reasonable.

In *Workman*, the FBI got a warrant from a magistrate judge in the Eastern District of Virginia. 863 F.3d at 1315. The warrant allowed them to install software on a child pornography website that allowed them to identify the website's users. *Id.* at 1315-16. The software identified Workman, who had accessed the website from Colorado. *Id.* at 1316. The FBI then got a search warrant in Colorado to search Workman's computer, and the FBI caught Workman in the act of downloading child pornography. *Id.* The district court, however, suppressed the evidence. *Id.* at 1317.

The Tenth Circuit assumed for the sake of argument that the magistrate judge lacked the jurisdiction to issue the warrant. *Id.* It then considered whether a reasonably well-trained agent would have known that the warrant was invalid despite the magistrate judge's authorization. *Id.* at 1320. The Tenth Circuit started with the presumption that executing agents act in good faith on a warrant. *Id.* It then bolstered that presumption with the following observations: "1. The software was installed in a government server located in the Eastern District of Virginia. 2. The magistrate judge, who issued the warrant, was in the Eastern District of Virginia. 3. All of the information yielded from the search would be retrieved in the Eastern District of Virginia." *Id.* It thus concluded that executing agents without sophisticated legal training could reasonably rely on the magistrate judge's authorization. *See id.*

This case is similar. Here, it is undisputed that the cellular phones, which were the subject of the interception orders, had been used in Geary County. Judge Platt, who issued the orders, was in the Eighth Judicial District of Kansas, which includes Geary County. And the Plaintiffs engaged in the underlying criminal activity in Geary County. Thus, there were objective ties to Judge Platt's jurisdiction. Consequently, it was reasonable for these officers, who are without sophisticated legal training, to rely on the state judge's authorization. Therefore, the Court grants Virden, Brown, and

Wolf summary judgment based on their statutory good-faith defenses under Kansas and federal law.[6]

Plaintiffs don't point to any evidence from which a reasonable jury could find a different result. Instead, they argue that there is no good-faith defense for a mistake of law. Their argument, however, relies on caselaw outside the warrant context. *See, e.g.*, *State v. Oram*, 266 P.3d 1227, 1235 (Kan. 2011) ("*Leon*'s good-faith exception to the exclusionary rule generally applies only narrowly outside the context of a warrant."); *see also Quigley v. Rosenthal*, 327 F.3d 1044, 1070 & n. 15 (10th Cir. 2003) (arising outside the warrant context and involving private attorneys with sophisticated legal training).

Moreover, Plaintiffs' argument is contrary to *Workman*, where the Tenth Circuit assumed the officers were incorrect that the magistrate judge had jurisdiction. Plaintiffs essentially argue that it is objectively unreasonable to rely on a legally insufficient warrant. But that would all but eliminate the good-faith defense, which begins with the premise of a legally deficient order or warrant. Officers are entitled to rely on judges who have more sophisticated legal training. Under 8 U.S.C. § 2520(d) and K.S.A. § 22-2518(2), it is not an officer's job to research caselaw and correct the judge. Notably, in the Fourth Amendment setting, there are four contexts where the good-faith presumption does not apply. None of them are mistake of law. *See, e.g.*, *United States v. Barajas*, 710 F.3d 1102, 1110-11 (10th Cir. 2013); *State v. Zwickl*, 393 P.3d 621, 628 (Kan. 2017).[7] A reasonably well-trained officer would not have known the orders were invalid despite

---

[6]   The fact that the government could not prove that all the intercepted cellular communications occurred when the phones were in or in contact with Geary County does not change the analysis. The objective connections to Geary County were sufficient for an individual without legal training to have a reasonable belief that the warrants were valid.

[7]   In the alternative, Brown and Wolf would not be liable under the federal statute. Plaintiffs do not allege any facts supporting the proposition that Brown or Wolf personally intercepted, disclosed, or intentionally used their text messages in violation of federal law. Rather, Plaintiffs accuse Brown and Wolf of "procuring" others to intercept and disclose their text messages. Procuring text messages does not give rise to a cause of action under 18 U.S.C. § 2520, however. *See Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246 (10th Cir. 2012) ("[18 U.S.C. § 2520(a)'s]

the judge's authorization. No reasonable jury could conclude otherwise on this record. Therefore, Plaintiffs' arguments must fail.

### B.   Carrier Defendants

Carrier Defendants make two arguments for summary judgment: (1) Judge Platt's orders authorized the interception of text messages, and thus Carrier Defendants have an absolute defense under 18 U.S.C. § 2511 and federal preemption; and (2) alternatively, Carrier Defendants acted in good faith under 18 U.S.C. § 2520(d) and K.S.A. § 22-2518(2). *See* Doc. 182 at 1. In considering these arguments, the Court considers the following additional undisputed facts. On March 7, 2013, James T. Botts from the KBI sent a fax to T-Mobile that contained a March 5 wiretap order. Doc. 182 at 7; Doc. 196 at 6. Handwritten on the KBI coversheet was the phrase "Turn on SMS." Doc. 182 at 8; Doc. 196 at 6. The parties do not specify when T-Mobile started providing text messages to the KBI thereafter, however. On March 7, 2013, law enforcement also sent a fax coversheet to Sprint requesting a wiretap for the phone number in a different March 5 order, though it appears the order itself was not attached to the coversheet. *See* Doc. 182-11. Written on the Sprint fax was the phrase "upgrade to T3." Doc. 182 at 8; Doc. 196 at 6-7. The parties do not agree on what "T3" refers to. *See* Doc. 182 at 8; Doc. 196 at 6-7. On March 7, KBI's Botts "called back in to check the Wire upgrade." *See* Doc. 182-11. Shortly afterwards, Sprint began providing text messages to the KBI. Doc. 182 at 8; Doc 196 at 7.

### 1.   Authorization by Court Order

Carrier Defendants argue that Judge Platt's orders authorized interception of text messages, and therefore they are immune under 18 U.S.C. § 2511. Furthermore, they argue that the federal

---

language does not encompass aiders or abettors."). Virden, Brown, and Wolf raise additional alternative arguments for summary judgment. Because the Court rules for Virden, Brown, and Wolf on their good-faith defenses, the Court does not address those arguments.

statutory defense preempts the state statute that lacks a similar defense. Because the Court holds that Carrier Defendants were not authorized to intercept text messages under Judge Platt's initial orders, it does not reach the preemption argument.

Under federal law, "[n]o cause of action shall lie in any court against any provider of wire or electronic communication service . . . for providing information, facilities, or assistance in accordance with the terms of a court order." 18 U.S.C. § 2511(2)(a)(ii). Text communications are electronic communications. *See Banks*, 2014 WL 4261344, at *2. "Electronic communication" does not include "wire communication" under federal or Kansas law. *See* 18 U.S.C. § 2510(12); K.S.A § 22-2514(11). Thus, an authorization to intercept wire communications does not authorize interception of text messages.

The plain text of Judge Platt's March 5 orders does not authorize the interception of electronic communications such that Carrier Defendants were acting pursuant to a court order when they began intercepting text messages. Those orders authorize law enforcement to intercept wire communications only. Carrier Defendants' arguments to the contrary are unavailing.[8]

Specifically, Carrier Defendants argue that Judge Crabtree already ruled in Plaintiffs' criminal proceedings that Judge Platt's initial orders authorized text messages. But this is incorrect. Judge Crabtree acknowledged that text messages were <u>not</u> explicitly authorized by all the orders, but the officers' good-faith belief that the orders did authorize interception of text messages prevented text messages from being completely excluded. *See Banks*, 2014 WL 4261344, at *5. Judge Platt and the officers may have intended for the orders to authorize interception of text

---

[8]   The parties do not address an April 4 order that extended the duration of the March 5 wiretap order sent to T-Mobile. *See* Doc. 174-6 at 222-27. The April 4 order does not authorize interception of electronic communications either. *Id.* at 224.

messages, but the initial orders did not so authorize. Therefore, the Court declines to grant summary judgment based on 18 U.S.C. § 2511(2)(a)(ii) on the instant record.

### 2. Good Faith

Carrier Defendants next argue that they are entitled to summary judgment because they acted in good faith on a court order. Under state and federal law, any entity that intercepts wire, oral, or electronic communications in good-faith reliance on a court order has a complete defense against any civil action. 18 U.S.C. § 2520(d); K.S.A. § 22-2518(2). "To be in good faith, a defendant's reliance on a court order must have been objectively reasonable." *Davis*, 111 F.3d at 1484.[9]

Carrier Defendants acknowledge that statutory good faith is an affirmative defense. Doc. 182 at 25 n.9. But they have not met their burden of proof. Carrier Defendants allege that most wiretap orders in general request interception of text data. Doc. 182 at 7. But that does not make it reasonable to assume that the orders at issue here authorized text-message interception. Furthermore, Carrier Defendants point to one of Agent Virden's affidavits as evidence that they were objectively reasonable in intercepting text messages. But even if using Virden's affidavit to construe the wiretap orders would have made intercepting text messages objectively reasonable, there are no facts to suggest that Carrier Defendants ever received his affidavit at the time, read it, or relied on it in interpreting the wiretap orders. There are holes in the record, and the Court can't make inferences to fill these holes in Carrier Defendants' favor under the summary judgment standard. *See Henderson*, 41 F.3d at 569.

---

[9]   The Court again acknowledges that the Tenth Circuit has not spoken clearly as to whether there is a subjective component to the good faith standard. In the face of this ambiguity, the Court applies the objective standard in *Davis* based on the Tenth Circuit's remands. *Banks*, 814 F. App'x at 331; *Thompson*, 815 F. App'x at 233.

And even more importantly, at least two carriers refused to intercept text messages pursuant to two similarly worded wiretap orders until they got clarification orders from Judge Platt. One of those carriers, Sprint/Nextel, is a party in this case. Carrier Defendants have not shown the Court how it was objectively reasonable to intercept text messages under the orders at issue when similar orders needed clarification.[10] Carrier Defendants point to no facts distinguishing the orders where carriers sought clarification from the orders here. Instead, they focus on handwriting on the coversheets transmitted to them on March 7. Following handwritten directives on coversheets is not reliance on a court order. Therefore, the Court declines to grant summary judgment based on statutory good faith.[11]

## IV.   CONCLUSION

The Court carefully reviewed the extensive record in this case. The Court finds that the Individual Defendants are entitled to summary judgment but that Carrier Defendants are not.

THE COURT THEREFORE ORDERS that Defendant Opat's Motion for Summary Judgment (Doc. 177) is GRANTED.

THE COURT FURTHER ORDERS that Defendant Virden's Motion for Summary Judgment (Doc. 173) is GRANTED.

---

[10]   Carrier Defendants note that the clarification orders only applied to orders directed to Plaintiffs' co-conspirators. They refer to the orders that were clarified, however, as Ponds Order #1 and Thompson Order #2. Based on the record, it appears that the clarified orders were for co-conspirators Ponds and Ivory. Compare the phone numbers in the clarification orders at Doc. 182-13 at 2 and Doc. 182-14 at 2 with the phone numbers for Ponds Order 1 and Ivory Order 1 in the exhibit list at Doc. 174-2 at 1.

[11]   Carrier Defendants mention in passing that they are entitled to rely on law enforcement's understanding of the orders. Doc. 182 at 24 (citing *United States v. Peterson*, 812 F.2d 486, 492 (9th Cir. 1987)). There is a federal statutory defense for following a law enforcement officer's request. *See* 18 U.S.C. § 2520(d)(2). To the extent Carrier Defendants rely on this statutory defense, they do not develop this argument. Furthermore, even if they had, issues of material fact remain. For example, what does "upgrade to T3" mean? Furthermore, did Agent Botts ask Sprint to intercept text messages when he called? The record does not say. It merely shows that after the call, Sprint started intercepting text messages. Correlation does not equal causation. The Court makes all reasonable inferences in favor of the non-moving party at the summary judgment phase. *Henderson*, 41 F.3d at 569. Thus, Carrier Defendants have not met the burden of proving their affirmative defense at this stage.

THE COURT FURTHER ORDERS that Defendant Brown's Motion for Summary Judgment (Doc. 175) is GRANTED.

THE COURT FURTHER ORDERS that Defendant Wolf's Motion for Summary Judgment (Doc. 179) is GRANTED.

THE COURT FURTHER ORDERS that Carrier Defendants' Motion for Summary Judgment (Doc. 181) is DENIED.

IT IS SO ORDERED.

Dated: December 27, 2021                    /s/ *Holly L. Teeter*
                                            HOLLY L. TEETER
                                            UNITED STATES DISTRICT JUDGE