Case No. 23-3103

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

---

**ANTHONY CARLYLE THOMPSON,**
Plaintiff-Appellant

v.

**GLEN F. VIRDEN, *et al.*,**
Defendants-Appellees

---

**RESPONSE BRIEF OF DEFENDANT-APPELLEE
GLEN F. VIRDEN**

---

Appeal from the United States District Court for the District of Kansas
Honorable Holly L. Teeter, United States District Judge
Honorable Gwynne E. Birzer, United States Magistrate Court Judge
Case No. 15-CV-3117-HLT-GEB

---

OFFICE OF KANSAS ATTORNEY
GENERAL KRIS W. KOBACH
Matthew L. Shoger, Assistant A.G.
120 SW 10th Ave, 2d Floor
Topeka, Kansas 66612
785-296-2215
matt.shoger@ag.ks.gov

**ORAL ARGUMENT IS NOT REQUESTED**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.......................................................... iv

PRIOR OR RELATED APPEALS .................................................x

GLOSSARY ............................................................................ xi

JURISDICTIONAL STATEMENT ..............................................1

STATEMENT OF THE ISSUES....................................................1

   I.  **The district court correctly granted summary judgment based on the statutory exception for good faith execution of a warrant**.......................................................1

  II. **Alternatively, the Court can affirm the district court's judgment on alternate grounds, including statute of limitations and lack of a violation of the federal wiretap law**.................................................................1

STATEMENT OF THE CASE.......................................................1

    *Procedural History* ........................................................ *3*

SUMMARY OF ARGUMENT ......................................................5

ARGUMENT ............................................................................7

    *Standard of Review* ........................................................ 7

   I.  **The district court correctly granted summary judgment based on the statutory exception for good faith execution of a warrant**.......................................................7

     A. **A statutory exception exists for good faith execution of a warrant.** ................................................7

     B. **Judicial decisions, including the Workman decision, bear retroactive application.** ...................................10

     C. **The good-faith exception applies here**...................11

D.  **The Court need not decide the issue of overbreadth.** .....................................................................17

E.  **Plaintiff's arguments confuse the question of the validity of the wiretap order with the question of good faith.** ...................................................17

F.  **Plaintiff confuses law enforcement officers with attorneys.** ...................................................19

G.  **Plaintiff misconstrues the significance of Virden's signature on the wiretap order.** .................20

H.  **Thompson cannot at this stage add new allegations or arguments.** ...........................................21

I.  **Alternatively, the federal crime is not an "other offense" under the wiretap statute** ..........................22

II. **Alternatively, the Court can affirm the district court's judgment on alternate grounds, including statute of limitations and lack of a violation of the federal wiretap law.** .......................................................25

A.  **The Court can affirm on alternate grounds to prevent more back-and-forth in this case.** ..............25

B.  **The Kansas wiretap claim is time-barred.** .............27

1.  The applicable statute of limitations is three years. 27

2.  No discovery rule exists for this type of claim. .........27

3.  Tolling due to incarceration does not apply because Plaintiff had access to the courts. ............................28

4.  For purposes of the state-law claim, state law determines when this action commenced for statute of limitations purposes. ...............................................29

C.  **Virden did not violate the federal wiretap law as a matter of law.** ...........................................32

**CONCLUSION**....................................................................**37**

**CERTIFICATE REGARDING SEPARATE BRIEFS**..............**37**

**CERTIFICATE OF COMPLIANCE**........................................**39**

**CERTIFICATE OF DIGITAL SUBMISSION** ..........................**39**

**CERTIFICATE OF SERVICE** ..................................................**39**

**ATTACHMENTS** ....................................................................**41**

    *10th Cir. R. 28.2(B) Attachments*....................................*41*

    *Fed. R. App. P. 28(f) Attachments* .................................*41*

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona v. Evans,*
  514 U.S. 1 (1995)................................................................11-12

*Bulmer v. Bowling,*
  27 Kan. App. 2d 376, 4 P.3d 637 (2000) ..............................29

*Burnham v. Humphrey Hosp. Reit Tr., Inc.,*
  403 F.3d 709 (10th Cir. 2005)........................................29, 31

*Chegup v. Ute Indian Tribe of Uintah & Ouray,*
  28 F. 4th 1051 (10th Cir. 2022) ...........................................21

*Davis v. Gracey,*
  111 F.3d 1472 (10th Cir. 1997)...............................................9

*De Niz Robles v. Lynch,*
  803 F.3d 1165 (10th Cir. 2015)............................................10

*Doll v. Chicago Title Ins. Co.,*
  517 F. Supp. 2d 1273 (D. Kan. 2007)....................................27

*Edwards v. Vannoy,*
  141 S. Ct. 1547 (2021)..........................................................10

*Erie R. Co. v. Tompkins,*
  304 U.S. 64 (1938)................................................................30

*Fisher v. DeCarvalho,*
  298 Kan. 482, 314 P.3d 214 (2013)......................................31

*Fox v. Coxcom Incorp.,*
  No. CV-11-594, 2012 WL 6019016 (D. Ariz. Dec. 3, 2012)....................9

*Guaranty Trust Co. of N.Y. v. York,*
  326 U.S. 99 (1945)..............................................................27

*Hall v. Bellmon,*
  935 F.2d 1106 (10th Cir. 1991) ..........................................7

*Herring v. United States,*
  555 U.S. 135 (2009)........................................................11-12

*Ivory v. Platt,*
  2016 WL 5916647 (D. Kan. Oct. 11, 2016) ....................15, 33

*Law v. Law Co. Bldg. Assocs.,*
  295 Kan. 551, 289 P.3d 1066 (2012) ................................28

*Libertarian Party of N.M. v. Herrera,*
  506 F.3d 1303 (10th Cir. 2007) ........................................22

*Marino v. Hegarty,*
  1987 WL 9582 (N.D. Ill. Apr. 10, 1987)............................8

*Massachusetts v. Sheppard,*
  468 U.S. 981 (1984)..........................................................13

*Matter of Marriage of Williams,*
  307 Kan. 960, 417 P.3d 1033 (2018) ................................34

*McDonald v. Kinder-Morgan, Inc.,*
  287 F.3d 992 (10th Cir. 2002)......................................21, 27

*Messerschmidt v. Millender,*
  2012 WL 555206, 132 S.Ct. 1235 (2012) ..........................16

*Nulf v. Int'l Paper Co.,*
  656 F.2d 553 (10th Cir. 1981)..........................................21

*Parker v. Bruce*,
   109 F. App'x 317 (10th Cir. 2004)..........................................................29

*Perry H. Bacon Tr. v. Transition Partners, Ltd.*,
   298 F. Supp. 2d 1182 (D. Kan. 2004).....................................................28

*Ragan v. Merchants Transfer & Warehouse Co.*,
   337 U.S. 530 (1949)..........................................................................30-31

*Reed v. Labbe*,
   2012 WL 5267726 (C.D. Cal. Oct. 22, 2012)..........................................8

*Sabal Trail Transmission, LLC v. 18.27 Acres of Land in Levy Cnty.*,
   59 F.4th 1158 (11th Cir. 2023) ..............................................................23

*Seguros Popular C. x A. v. Raytheon Aircraft*,
   2005 WL 2099705 (D. Kan. Aug. 30, 2005) ..........................................30

*Smith v. Sec'y of N.M. Dep't of Corr.*,
   50 F.3d 801 (10th Cir. 1995)..................................................................21

*Talley v. Time, Inc.*,
   923 F.3d 878 (10th Cir. 2019)..................................................................7

*Thompson v. Platt*,
   815 F. App'x 227 (10th Cir. 2020)...............................................4, 8, 33

*Thompson v. Virden*,
   2018 WL 6046469 (D. Kan. Nov. 16, 2018) ...........................................3

*United States v. Banks*,
   2015 WL 2401048 (D. Kan. May 15, 2015)............................................8

*United States v. Bourassa*,
   2019 WL 7559293 (N.D. Ga. July 25, 2019)..................................16, 36

*United States v. Brodson*,
   528 F.2d 214 (7th Cir. 1975)..................................................................25

*United States v. Campagnuolo,*
  556 F.2d 1209 (5th Cir. 1977)..............................................................23

*United States v. Gonzales,*
  399 F.3d 1225 (10th Cir. 2005).............................................................18

*United States v. Harvey,*
  560 F. Supp. 1040 (S.D. Fla. 1982)......................................................24

*United States v. Henderson,*
  906 F.3d 1109 (9th Cir. 2018)...............................................................12

*United States v. Kaplan,*
  2009 WL 3806277 (E.D. Pa. Nov. 13, 2009) .......................................36

*United States v. Lasher*, No. 4:18-,
  2019 WL 2723910 (N.D. Ga. July 1, 2019)..........................................16

*United States v. Leon,*
  468 U.S. 897 (1984)..............................................................9, 11-13, 16

*United States v. McNulty*,
  729 F.2d 1243 (10th Cir. 1983).......................................................17-18

*United States v. Moore,*
  41 F.3d 370 (8th Cir. 1994)..............................................................8, 13

*United States v. Otero,*
  563 F.3d 1127 (10th Cir. 2009).........................................................9, 14

*United States v. Pacheco,*
  489 F.2d 554 (5th Cir. 1974)................................................................35

*United States v. Ruiz,*
  2010 WL 4840055 (S.D.N.Y. Nov. 19, 2010)......................................35

*United States v. Russian,*
   848 F.3d 1239 (10th Cir. 2017)........................................................9, 13

*United States v. Smith,*
   726 F.2d 852 (1st Cir. 1984) ................................................................24

*United States v. Watchmaker,*
   761 F.2d 1459 (11th Cir. 1985)............................................................23

*United States v. Workman,*
   863 F.3d 1313 (10th Cir. 2017)..............................................9-11, 17-18

*United States v. Young,*
   822 F.2d 1234 (2d Cir. 1987) ..............................................................22

*Vann v. Fewell,*
   2021 WL 3510202 (D. Kan. Aug. 10, 2021) ........................................29

*Walker v. Armco Steel Corp.,*
   446 U.S. 740 (1980).......................................................................29-32

*Walton v. Powell,*
   821 F.3d 1204 (10th Cir. 2016)............................................................26

*West v. Conrail,*
   481 U.S. 35 (1987).........................................................................29-31

*Zemaitiene v. Salt Lake Cnty.,*
   2022 WL 1013811 (10th Cir. Apr. 5, 2022) ........................................26

**Statutes**

18 U.S.C. § 2510 ................................................................33-34, 36

18 U.S.C. § 2511 ............................................................................3

18 U.S.C. § 2517 ......................................................................21-22

18 U.S.C. § 2518 ................................................................24, 34

18 U.S.C. § 2520 ...............................................1-3, 7-8, 15, 19

28 U.S.C. § 1291 .....................................................................1

K.S.A. 20-301................................................................34-35

K.S.A. 22-2514 ..................................................................35

K.S.A. 22-2516 .............................................................33, 35

K.S.A. 22-2518..............................................2, 7, 15, 19, 27

K.S.A. 60-203 ....................................................................31

K.S.A. 60-511 ....................................................................28

K.S.A. 60-512 ..............................................................27, 31

K.S.A. 60-515 ....................................................................29

## Rules

10th Cir. R. 31.3 ...............................................................37-38

10th Cir. R. 32 ..................................................................39

D. Kan. Rule 56.1 ........................................................20, 22

Fed. R. App. P. 32.............................................................39

Fed. R. Civ. P. 3................................................................32

Fed. R. Civ. P. 4................................................................30

Fed. R. Civ. P. 56..........................................................7, 20

**Other Authorities**

S. Rep. No. 90-1097, 1968 U.S.C.C.A.N. 2112 .........................................24

## PRIOR OR RELATED APPEALS

*Banks v. Opat*, 814 F. App'x 325, No. 19-3073 (10th Cir. 2020) (reversing and remanding some claims).

*Banks v. Sprint/Nextel Wireless Tele. Co.*, No. 23-3097 (10th Cir. June 26, 2023) (dismissed for lack of prosecution).

*Banks v. Virden*, No. 23-3102 (10th Cir.) (ongoing).

*Thompson v. Platt*, 815 F. App'x 227, No. 19-3072 (10th Cir. 2020) (reversing and remanding some claims).

*Thompson v. Virden*, No. 23-3099 (10th Cir.) (dismissed for lack of prosecution).

# GLOSSARY

ECPA ............Electronic Communications Privacy Act of 1986

## JURISDICTIONAL STATEMENT

The United States District Court for the District of Kansas had jurisdiction over this case because the Plaintiff, Anthony Carlyle Thompson, asserted claims under 18 U.S.C. § 2520. This appeal arises from the district court's December 27, 2021, order granting motions for summary judgment by Defendants Tony Wolf, Glen F. Virden, and Timothy Brown. Final judgment was entered on June 1, 2023, when T-Mobile U.S.A. ("T-Mobile") was dismissed with prejudice due to a settlement. Thompson filed a timely notice of appeal on June 5, 2023. Under 28 U.S.C. § 1291, this Court has jurisdiction to hear Thompson's appeal. This appeal comes from a final judgment disposing of all of Thompson's claims.

## STATEMENT OF THE ISSUES

I.   **The district court correctly granted summary judgment based on the statutory exception for good faith execution of a warrant.**

II.  **Alternatively, the Court can affirm the district court's judgment on alternate grounds, including statute of limitations and lack of a violation of the federal wiretap law.**

## STATEMENT OF THE CASE

Plaintiff-Appellant Anthony Carlyle Thompson ("Thompson" or

1

"Plaintiff") asserted claims under (1) K.S.A. § 22-2518, for alleged

violation of the Kansas wiretap statutes, and (2) 18 U.S.C. § 2520, for

alleged violation of the federal Electronic Communications Privacy Act

of 1986 ("ECPA"). (R. vol. I at 35-38.) In particular, Plaintiff alleged

that the Eighth Judicial District, Kansas, District Court Judge David

Platt acted beyond his jurisdiction in issuing wiretap orders pertaining,

in part, to the Plaintiff's communications not in or captured in Geary

County ("extra-territorial communications"). (R. vol. I at 30-31.) He

claimed that all the defendants, including KBI Special Agent Glen

Virden, intercepted these extra-territorial communications knowing, or

with reason to know, that the orders were invalid on their face. (R. vol. I

at 31.)

The district court correctly granted summary judgment against

the Plaintiff's claims. (Addendum D.) Defendant Virden's good faith

reliance on court orders is a complete defense to both the state and

federal wiretap claims. (*See* Addendum D.) The district court did not

rule on Virden's other arguments (Addendum D n.7), but Virden

reasserts those other arguments on appeal as alternative arguments:

The state-law claim is time-barred under the applicable statute of

limitations (*see Banks v. Opat*, No. 15-3093 (Doc. 174 at 16-19; Doc. 201 at 10-16)), and there was no violation of the federal wiretap statutes as a matter of law (*see Banks*, No. 15-3093 (Doc. 174 at 22-25; Doc. 201 at 16-18)).

### *Procedural History*

On May 14, 2015, Plaintiff brought this lawsuit against numerous defendants. (*See* R. vol. I at 1-5.) On February 20, 2018, Plaintiff filed an Amended Complaint ("Complaint"), alleging violations of state and federal wiretap statutes, violation of the Fourth Amendment, and conspiracy. (R. vol. I at 35-38.) He asked that the defendants be held liable for ten million dollars in compensatory and punitive damages; statutory damages under 18 U.S.C. §§ 2511 and 2520; costs and expenses; and "any further relief the court deems necessary." (R. vol. I at 38-39.)

On February 20, 2018, the district court dismissed the official capacity claims and narrowed the defendants down to Virden, Brown, Wolf, and T-Mobile. (Addendum B at 6 n.6 (citing Addendum A at 8); R. vol. I at 11 (Doc. 70 docket entry).) On November 16, 2018, the district court dismissed all of Plaintiff's remaining claims. *Thompson v. Virden*,

2018 WL 6046469, at *8 (D. Kan. Nov. 16, 2018). Plaintiff's motion to alter or amend was denied. (Addendum C; R. vol. I at 17 (Doc. 136 docket entry).) On appeal, on May 12, 2020, a panel of this Court affirmed in part but reversed and remanded for further proceedings on the claims under state and federal wiretap statutes with regard to the interception and disclosure of specifically extraterritorial communications. *Thompson v. Platt*, 815 F. App'x 227, 240 (10th Cir. 2020).

On remand, the district court consolidated this case with *Banks v. Opat,* No. 15-3093 (D. Kan.), and appointed counsel for the two plaintiffs "for the limited purpose of assisting them through discovery and dispositive motion practice." (R. vol. I at 20 (Doc. 170 docket entry).) The court granted summary judgment to defendants Virden, Brown, and Wolf on the remanded claims on December 27, 2021. (Addendum D.) The court then deconsolidated the two cases. (R. vol. I at 23 (Doc. 194 docket entry).) T-Mobile was voluntarily dismissed from the case on June 1, 2023, due to a settlement. (R. vol. I at 27 (Doc. 246 docket entry); *see also* R. vol. I at 363-64.) Plaintiff timely appealed. (R. vol. II at 367-68.)

## SUMMARY OF ARGUMENT

The district court properly granted summary judgment because Defendant Virden presumptively meets the statutory exception for good-faith execution of a warrant. Although Plaintiff says some relevant case law was not yet in effect, judicial decisions presumptively have retroactive application, and Plaintiff has not overcome that presumption. For wiretap orders, the statutory good-faith exception presumptively applies except in limited contexts, and Plaintiff has not overcome that presumption by demonstrating that one of those contexts applies. The Court need not decide whether the underlying warrant was valid because even assuming it was invalid, the good-faith exception means Defendant Virden must prevail.

Plaintiff's arguments confuse the defense of good faith with the underlying validity of the wiretap order, but those analyses should be separate. Plaintiff cites case law applicable to attorneys and courts regarding a duty to research the law, but Defendant Virden is neither an attorney nor a court, but rather a law enforcement officer, so he does not have that duty. Plaintiff claims that Virden signing the wiretap orders somehow means Virden issued the orders, but it was only meant

as an acknowledgement of those orders, which were issued by a state judge. Thompson cannot bring new claims at this stage regarding alleged improper disclosures of evidence to support prosecution of federal crimes. But even if he could, the relevant federal crime does not qualify as an "other offense" under the federal statute due to its similarity to the state statute. Therefore, subsequent court authorization would not be needed to disclose that evidence for that purpose.

Virden also presents arguments in the alternative, which this Court could affirm based on because (1) this is a longstanding case that has had multiple appeals, and (2) the grounds for granting summary judgment are adequate, apparent in the record, and illuminated in this brief. Under applicable state law governing when state actions accrue and are commenced, the three-year statute of limitations ran, barring this action against Virden. And Virden did not violate the federal wiretap statute because any violation of the state wiretap statute does not automatically constitute a violation of the federal wiretap statute.

For the reasons above, this Court should affirm the grant of summary judgment to Defendants.

# ARGUMENT

## *Standard of Review*

This Court reviews a grant of summary judgment de novo, "applying the same legal standard as the district court," and "view[ing] the evidence and draw[ing] reasonable inferences therefrom in the light most favorable to the nonmoving party." *Talley v. Time, Inc.*, 923 F.3d 878, 893 (10th Cir. 2019). Summary judgment is required when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Because Plaintiff appears *pro se*, this Court must construe his filings liberally, but it does not serve as his advocate. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

I. **The district court correctly granted summary judgment based on the statutory exception for good faith execution of a warrant.**

A. *A statutory exception exists for good faith execution of a warrant.*

In a prior appeal, a panel of this Court explained:

Both the federal and state statutes provide "a complete defense" for "good faith reliance" on "a court warrant or order." 18 U.S.C. § 2520(d); Kan. Stat. Ann. § 22-2518(2).

7

> The statutory good faith defense is akin to the good faith exception to the exclusionary rule for Fourth Amendment violations. *See United States v. Moore*, 41 F.3d 370, 376 (8th Cir. 1994) (observing that the federal wiretap statute's "legislative history expresses a clear intent to adopt suppression principles developed in Fourth Amendment cases"); *see, e.g., Reed v. Labbe*, No. CV 10-8315-SVW (OP), 2012 WL 5267726, at *9 (C.D. Cal. Oct. 22, 2012) (relying on findings in the plaintiff's underlying criminal case to conclude that § 2520(d) provided a complete defense to plaintiff's claims under the ECPA and required dismissal under Rule 12(b)(6)); *Marino v. Hegarty*, No. 86 C 6759, 1987 WL 9582, at *1 (N.D. Ill. Apr. 10, 1987) ("Good faith reliance on a court order is a defense both to fourth amendment claims and to the claims under [the ECPA].").

*Thompson v. Platt*, 815 F. App'x 227, 233 (10th Cir. 2020).[1]

That decision instructed that "an officer's reliance on a defective warrant . . . must be objectively reasonable" to invoke the good faith

---

[1] When the good faith defense was last before the Tenth Circuit panel, the case was in a much different procedural posture. The defense is now before the Court on appeal from a grant of summary judgment. The determination, in the prior *Thompson* decision from this Court, that collateral estoppel was not conclusive from Judge Crabtree orders in the underlying criminal cases is not controlling here. But it is still noteworthy that Judge Crabtree acknowledged "one would not expect the officers executing the search warrants to have apprehended the subtle, technical jurisdictional defect that form[ed] the basis of the Court's threshold suppression ruling." *United States v. Banks*, No. 13-40060-DDC, 2015 WL 2401048, at *3 (D. Kan. May 15, 2015); *see also Thompson v. Platt*, 815 F. App'x 227, 230 (10th Cir. 2020) (quoting *United States v. Banks*, 2015 WL 2401048, at *3).

defense. *Id.* (quoting *United States v. Russian*, 848 F.3d 1239, 1246 (10th Cir. 2017) and citing *Davis v. Gracey*, 111 F.3d 1472, 1484 (10th Cir. 1997)).[2] And the Tenth Circuit holds that "[t]he test is an objective one that asks 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *Id.* (quoting *United States v. Otero*, 563 F.3d 1127, 1134 (10th Cir. 2009) (quoting *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984))).

The Tenth Circuit's application of the Fourth Amendment suppression principles, particularly the reference to the rules in *United States v. Leon*, is important because it evidences that *United States v. Workman*, 863 F.3d 1313, 1318 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 1546 (2018), applies and shows that Defendant Virden's reliance on Judge Platt's orders was in objective good faith.

---

[2] *Fox v. Coxcom Incorp.*, No. CV-11-594, 2012 WL 6019016, at *5 (D. Ariz. Dec. 3, 2012) (finding the objective reasonableness of reliance on a court order is not a question of fact for the jury, but is a legal one for the court to decide).

### B. *Judicial decisions, including the* Workman *decision, bear retroactive application.*

Plaintiff asserts that the district court relied "exclusively" on the *Workman* decision, which he says "did not become law until 2017." (Appellant's Br. at 3-4.) But the district court cited more than a dozen cases, not merely the *Workman* case, in its section analyzing the good-faith exception as applied to Virden, Brown, and Wolf. (Addendum D.) Regardless, however, judicial decisions presumptively bear retroactive application. The Tenth Circuit has stated:

> In our constitutional order legislative enactments normally apply only prospectively while judicial decisions also bear retroactive application. . . . [W]e know that legislation is rarely afforded retroactive effect. . . . Quite the opposite from legislation (and with equal certainty) we can say that judicial decisions "have had retrospective operation for near a thousand years." . . . . [W]hen it comes to the judiciary we know its decisions are presumptively retroactive.

*De Niz Robles v. Lynch*, 803 F.3d 1165, 1167, 1169-71 (10th Cir. 2015) (Gorsuch, J.) Although some exceptions exist to the retroactive application rule,[3] no exceptions appear to apply here, and Plaintiff has

---

[3] For example, some judicial decisions apply retroactively for new and ongoing cases but not for purposes of collateral review of completed cases. *See Edwards v. Vannoy*, 141 S. Ct. 1547, 1554 (2021).

not identified one or supported it with legal sources. Therefore, the district court correctly relied on *Workman* as binding precedent along with the dozen or so other cases it relied on in its analysis regarding the statutory good-faith exception.

### C. The good-faith exception applies here.

*Workman* involved a complex child pornography operation in which a magistrate in the Eastern District of Virginia authorized installation of tracking software, known as a network intrusion device, on a child pornography website server in the magistrate's district, and that software in turn installed "malware onto the user's computer," which enabled law enforcement officials to identify users in other districts. 863 F.3d at 1316. *Workman* held "the *Leon* [good-faith] exception applies even if the magistrate judge had exceeded geographic constraints in issuing the warrant." *Id.* at 1318. The Court reasoned:

Under *Herring*[4] and *Evans*[5], the *Leon* exception applies even

---

[4] In *Herring v. United States*, 555 U.S. 135 (2009), the *Leon* exception was applied when officers had mistakenly relied on a warrant even though it had been earlier recalled.

[5] In *Arizona v. Evans*, 514 U.S. 1 (1995), suppression was denied even though the law enforcement officer arrested an individual based on mistaken computerized information showing an outstanding arrest warrant.

if the magistrate judge had exceeded geographic constraints in issuing the warrant. In these circumstances, the executing agents could reasonably have relied on the warrant, just as the agents had relied in *Herring* and *Evans* on warrants that had been recalled or quashed.

. . . As a result, *Herring* and *Evans* would require us to apply the *Leon* exception even if we were to conclude that the warrant had exceeded geographical constraints.

*Id.* at 1318-19.[6]

Absent exceptional circumstances, not present here,[7] an officer should be allowed to rely upon a judge's representation, by the judge's

---

[6] *See also United States v. Henderson*, 906 F.3d 1109, 1119-20 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 2033 (2019) (Application of the good faith exception is permitted where a warrant is void because of a magistrate judge's jurisdictional violation, so long as the executing officers had an objectively reasonable belief that the warrant was valid; the NIT warrant sufficiently described the "place" to be searched—any "activating computer"—and specified the seven pieces of identifying information—including the computer's IP address—that would be seized, and presented no other facial deficiency that rendered the officers' reliance unreasonable; the court was satisfied that the NIT warrant fell squarely within the *Leon* good-faith exception: the executing officers exercised objectively reasonable reliance on the NIT warrant).

[7] Naturally, Defendant Virden did not question Judge Platt's authority or jurisdiction. (*Banks*, No. 15-3093 (Doc. 174 at ¶¶ 29, 34-35; Doc. 198 at ¶¶ 29, 34-35).) The underlying criminal activity was in Geary County—within Judge Platt's judicial district; the cellular phones subject to the wiretap orders were used in Geary County; the Plaintiff's criminal activities were in Geary County. (*Banks*, No. 15-3093 (Doc. 174 at ¶ 32(b)-(d); Doc. 198 at ¶ 32(b)-(d))).

action entering a wiretap order, that she or he possesses the required

authority to issue the order. *See Massachusetts v. Sheppard*, 468 U.S.

981, 989-90 (1984) ("[W]e refuse to rule that an officer is required to

disbelieve a judge who has just advised him, by word and by action, that

the warrant he possesses authorizes him to conduct the search he has

requested."); *see also United States v. Moore*, 41 F.3d 370, 376 (8th Cir.

1994) (cited in *Thompson* and *Banks*) (court rejected the argument that

an unsigned order is "insufficient on its face," stating "the police

conduct in this case clearly was objectively reasonable and largely error-

free. . . . It was the judge, not the police officers, who made the critical

mistake."); *United States v. Russian*, 848 F.3d 1239, 1247 (10th Cir.

2017) (quoting *Leon*, 468 U.S. at 917) ("[S]ince judges and magistrates

are 'neutral judicial officers' with 'no stake in the outcome of particular

criminal prosecutions,' the exclusionary sanction 'cannot be expected

significantly to deter them.' . . . Accordingly, given the lack of

misconduct by law enforcement and Deputy Wilson's reliance on a

warrant he reasonably believed to be valid, we decline to apply the

exclusionary rule to the evidence seized from Russian's phones.").

The language of the orders expressly contemplated interceptions of communications outside of the Eight Judicial District. (*Banks*, No. 15-3093 (Doc. 174 at ¶¶ 18, 24, 31; Doc. 198 at ¶¶ 18, 24, 31).) Judge Platt was informed whose phones would be "wiretapped," how the wiretaps would take place and where intercepted communication would be received and monitored. (*Banks*, No. 15-3093 (Doc. 174 at ¶¶ 17, 23; Doc. 198 at ¶¶ 17, 23); *see also Banks*, No. 15-3093 (Doc. 174 at ¶ 20 (progress reports were made to Judge Platt); Doc. 198 at ¶ 20).)

Moreover, counsel applied for and secured the involved wiretap orders from Judge Platt (*Banks*, No. 15-3093 (Doc. 174 at ¶¶ 16, 32a; Doc. 198 at ¶¶ 16, 32a)), which supports Defendant Virden could reasonably rely that Judge Platt possessed the jurisdiction to enter the orders. *See United States v. Otero*, 563 F.3d 1127, 1135 (10th Cir. 2009) ("By consulting the prosecutor, they showed their good faith in compliance with constitutional requirements.").

That more than sixty law enforcement officers, from different agencies, were involved with the interception and monitoring of communications, after they read the wiretap orders, (*Banks*, No. 15-3093 (Doc. 174 at ¶¶ 27, 28, 30; Doc. 198 at ¶¶ 27, 28, 30)), confirms the

objectively reasonable officer would not question the facial validity of

Judge Platt's orders.

Again, Hon. Judge Sam Crow had the same facts and issue before

him in *Ivory v. Platt*, No. 15-3051-SAC-DJW, 2016 WL 5916647 (D.

Kan. Oct. 11, 2016), albeit with a different plaintiff. Judge Crow

concluded:

> even if plaintiff could somehow show that defendants
> violated federal wiretap laws, are subject to the damages
> remedy thereunder, and are not entitled to absolute
> immunity, defendants are surely entitled to good faith
> immunity. K.S.A. § 22-2518(1) provides that "[a]ny person
> whose wire, oral or electronic communication is intercepted,
> disclosed or used in violation of this act" shall have a civil
> cause of action for actual and punitive damages and attorney
> fees. *Id.* However, subsection (2) of § 2518 provides that:
>
> > [a] good faith reliance by any person on a court order
> > authorizing the interception of any wire, oral or
> > electronic communication shall constitute a complete
> > defense in any civil . . . action brought against such
> > person based upon such interception.
>
> *See Reid*, 36 F. Supp. 3d at 1123-24. 18 U.S.C. §
> 2520(a);(b)(2) in the Federal Wiretap Act likewise authorizes
> recovery of civil damages for illegal interception of wire, oral
> or electronic communications. However, § 2520(d)(1),(2)
> provides that a good faith reliance on a "court warrant or
> order" or "a request of an investigative or law enforcement
> officer" is "a complete defense against any civil or criminal
> action brought under this chapter or any other law." The
> wiretap at issue in Mr. Ivory's case was requested by law

enforcement officers and authorized by court order. Plaintiff
identifies no false or deceptive conduct by the prosecutor or
any other law enforcement officers in the preparation and
presentation of the application. *See Messerschmidt v.
Millender*, 2012 WL 555206, 132 S.Ct. 1235 (2012). He thus
describes none of the "rare circumstances" that would make
it appropriate to impose personal liability on an official or an
officer in the face of judicial approval of a warrant. *Id.* at
1250. Furthermore, plaintiff has not established that Judge
Platt's order violated any clearly established law at the time
it was issued, and Judge Crabtree's orders reflect that the
law remained unclear at the time of the federal prosecution.

*Id.* at *13.

Other courts have reached the same conclusion where there was a

challenge to jurisdiction of the court issuing the wiretap order. *See*

*United States v. Bourassa*, No. 4:18-CR-00003-MLB-WEJ-1, 2019 WL

7559293, at *18 (N.D. Ga. July 25, 2019) ("Finally, even if the wiretap

warrant failed to comply with any territorial jurisdiction limitation, the

evidence remained admissible under *Leon's* good-faith exception to the

exclusionary rule."); *United States v. Lasher*, No. 4:18-CR-00003, 2019

WL 2723910, at *5 (N.D. Ga. July 1, 2019) (Applying the *Leon* test, "[n]o

evidence shows the wiretap warrants were so facially deficient that an

officer could not reasonably presume them valid. Even if there were a

jurisdictional defect in issuing the wiretap orders, suppression is

inappropriate. The Court denies Defendant Lasher's motion to suppress.").

Therefore, Defendant Virden is entitled to summary judgment on the basis of his good faith reliance on a court order even if the Plaintiff's claims had been timely commenced and some evidence supported a violation of the federal wiretap statutes.

### D. The Court need not decide the issue of overbreadth.

The district court held that the good-faith exception was met even "assuming these officers violated Plaintiffs' statutory rights." (Addendum D.) Meeting the good-faith exception therefore effectively makes moot the question of invalidity of the warrant due to overbreadth. *See Workman*, 863 F.3d at 1317.

### E. Plaintiff's arguments confuse the question of the validity of the wiretap order with the question of good faith.

Plaintiff repeatedly conflates the question of the validity of the wiretap order with the question of good faith, insisting that good faith cannot exist if the wiretap order was invalid. He cites *United States v. McNulty*, 729 F.2d 1243 (10th Cir. 1983), suggesting it is relevant to the good faith analysis (Appellant's Br. at 5-6.) But the majority opinion in *McNulty* does not even address the question of good faith at all. *See*

*McNulty*, 729 F.2d 1243.

Plaintiff cites *United States v. Gonzales*, 399 F.3d 1225 (10th Cir. 2005), for the proposition that "a reasonably well-trained officer should have known of the order's deficiency despite the judge's authorization." (Appellant's Br. at 14.) But Plaintiff leaves out that the *Gonzales* case fits one of the four contexts in which the good-faith presumption does not apply, specifically when the *affidavit* supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Gonzales*, 399 F.3d at 1229, 1231. Here, Plaintiff does not allege a lack of probable cause in the affidavit underlying the warrant.

Plaintiff also claims that the *Workman* facts do not line up with the facts of this case based on essentially any minor differences Plaintiff can muster. (*See* Appellant's Br. at 13.) But the geographic facts listed in *Workman* were listed not as elements that must be duplicated exactly but as examples of evidence showing a reasonable appearance of an objective connection to the judge's jurisdiction. *See Workman*, 863 F.3d at 1320. Here, the cell phones were used in the judge's jurisdiction, the underlying criminal activity occurred in the judge's jurisdiction, and

the Plaintiff's criminal activities were in the judge's jurisdiction as well,

all of which show a reasonable appearance of an objective connection to

the judge's jurisdiction. (Addendum D.)

### F. Plaintiff confuses law enforcement officers with attorneys.

The district court correctly held that:

> Officers are entitled to rely on judges who have more
> sophisticated legal training. Under 18 U.S.C. § 2520(d) and
> K.S.A. § 22-2518(2), it is not an officer's job to research
> caselaw and correct the judge.

(Addendum D.) Plaintiff cites *Quigley v. Rosenthal* to try to establish

otherwise. (Appellant's Br. at 9.) But as the district court pointed out,

the *Quigley* case involved private attorneys with sophisticated legal

training and it occurred outside the warrant context. (Addendum D.)

Plaintiff has not established that law enforcement officers have any

legal duty to research case law in this context.

Plaintiff also states that "[u]nder federal law to determine the

validity of state issued wiretaps ***a court*** is to turn to state law."

(Appellant's Br. at 13.) Plaintiff then claims this means that the law

enforcement officers in this case were required to dig deeper into state

law. But a law enforcement officer is not a court. Therefore, the

principle does not establish that the officers were required to conduct

research on the law.

### G. *Plaintiff misconstrues the significance of Virden's signature on the wiretap order.*

Plaintiff claims that the defendants signing the wiretap order meant that "the defendants authorized the order themselves." (Appellant's Br. at 14, 16.) But Plaintiff failed to controvert any of Virden's statement of material facts under Fed. R. Civ. P. 56 and D. Kan. Rule 56.1 (*Banks*, No. 15-3093 (Doc. 201 at 2-9)), even expressly admitting, for example, that Judge Platt issued the orders. (*See, e.g., Banks*, No. 15-3093 (Doc. 174 at ¶¶ 18, 20-22; Doc. 198 at ¶¶ 18, 20-22).) And Plaintiff also failed to controvert that officers signed wiretap orders merely "[t]o document that officers monitoring communications knew the terms of the . . . order, including its minimization requirements." (*See, e.g., Banks*, No. 15-3093 (Doc. 174 at ¶¶ 27-28; Doc. 198 at ¶¶ 27-28).) So Plaintiff cannot now state that the officers somehow issued the order themselves on their own authority. Rather, for purposes of summary judgment, Plaintiff is held to the facts he has admitted. And Plaintiff's current brief shows that he is well aware that none of the officers saw themselves as issuing the order. (*See* Appellant's Br. at 3.) More importantly, no rational trier of fact could

find that the officers' signatures meant that they issued the order

themselves, as no evidence in the record supports such a notion.

Plaintiff has not certainly not cited any.

### H. Thompson cannot at this stage add new allegations or arguments.

The Tenth Circuit is "a court of review, not first view." *Chegup v.*

*Ute Indian Tribe of Uintah & Ouray Rsrv.*, 28 F. 4th 1051, 1070 (10th

Cir. 2022). Accordingly, matters not appearing in the record on appeal

will not be considered by the Court. *Nulf v. Int'l Paper Co.*, 656 F.2d

553, 559 (10th Cir. 1981). Absent extraordinary circumstances, the

Court does not "consider . . . claims for the first time on appeal," *Smith*

*v. Sec'y of N.M. Dep't of Corr.*, 50 F.3d 801, 814 n.22 (10th Cir. 1995), or

"arguments raised for the first time on appeal," *McDonald v. Kinder-*

*Morgan, Inc.*, 287 F.3d 992, 999 (10th Cir. 2002).

Here, Plaintiff makes new allegations that "the defendants in this

case used and disclosed the unlawful interceptions to further a federal

investigation by the United States Attorney's Office regarding federal

crimes which are distinct from those state crimes authorized by Judge

Platt in the state wiretap order." (Appellant's Br. at 4.) He claims this

violates 18 U.S.C. § 2517(5), which requires a subsequent application

and order before disclosure or use can be made of intercepted communications "relating to offenses other than those specified in the order of authorization or approval." But Plaintiff cites only to a statement in a declaration. *See Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1310 (10th Cir. 2007) ("This court has held that an argument which may be inferred from a trial exhibit, but was not otherwise discussed or argued, will not be considered on appeal."). He fails to show that he made this argument to the district court either in his statement of facts as required by D. Kan. Rule 56.1 or in his legal arguments. (*See Banks*, No. 15-3093 (Doc. 198).) Therefore, this new claim and its accompanying arguments cannot be added on appeal.

## I. Alternatively, the federal crime is not an "other offense" under the wiretap statute.

As the Second Circuit has stated:

> Where the only difference between the offenses described in the wiretap authorization and those for which defendants are indicted is that the former are state offenses and the latter are federal offenses, we hold that they are not "other offenses" within the meaning of § 2517(5). Thus, as to substantially identical offenses—ones described in the same language and containing the same essential elements— subsequent judicial authorization is unnecessary.

*United States v. Young*, 822 F.2d 1234, 1238 (2d Cir. 1987). The Fifth

Circuit similarly has cautioned against a "mechanistic" understanding of the phrase "relating to offenses other than those specified." *United States v. Campagnuolo*, 556 F.2d 1209, 1214 (5th Cir. 1977). That circuit stated the legislative intent was that "Congress wished to assure that the Government does not secure a wiretap authorization order to investigate one offense as a subterfuge to acquire evidence of a different offense for which the prerequisites to an authorization order are lacking." *Id.* The Eleventh Circuit (which split from the Fifth Circuit in 1981 and follows its precedent from before then as binding[8]) followed up on this reasoning, at least in dicta, saying it meant that the subsequent authorization requirement could be relaxed:

> in cases where the offense for which the wiretap was authorized and the offense for which the information was used were so similar in nature that there would be little chance that the original authorization was a subterfuge to obtain evidence of an offense for which the prerequisites to authorization are lacking.

*United States v. Watchmaker*, 761 F.2d 1459, 1470 (11th Cir. 1985). The First Circuit has stated that while the wiretap order needs to specify

---

[8] *Sabal Trail Transmission, LLC v. 18.27 Acres of Land in Levy Cnty.*, 59 F.4th 1158, 1160 n.1 (11th Cir. 2023).

"offenses," that it does not have to reference "particular statutory sections" at all. *United States v. Smith*, 726 F.2d 852, 865 (1st Cir. 1984). Therefore, the term "offense" should not be equated mechanistically with a particular statutory section. In other words, statutory sections can help define the offense but are not themselves the offense.

Rather, the term "offense" should be understood – to use the wording of the Senate Report from its legislative history – to refer to the "type of offense." *United States v. Harvey*, 560 F. Supp. 1040, 1063 & n.3 (S.D. Fla. 1982) (quoting S. Rep. No. 90-1097, 1968 U.S.C.C.A.N. 2112, 2189-90). So when the affidavit supporting the wiretap order sets forth probable cause as to each of the elements of a similar offense, no subsequent application and order is required for intercepted communications relating to that similar offense. *Id.* at 1065. This is especially true for narcotics offenses, in light of the statutory text, because an authorization order may be entered under § 2518(3)(a) based on probable cause of an offense enumerated in § 2516, and that enumerated list, despite citing many offenses specifically, describes

24

narcotics offenses broadly and generally. *Id.* at 1063 n.3.[9]

Here, even if Plaintiff could bring a claim at this point based on disclosure of evidence to further a federal prosecution, Plaintiff has not established with evidence in the record what the relevant federal crimes were and how the type of offense or the elements of the offense were different than for the relevant crimes. Therefore, Plaintiff has not established that any federal offense prosecuted was an "other offense," and no subsequent authorization was necessary.

## II. Alternatively, the Court can affirm the district court's judgment on alternate grounds, including statute of limitations and lack of a violation of the federal wiretap law.

### A. The Court can affirm on alternate grounds to prevent more back-and-forth in this case.

If the Court does not affirm the district court based on the good-faith exception, then the Court can consider the alternate grounds raised in Virden's motion for summary judgment and reiterated here. The district court did not rule on these alternative arguments.

---

[9] However, there may be a circuit split on this general issue considering dicta from *United States v. Brodson*, 528 F.2d 214, 216 (7th Cir. 1975) ("The controlling factor here, however, is not the dissimilarity of the offenses").

(Addendum D n.7.)

When the district court does not address an issue, this Court generally remands the issue for the district court to consider the argument in the first instance. *Zemaitiene v. Salt Lake Cnty.*, No. 21-4091, 2022 WL 1013811, \*5 (10th Cir. Apr. 5, 2022). But the Court need not do so here because, as this Court has held:

> To prevent cases from needlessly bouncing back and forth between district and appellate courts, this court is entitled to affirm a district court on alternative grounds that court didn't consider if those grounds are adequate, apparent in the record, and sufficiently illuminated by counsel on appeal.

*Walton v. Powell*, 821 F.3d 1204, 1212 (10th Cir. 2016).

Here, this case has already been ongoing for almost ten years and has had three appeals so far. The alternate grounds set forth by Virden for granting summary judgment are adequate, apparent in the record, and illuminated in this brief. Therefore, to prevent the case from needlessly bouncing back and forth between district and appellate courts, this Court could affirm the district court's judgment on the following alternative grounds.

### B. The Kansas wiretap claim is time-barred.

1. *The applicable statute of limitations is three years.*

Federal courts look to state law for the applicable statute of limitation to a state law claim. *Guaranty Trust Co. of N.Y. v. York,* 326 U.S. 99, 109-110 (1945). The applicable statute of limitations for a claim under K.S.A. § 22-2518 of the Kansas wiretap statutes is three years from the date of the interception or disclosure of the complaining Plaintiff's wire, oral, electronic communication.[10] *See* K.S.A. § 60-512(2) ("The following actions shall be brought within three (3) years: . . . (2) An action upon a liability created by a statute other than a penalty or forfeiture.").

2. *No discovery rule exists for this type of claim.*

The statute has no discovery rule for non-fraud based statutory claims.[11] *See e.g., Doll v. Chicago Title Ins. Co.,* 517 F. Supp. 2d 1273, 1282 (D. Kan. 2007) (absent any Kansas authority applying a discovery

_____

[10] Plaintiff cannot dispute this on appeal because he did not dispute it at the district court level. (*See Banks*, No. 15-3093 (Doc. 198 at 11-16)); *see also McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 999 (10th Cir. 2002) ("absent extraordinary circumstances, we will not consider arguments raised for the first time on appeal").
[11] Plaintiff cannot dispute this on appeal because he did not dispute it at the district court level. (*See Banks*, No. 15-3093 (Doc. 198 at 11-16).)

rule to a claim for unjust enrichment, court would not apply such a rule to the three year statute of limitations); *Perry H. Bacon Tr. v. Transition Partners, Ltd.*, 298 F. Supp. 2d 1182, 1190 (D. Kan. 2004) ("the Kansas Supreme Court, if faced with the issue, would decline to apply the discovery rule to non-fraud-based claims"). *Cf.*, *Law v. Law Co. Bldg. Assocs.*, 295 Kan. 551, 576, 289 P.3d 1066 (2012) ("The Kansas Legislature has not provided a discovery exception in K.S.A. 60-511, and Kansas courts cannot engraft an exception which the legislature, perhaps because of the policy issues raised by the Defendants, has not included in the statute.").

Therefore, as a practical matter, the question presented here concerning the state wiretap claim is whether it was brought or commenced against Virden on or before the three-year anniversary of the March through May 2013 wiretaps, *i.e.* May 10, 2016 at the latest. It was not.

### 3. *Tolling due to incarceration does not apply because Plaintiff had access to the courts.*

At the district-court level, the Plaintiff claimed the Kansas tolling statute for disability applies. (*Banks*, No. 15-3093 (Doc. 198 at 12-13).) But that statute expressly exempts its application "if a person

imprisoned for any term has access to the court for purposes of bringing an action." K.S.A. § 60-515(a). *See Vann v. Fewell*, No. 20- 3200, 2021 WL 3510202, at *2 (D. Kan. Aug. 10, 2021); *Parker v. Bruce*, 109 F. App'x 317, 319 (10th Cir. 2004); *see also Bulmer v. Bowling*, 27 Kan. App. 2d 376, 378, 4 P.3d 637, 638 (2000) ("The legislature clearly intended for prisoners to be bound by applicable statutes of limitation so long as they have access to the courts"). Plaintiff did not timely serve his complaint. But his "access" to the courts is shown by the fact he was able to file the complaint and by his subsequent filings in this suit.

4. *For purposes of the state-law claim, state law determines when this action commenced for statute of limitations purposes.*

State law determines when an action is commenced for the state's statute of limitations purposes. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751 (1980); *Burnham v. Humphrey Hosp. Reit Tr., Inc.*, 403 F.3d 709, 712 (10th Cir. 2005). State service of process rules that form an integral part of a state's statute of limitations control in actions based upon state law even when filed in federal court. *Walker*, at 752-53. This rule was reiterated in *West v. Conrail*, 481 U.S. 35, 39 n.4 (1987), where the court stated that state law provides the statute of limitations and also determines whether service must be obtained within that time

period. *See also*, *In Seguros Popular C. x A. v. Raytheon Aircraft*, No 05–1002–JTM, 2005 WL 2099705, *1 (D. Kan. Aug. 30, 2005) ("This court has rejected as 'without merit' the argument that Rule 4(m) preempts Kansas limitations law as to claims arising under state law.").

The Supreme Court long ago established "rights enjoyed under local law should not vary because enforcement of those rights was sought in the federal court rather than in the state court." R*agan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 532 (1949) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). "[W]e look to local law to find the cause of action on which suit is brought. Since that cause of action is created by local law, the measure of it is to be found only in local law. It carries the same burden and is subject to the same defenses in the federal court as in the state court." *Ragan* at 533. In *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752-53 (1980), the Court explained that its holdings in *Erie* and *Ragan* also dictate that "state service requirements which are an integral part of the state statute of limitations should control in an action based on state law which is filed in federal court under diversity jurisdiction." *West v. Conrail*, 481 U.S. 35, 39, n.4 (1987), reiterated, "[w]hen the underlying cause of action is

based on state law, and federal jurisdiction is based on diversity of citizenship, state law not only provides the appropriate period of limitations but also determines whether service must be effected within that period."

Although here the state law claims come to the Court through supplemental jurisdiction rather than diversity jurisdiction, applying different rules because of variance in the source of the Court's subject matter jurisdiction to review the state wiretap claims would be antithetical to the reasoning in *Ragan*, *Walker*, and *West*.

Thus, K.S.A. § 60-203(a) operates to determine when an action is "brought" for the purposes of K.S.A. § 60-512. *E.g., Burnham v. Humphrey Hosp. Reit Tr., Inc.*, 403 F.3d 709, 715 (10th Cir. 2005) (finding the claim time barred because service was first made after the 90 days period); *Fisher v. DeCarvalho*, 298 Kan. 482, 493, 314 P.3d 214, 221 (2013) (recognizing the rule). K.S.A. § 60-203(a) provides:

> (a) **Time of commencement**. A civil action is commenced at the time of: (1) Filing a petition with the court, *if service of process is obtained* or the first publication is made for service by publication *within 90 days after the petition is filed, except that the court may extend that time an additional 30 days upon a showing of good cause by the plaintiff*; or (2) *service of process* or first publication,

> ***if service of process*** or first publication ***is not made within the time specified by paragraph (1)***.

*Id.* (emphasis supplied).

Virden was not served by Plaintiff until March 13, 2018. (R. vol. I at 12 (Doc. 85 docket entry); *see also Banks*, No. 15-3093 (Doc. 174 at ¶ 4; Doc. 198 at ¶ 4).) As a result, his state wiretap claims were time barred nearly two years before they were brought or commenced for purpose of the Kansas statute of limitations.

Although Rule 3 of the Federal Rules of Civil Procedure provides that an action is commenced upon the filing of a complaint, Rule 3 does not toll the state statute of limitations with respect to state law claims. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750-51 (1980).

Accordingly, the Court can affirm the district court's grant of summary judgment to Virden on the alternative ground that the statute of limitations bars Plaintiff's claims against Virden.

### C. Virden did not violate the federal wiretap law as a matter of law.

The Tenth Circuit remanded the Plaintiff's wiretap claims on the basis that the "extraterritorial" interceptions of the Plaintiff's phone calls were authorized by wiretap orders which allegedly "all defendants

32

knew or had reason to know" were "beyond" "Judge Platt['s]" "jurisdiction," so as to be "invalid on [their] face." *Thompson*, 815 F. App'x at 235. However, lacking the judicial authority ***under Kansas statutes*** to order a wiretap of "extraterritorial" communications by a state judge is not a violation of Title I of the Electronic Communications Privacy Act (the federal wiretap statutes) so long as the judge qualifies as a "judge of competent jurisdiction" as defined in 18 U.S.C.A. § 2510(9)(b). Judge Platt satisfied that qualification.

In *Ivory v. Platt*, No. 15-3051, 2016 WL 5916647 (D. Kan. Oct. 11, 2016), Hon. Judge Sam Crow had the same facts and issue before him. He stated:

> The federal trial judge in plaintiff's criminal case determined that the Kansas wiretap statute was more restrictive than the federal statute, found that the state district court had authorized the wiretap request only under the Kansas statute, then suppressed that evidence obtained in violation of the Kansas law. Judge Platt's order, even if it was issued outside his territorial jurisdiction as defined by state law, is not shown to have amounted to a federal statutory or constitutional violation.

*Ivory*, 2016 WL 5916647, at *12.

It is true that the K.S.A. § 22-2516(3) provides: "Upon such application the judge may enter an ex parte order, as requested or as

33

modified, authorizing the interception of wire, oral or electronic communications ***within the territorial jurisdiction of such judge.***" *Id.* (emphasis supplied). However, by contrast, 18 U.S.C. § 2518 states: "(1) Each application for an order authorizing or approving the interception of a wire, oral, or electronic communication under this chapter shall be made in writing upon oath or affirmation to a ***judge of competent jurisdiction*** and shall state the applicant's authority to make such application. …" *Id.* (emphasis supplied). A judge of competent jurisdiction is defined in the federal statutes to include "a judge of any court of general criminal jurisdiction of a State who is authorized by a statute of that State to enter orders authorizing interceptions of wire, oral, or electronic communications[.]" 18 U.S.C. § 2510(9)(b). The federal statutes, therefore, do not impose the state statute's "territorial jurisdiction" restriction.

For the purposes of the federal statutes, Judge Platt presided as a court of general criminal jurisdiction. *See* K.S.A. § 20-301. *See also Matter of Marriage of Williams*, 307 Kan. 960, 967-68, 417 P.3d 1033 (2018) ("Kansas district courts are generally described as courts of general jurisdiction, which means they have subject-matter jurisdiction

over 'all matters, both civil and criminal, unless otherwise provided by law,'" citing § 20-301). His position is and was authorized, by statute "to enter orders authorizing interceptions of wire, oral, or electronic communications." K.S.A. §§ 22-2514(8), 22-2516.

The portions of the federal statutes at issue focus on assuring a certain quality of the public officials who will pass on issuing wiretaps. *See United States v. Pacheco*, 489 F.2d 554, 563 (5th Cir. 1974) ("Congress obviously did not intend to specify the particular state courts that could issue wiretap orders; instead, it described the quality of public officials who should pass upon such matters."); *United States v. Ruiz*, No. 09 CR. 719 DAB, 2010 WL 4840055, at *6 (S.D.N.Y. Nov. 19, 2010) (Congresses' "operative concern on this issue is that a neutral judge pass on the probable cause and exhaustion requirements—not that a particular judge in the same office perform the duty.")

As a result, the federal wiretap statutes are not violated if the qualified public official does not satisfy state wiretap law's territorial limitation. *See United States v. Ruiz*, No. 09 CR. 719, 2010 WL 4840055, at *6 (S.D.N.Y. Nov. 19, 2010) (holding Title III, paralleling Title I, provides that any active United States District Judge or Circuit Judge

is capable of signing a wiretap application and empowers any state court judge of general criminal jurisdiction that is authorized by statute to enter orders authorizing interceptions. "As such, even if Defendant could put forth evidence that Judge Morgan was not a proper designee under California state law, Title III would not be offended since there is no comparable judge-designee system required in federal court."); *United States v. Bourassa*, No. 418CR00003, 2019 WL 7559293, at *17 (N.D. Ga. July 25, 2019), report and recommendation adopted, No. 4:18-CR-00003, 2019 WL 5288137 (N.D. Ga. Oct. 18, 2019) ("while the orders authorizing the state wiretaps in the Cobb County prosecution were issued by Cobb County Superior Court Judges, the warrants were executed in other counties, thereby rendering them defective *under state law,* the federal law's statutory requirements were met if the listening post was in the State of Georgia"); *United States v. Kaplan*, No. CRIM.A. 06-719, 2009 WL 3806277, at *12 (E.D. Pa. Nov. 13, 2009), *aff'd*, 526 F. App'x 208 (3d Cir. 2013) ("[I]t does not follow that" the Pennsylvanian Superior Court's lack of original jurisdiction under Pennsylvanian law "is therefore disqualified from being a court of general criminal jurisdiction under [18 U.S.C. § 2510(9)(b)]. ... The

Court therefore concludes that the Pennsylvania Superior Court is a court of general criminal jurisdiction as contemplated by Title III.").

Accordingly, the Court can affirm the district court's grant of summary judgment to Virden on the alternative ground that Virden's actions did not violate Plaintiff's statutory rights.

## CONCLUSION

For the foregoing reasons, Virden respectfully asks this Court to affirm the district court's December 27, 2021, order granting summary judgment in his favor.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
KRIS KOBACH

/s/ Matthew L. Shoger
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
785-296-2215
Fax: (785) 291-3767
*Attorney for Defendant Virden*

## CERTIFICATE REGARDING SEPARATE BRIEFS

In accordance with 10th Cir. R. 31.3(B), the undersigned states that there is a need for a separate brief on behalf of Glen F. Virden

because:

1.    The Defendants are separately represented and raise different factual and legal issues requiring separate briefing.

2.    The Defendants are governmental entities or employees of governmental entities and so are exempt from the joint briefing rule under 10th Cir. R. 31.3(D).

4.    Defendant Brown, in his brief, has asserted that his arguments are dissimilar from those of other defendants because he "occupied a position dissimilar from that of the other Defendants because he did not actively participate in the collection, use and distribution of Thompson's intercepted messages. Rather, he provided logistic support to the Task Force."

3.    Defendant Wolf, in his brief, has asserted that his arguments are dissimilar from those of other defendants "because Wolf's participation was limited, thus his argument that he didn't intercept, disclose or use any of Anthony Thompson's communications is unique to him."

5.    Separate briefing by Defendants is the most appropriate

means to clearly present their positions on appeal.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 7,730 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 10th Cir. R. 32(b), as calculated by the word-counting function of Microsoft Word.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type style requirements of Fed. R. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface – 14-point Century Schoolbook – using Microsoft Word.

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that a copy of the foregoing BRIEF OF DEFENDANTS-APPELLEES, as submitted in digital form via the Court's ECF system, is an exact copy of the written document filed with the Clerk.

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd of October, 2023, the foregoing BRIEF OF DEFENDANTS-APPELLEES was electronically filed with the Clerk of the Tenth Circuit Court of Appeals by using the CM/ECF system. I certify that I caused seven paper copies to be delivered by

Federal Express to the Clerk's Office within five business days of this

filing. I further certify that I cause one paper copy to be deposited in the

United States Mail, first-class postage prepaid, addressed to:

> Anthony Carlyle Thompson
> 1316 SW Western Ave., Apt. 1
> Topeka, KS 66604
> *Plaintiff-Appellant, pro se*

DATED: October 23, 2023          /s/ Matthew L. Shoger
                                 Matthew L. Shoger
                                 Assistant Attorney General

# ATTACHMENTS

## 10th Cir. R. 28.2(B) Attachments

Addendum A ..........D. Kan. Order (Doc. 70) ........................................... 42

Addendum B ..........D. Kan. Mem. & Order (Doc. 111) ............................ 51

Addendum C ..........D. Kan. Mem. & Order (Doc. 136) ............................ 67

Addendum D ..........D. Kan. Mem. & Order (*Banks*, Doc. 208) ................ 77

## Fed. R. App. P. 28(f) Attachments

Addendum E ..........18 U.S.C. §§ 2510, 2516-18, 2520 ............................ 91

Addendum F ..........K.S.A. 20-301 ...................................................... 111

Addendum G ..........K.S.A. 22-2514, -2516, -2518 ................................ 112

Addendum H ..........K.S.A. 60-203 ..................................................... 122

Addendum I ..........K.S.A. 60-512, -515 .............................................. 123

Addendum J ...........Fed. R. Civ. P. 3, 4 ............................................... 125

Addendum K ..........Fed. R. Civ. P. 56 ................................................ 133

Addendum L ..........D. Kan. Rule 56.1................................................. 136

Addendum M .........Fed. R. App. P. 28 ................................................ 138

Addendum N ..........Fed. R. App. P. 32 ................................................ 141

Addendum O ..........10th Cir. R. 28 ..................................................... 145

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


ANTHONY THOMPSON,

                    Plaintiff,

vs.                                    Case No. 15-3117-SAC

DAVID L. PLATT, et al.,

                    Defendants.


**O R D E R**

This case is before the court for the primary purpose of deciding plaintiff's <u>pro se</u> motion to amend.   Doc. No. 45. Plaintiff filed this action on May 14, 2015.  The court screened the original complaint and issued a show cause order on July 21, 2015.  Plaintiff responded to the show cause order.  On March 16, 2016, the court granted plaintiff's motion to stay the case pending appellate proceedings in plaintiff's related criminal prosecution.  Then, on September 29, 2017, the court lifted the stay, considered plaintiff's response to the show cause order, and further screened plaintiff's original complaint.  Some claims and defendants were dismissed.  The court also authorized the issuance of waivers of service of summons as to some defendants.  There are motions to dismiss currently pending from the defendants who have waived service of summons.  The court

1

Addendum A

considers Doc. No. 54 to be plaintiff's proposed amended complaint.

This case arises from a criminal investigation. Plaintiff alleges in the proposed amended complaint that defendants violated state and federal law and the Constitution in the collection and disclosure of cell phone oral communications and text messages. Plaintiff asserts that cell phone calls were intercepted by defendants without proper judicial authorization. Plaintiff further claims that text messages were collected without judicial authorization. The proposed amended complaint names the following defendants: David L. Platt, former Geary County District Judge; Glen F. Virden, KBI agent; Timothy Brown, former Junction City Police Chief; Tony Wolf, Geary County Sheriff; and T-Mobile U.S.A. Defendants Platt, Virden, Brown and Wolf are sued in their individual and official capacities.

I. <u>Motion to amend standards</u>

Granting or denying leave to amend is within this court's discretion. <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 401 U.S. 321, 330 (1971). "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The purpose of the rule allowing amendments is to increase the opportunity to have each claim decided on its merits. See <u>Minter v. Prime Equipment Co.</u>, 451 F.3d 1196, 1204 (10th Cir. 2006). A district court should deny leave to amend "'only

2

43

[upon] a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.'" Wilkerson v. Shinseki, 606 F.3d 1256, 1267 (10th Cir. 2010)(quoting Duncan v. Manager, Dep't of Safety, City & County of Denver, 397 F.3d 1300, 1315 (10th Cir. 2005)(citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Of these factors, "undue prejudice" is the most important factor in deciding a motion to amend. Minter, 451 F.3d at 1207. "[I]f the court is persuaded that no prejudice will accrue, the amendment should be allowed." Charles A. Wright, et al., FEDERAL PRACTICE & PROCEDURE § 1487 (3d ed. 2017). Prejudice occurs typically when an amended claim arises out of a different subject matter and raises new factual issues which unfairly affect the preparation of a defense to a new claim. Minter, 451 F.3d at 1208. Delay can sometimes place a prejudicial burden upon an opposing party and the court. Therefore, "undue prejudice" is closely related to "undue delay." Id. at 1205.

"'If a proposed amendment is not clearly futile, then denial of leave to amend [on futility grounds] is improper.'" Youngblood v. Qualls, 2017 WL 5970828 *2 (D.Kan. 12/1/2017)(quoting Wright, et al., 6 FEDERAL PRACTICE & PROCEDURE § 1487)). A proposed amendment is futile if the complaint, as amended, would be subject to dismissal. Mackley

3

44

v. Telecom Holdings, Inc., 296 F.R.D. 655, 660 (D.Kan. 2014).
The party opposing the motion to amend has the burden to
establish futility.   Id. at 661.   Here, a rigorous futility
analysis would be redundant because the court retains an
independent obligation to screen a complaint and dismiss invalid
claims under the provisions of 28 U.S.C. §§ 1915(e)(2) and
1915A.

As mentioned, "undue delay" may be a proper reason to deny a
motion to amend.   Cohen v. Longshore, 621 F.3d 1311, 1313 (10th
Cir. 2010).   The court must consider the explanation for the
delay.   Id.; see also, Frank v. U.S. West, Inc., 3 F.3d 1357,
1365 (10th Cir. 1993)(untimeliness alone is a sufficient reason
to deny leave to amend, especially when there is no adequate
explanation).

II.   The proposed amended complaint

The amended complaint alleges that on March 5, 2013
defendant Platt issued a wiretap order which directed the
interception of oral communications outside of his territorial
jurisdiction as a state district court judge.   It further
alleges that T-Mobile received the wiretap order on March 8,
2013 and intercepted and disclosed text and picture messages
(electronic communications) even though the wiretap order did
not authorize the interception and disclosure of such messages.
Plaintiff claims that defendants Wolf, Brown and Virden had

knowledge that they illegally obtained oral communications and text and picture messages, but disclosed them to the United States Attorney's Office in violation of state and federal law. Plaintiff asserts that he did not find out that his phone had been tapped until June 4, 2013 after he had been arrested and appears upon criminal charges. Plaintiff further contends that it was months later when he saw the discovery in his criminal case.

Plaintiff contends that defendants violated: the Kansas Wiretap Act, K.S.A. 22-2514 et seq. (Count I); the Federal Wiretap Act, 18 U.S.C. 2510 et seq. (Count II); the Fourth Amendment (Count III); and unspecified provisions against conspiracy (Count IV). Plaintiff seeks monetary relief.

III. The motion to amend shall be granted.

The opposition filed to the motion to amend does not substantially or persuasively argue undue prejudice. There is no claim that the amended complaint if permitted to proceed would unfairly affect defendants' preparation or otherwise cause significant prejudice. So, the most important factor for the court's consideration favors granting leave to amend. Aside from futility, which the court shall consider in the screening process, the opponents' main argument is undue delay. The court finds that there are reasons to excuse the delay in bringing the motion to amend. Plaintiff is proceeding pro se and has been

incarcerated in different locations during this litigation. Prison transfers can be disruptive and cause delay. This case was stayed for a significant time period as well. These are legitimate excuses for the delay in bringing the motion to amend.

Finding that there has been no showing of undue prejudice, undue delay, bad faith or dilatory motive, the court shall grant the motion to amend. The court will consider the alleged futility of the motion to amend as the court screens the amended complaint.

Any defendant named in the original complaint, but not named in the amended complaint, shall be dismissed from this action. Defendants' motions to dismiss the original complaint shall be considered moot.

IV. <u>Screening</u>

The court shall apply the same screening standards as were applied in the court's order at Doc. No. 3, pp. 5-6. The court's screening review has been informed by arguments advanced in defendants' motions to dismiss. But, because those motions are considered moot, the court shall not rule directly upon the arguments.

For the reasons described at pp. 4-6 of Doc. No. 9, defendant Platt shall be dismissed as a defendant upon immunity grounds. Plaintiff's official capacity claims against

6

defendants Platt and Brown shall be dismissed. The amended
complaint identifies each of these defendants in his "former"
capacity as judge and police chief. Because Platt and Brown are
alleged to be no longer serving in a relevant official capacity,
the claims against them in an official capacity should be
dismissed. See Mathie v. Fries, 121 F.3d 808, 818 (2d Cir.
1997); Wishom v. Hill, 2004 WL 303571 *8 (D.Kan. 2/13/2004);
Kmetz v. State Historical Society of Wisconsin, 300 F.Supp.2d
780, 786 (W.D.Wis. 2003). For the reasons set forth at pp. 7-8
of Doc. No. 11, plaintiff's § 1983 claim against defendant
Virden in his official capacity shall be denied upon Eleventh
Amendment immunity grounds.

Otherwise, the court shall permit plaintiff's claims to
proceed. At this stage, the court believes plaintiff has stated
plausible claims. There may be defenses regarding qualified
immunity, good faith, statute of limitations, res judicata,
absence of state action, and the possible application of Heck v.
Humphrey among others. But, the court is not convinced on the
face of the amended complaint that these defenses must prevail.[1]
The court is also mindful that many of the arguments raised by
the parties and considered by the court are affirmative defenses
which should be used to dismiss claims at the screening stage

---

[1] The court recognizes that a related case, Ivory v. Platt, 2016 WL 5916647
(D.Kan. 10/11/2016), was dismissed at the screening stage. The plaintiff's
claims in Ivory, however, were more limited legally and factually than the
claims made in this case.

only in "'extraordinary instances when the claim's factual
backdrop clearly beckons the defense.'" Banks v. Geary County
Dist. Court, 645 Fed.Appx. 713, 717 (10th Cir. 4/14/2016)(quoting
Trujillo v. Williams, 465 F.3d 1210, 1217 (10th Cir. 2006)).
Here, the factual backdrop is not so clear that the court has
confidence that additional claims should be dismissed at the
screening stage.

V.    Conclusion

Plaintiff's motion to amend (Doc. No. 45) shall be granted.
The amended complaint is Doc. No. 54. The currently pending
motions to dismiss (Doc. Nos. 11, 29, 37 and 41) and the motion
to proceed to trial (Doc. No. 20) shall be considered moot.
Upon screening the amended complaint, the court directs that:
defendant Platt be dismissed; the official capacity claims
against defendants Platt and Brown be dismissed; the § 1983
claim against defendant Virden in his official capacity be
dismissed; and that defendants Bennett, Hicks, Geary County,
Kansas Bureau of Investigation, Junction City Police Department
and Geary County Sheriff's Office be dismissed without
prejudice.

**IT IS SO ORDERED.**

Dated this 20th day of February, 2018, at Topeka, Kansas.


s/Sam A. Crow    _____
Sam A. Crow, U.S. District Senior Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANTHONY THOMPSON,

    Plaintiff,

    v.

GLEN F. VIRDEN, et al.,

    Defendants.

Case No. 5:15-cv-03117-HLT-KGS

## MEMORANDUM AND ORDER

Plaintiff Anthony Thompson brings this action pro se,[1] asserting claims for violation of state and federal wiretap statutes, violation of the Fourth Amendment, and conspiracy. Doc. 71. Each of the remaining defendants—Defendants T-Mobile U.S.A., Glen Virden, Timothy Brown, and Tony Wolf—has moved to dismiss Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Docs. 75, 78, 80, 100. For the following reasons, the Court dismisses Plaintiff's claims against Defendants.

## I.    BACKGROUND

### A.  Criminal Investigation

The following background is based on the record and accepts as true Plaintiff's well-pleaded factual allegations.[2] This case stems from the interception of cellular communications in

---

[1] Because Plaintiff proceeds pro se, his pleadings are construed liberally. *See Ivory v. Platt*, 2016 WL 5916647, at *6 (D. Kan. 2016). However, Plaintiff is not relieved of his burden of alleging sufficient facts upon which a recognized legal claim could be based. *Id.*

[2] The facts set forth in Parts I.A and B are taken from Plaintiff's amended complaint (Doc. 71) and the records of Plaintiff's criminal case (Case No. 5:13-cr-40060-DDC). *See Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) (holding that, when considering a motion to dismiss, "the court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record"), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001); *Pace v. Swerdlow*, 519 F.3d 1067, 1072-73 (10th Cir. 2008) (finding district court was correct to take judicial notice of state court materials in considering motion to dismiss).

Addendum B

connection with an investigation—jointly conducted by the Kansas Bureau of Investigation ("KBI"), the Junction City Police Department, the Geary County Sheriff's Office, and the Riley County Police Department—into a suspected narcotics-trafficking conspiracy. In or around March and April 2013, Geary County District Court Judge David Platt entered a series of orders authorizing the interception of Plaintiff's (and his suspected co-conspirators') "wire communications." Defendant Glen Virden—special agent with the KBI in charge of the investigation—executed the orders, with directives to Defendant T-Mobile U.S.A. ("T-Mobile") and other service providers to intercept communications transmitted to and from the targeted phones. Virden affixed his signature to the orders, along with Defendant Timothy Brown (former chief of the Junction City Police Department) and Defendant Tony Wolf (Geary County Sheriff), among others.

Pursuant to the orders, the investigating agents intercepted phone calls and text messages from Plaintiff's—and others'—phones. Federal criminal drug trafficking charges were ultimately filed against Plaintiff in this Court.

### B. Motions to Suppress

#### 1. Text Message Evidence

In connection with the underlying criminal case, Plaintiff (and his co-defendants) moved to suppress text message evidence, arguing that the state court orders, on their face, authorized interception of "wire communications" only and did not permit authorities to intercept "electronic communications" (such as text messages). District Judge Daniel D. Crabtree agreed that the orders authorized interception of "wire communications" only and that text messages constitute "electronic" rather than "wire" communications. Judge Crabtree declined to suppress the text message evidence, however, finding that the investigators' conduct in intercepting the text

messages fell within the "good faith" exception to the Fourth Amendment's exclusionary rule. In so holding, Judge Crabtree found that "the issuing judge and executing officers both understood the intended scope of the wiretap authorization, and that the authorization included interception of text messages." *United States v. Banks*, 2014 WL 4261344, at *5 (D. Kan. 2014). Judge Crabtree concluded that the officers' reliance on this understanding was "objectively reasonable." *Id.*

## 2.  Extra-Territorial Communications

Plaintiff and his co-defendants also moved to suppress wiretap evidence, arguing that investigators had improperly intercepted communications outside of the territorial jurisdiction of the issuing judge (Judge Platt). During the hearing on Plaintiff's motion, Judge Crabtree ruled that the orders violated Kansas law to the extent they authorized the interception of communications on phones located outside Judge Platt's judicial district. Judge Crabtree accordingly ordered that the government present evidence regarding the physical location of the tapped phones at the time of the intercepted calls in order to determine which communications, if any, warranted suppression.

Following the presentation of evidence, Judge Crabtree suppressed all but 7,000 of the 67,000 total communications intercepted during the course of the investigation. As to the 7,000 surviving communications, Judge Crabtree ruled that the government had offered sufficient evidence that the communications were made by phones located inside Judge Platt's territorial jurisdiction. Judge Crabtree ordered the suppression of the extra-territorial intercepted communications. In connection with this decision, although declining to apply the exclusionary rule's good faith exception to evidence collected from wiretaps, Judge Crabtree noted that "one would not expect the officers executing search warrants to have apprehended the subtle, technical jurisdictional defect that forms the basis of the Court's threshold suppression ruling." *United States*

*v. Banks*, 2015 WL 2401048, at *3 (D. Kan. 2015), *vacated on other grounds by Banks v. United States*, 138 S. Ct. 2707 (2018).

### C. Civil Case

Plaintiff proceeded to file this action for civil relief against various county officials, agencies, agency officials, and service providers,[3] alleging they violated state and federal law and the United States Constitution by intercepting and disclosing his communications (both oral and text) without proper judicial authorization. Docs. 1, 71. In the operative complaint,[4] Plaintiff asserts that Wolf, Brown, and Virden knew or had reason to know that the state court orders directed the interception of communications outside of Judge Platt's territorial jurisdiction. Doc. 71 ¶ 11. Plaintiff further alleges that—upon receipt of the order—T-Mobile improperly intercepted and disclosed text messages to the investigating authorities, even though the order did not expressly authorize the interception and disclosure of "electronic communications." *Id.* at ¶ 12. Plaintiff claims that Wolf, Brown, and Virden knew they illegally obtained the messages and extra-territorial calls, but nonetheless provided them to prosecutors in violation of state and federal law. *Id.* at ¶¶ 13-15.

Based on these allegations, Plaintiff asserts claims for: violation of the Kansas wiretap statute, K.S.A. §§ 22-2514, *et seq.*; violation of the federal Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. §§ 2510, *et seq.*; violation of the Fourth Amendment; and conspiracy. *Id.* at ¶¶ 20-44. Each of the four remaining defendants—T-Mobile, Virden, Brown,

---

[3]  The majority of the defendants have since been dismissed, including: Judge Platt; Ben Bennett (Geary County commissioner); Larry Hicks (Geary County commissioner); Geary County, Kansas; the KBI; the Junction City Police Department; and the Geary County Sheriff's Office. Doc. 70.

[4]  Plaintiff was granted leave to amend his complaint on February 20, 2018, and the amended complaint was entered by the Court. Docs. 70-71.

4

and Wolf—now moves to dismiss Plaintiff's claims. Docs. 75, 78, 80, 100. Plaintiff opposes Defendants' motions. Docs. 88-89, 90-91, 92-93, 106-107.[5]

## II.    STANDARD

Under Rule 12(b)(6), to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's claim is facially plausible if he pleads sufficient factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully" but "is not akin to a 'probability requirement.'" *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

This standard results in two principles that underlie a court's analysis. *Id.* First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Stated differently, though the court must accept well-pleaded factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "In keeping with these [two] principles, a court considering a

---

[5]  This Court construes Plaintiff's submission styled "Motion to Deny Defendant's Request to Dismiss the Amended Complaint" (Doc. 106) and accompanying memorandum in support (Doc. 107) as his opposition to Virden's motion to dismiss.

motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

## III.    ANALYSIS

Virden, Brown, Wolf, and T-Mobile each move to dismiss pursuant to Rule 12(b)(6) for failure to state a claim for relief. Docs. 75, 78, 80, 100. The arguments advanced by Virden, Brown, and Wolf have considerable overlap, with each arguing (1) that their "good faith reliance" upon the state court's orders shields them from exposure under federal and state wiretap statutes, (2) that qualified immunity protects them from individual liability for Plaintiff's Fourth Amendment claim,[6] and (3) that, in any event, Plaintiff fails to state a claim for relief. Docs. 76, 81, 101. Wolf— who remains subject to a claim in his capacity as Geary County Sheriff—also argues that he is protected by Eleventh Amendment immunity and, further, that Plaintiff fails to allege any unconstitutional policy or custom sufficient to hold him liable in his official capacity. Doc. 81 at 12-13.

Like Virden, Brown, and Wolf, T-Mobile argues that its good faith reliance exempts it from liability for violation of Kansas wiretap laws and the ECPA. Doc. 79 at 6-8. With respect to Plaintiff's constitutional claim, T-Mobile argues that it cannot be held liable because (1) it has not engaged in any state action, and (2) even if it had, it is nonetheless entitled to absolute immunity. *Id.* at 4-6. The Court addresses each of Plaintiff's claims in turn.

---

[6] In his amended complaint, Plaintiff names Virden, Brown, and Wolf in both their individual and official capacities. Doc. 71 ¶¶ 2-3, 5. However, the Court previously dismissed Plaintiff's official capacity claims against Virden and Brown; only their individual capacity claims remain. Doc. 70 at 8. Both Plaintiff's official and individual capacity claims against Wolf remain. *Id.*

### A. Violation of State and Federal Wiretap Statutes

Counts I and II of Plaintiff's amended complaint assert claims against Defendants under the Kansas wiretap statute and the federal ECPA, which impose civil liability on those who unlawfully intercept electronic communications. *See* 18 U.S.C. § 2520; K.S.A. § 22-2518. However, both statutes provide a "complete defense" where a defendant has relied in good faith upon a court order authorizing interception. *See* 18 U.S.C. § 2520(d)(1) ("A good faith reliance on . . . a court warrant or order . . . is a complete defense against any civil or criminal action brought under this chapter or any other law."); K.S.A. § 22-2518(2) ("A good faith reliance by any person on a court order authorizing the interception of any wire, oral or electronic communication shall constitute a complete defense in any civil or criminal action brought against such person based upon such interception."). In their motions to dismiss, Defendants argue that, because Judge Crabtree found in the underlying criminal case that Defendants relied in good faith upon the state court orders, they are immune from suit under the good faith exceptions and Counts I and II therefore fail to state a claim for relief.

The Court agrees with Defendants and finds that the record establishes Plaintiff's wiretap claims are barred by the good faith defense. As set forth above, before his criminal trial, Plaintiff moved to suppress wiretap and text message evidence, asserting similar arguments to the ones raised in this case. In ruling on Plaintiff's motions to suppress, Judge Crabtree held that the investigators' conduct in intercepting the text messages fell within the good faith exception to the Fourth Amendment's exclusionary rule, finding that "the issuing judge and executing officers both understood the intended scope of the wiretap authorization, and that the authorization included interception of text messages." *Banks*, 2014 WL 4261344, at *5. Judge Crabtree concluded that the officers' reliance on this understanding was "objectively reasonable." *Id.* Judge Crabtree

further noted in connection with his decision on Plaintiff's motion to suppress extra-territorial communications that "one would not expect the officers executing search warrants to have apprehended the subtle, technical jurisdictional defect that forms the basis of the Court's threshold suppression ruling." *Banks*, 2015 WL 2401048, at *3.

Judge Crabtree's reasoning in the underlying criminal case is equally applicable to the arguments raised in Plaintiff's civil case. *See Wright v. Florida*, 495 F.2d 186, 1090 (5th Cir. 1974) (holding that good faith reliance on a court order is a defense to both Fourth Amendment claims and Section 2520 of the ECPA). And the amended complaint fails to assert any facts from which the Court could reasonably infer that Defendants did not act in good faith reliance upon Judge Platt's orders. Although Plaintiff generally alleges that Defendants intercepted and disclosed communications despite knowing (or having reason to know) that the interceptions and disclosures were not properly authorized (Doc. 71 ¶¶ 11-15), bald allegations are not enough. Defendants' good faith reliance provides a complete defense to Plaintiff's wiretap claims. *See Reed v. Labbe*, 2012 WL 5267726, at *9 (C.D. Cal. 2012) (relying on findings of the district court and court of appeals in plaintiff's underlying criminal case in concluding that Section 2520(d) provided a complete defense to plaintiff's claims under the ECPA, warranting dismissal under Rule 12(b)(6)). The amended complaint therefore fails to state a claim for violation of state and federal wiretap statutes.[7]

---

[7]  T-Mobile also falls under the ECPA's exception for providers of wire or electronic communication service. *See* 18 U.S.C. § 2511(2)(a)(ii). Under the ECPA, "provider[s] of wire or electronic communication service" (such as T-Mobile) are exempted from liability "for providing information, facilities, or assistance in accordance with the terms of a court order." *Id.* Dismissal of Plaintiff's ECPA claim—as against T-Mobile—is warranted on this additional basis.

### B.  Violation of the Fourth Amendment

Next, Plaintiff claims Defendants' conduct in allegedly violating federal and state wiretap laws—as detailed in Part III.A, *supra*—violated his Fourth Amendment rights. Doc. 71 ¶ 41. Plaintiff brings this claim pursuant to 42 U.S.C. § 1983, which provides a cause of action against any individual who, under color of state law, causes another to be deprived of a constitutional right. *See West v. Atkins*, 487 U.S. 42, 48 (1988). For the reasons set forth below, Plaintiff fails to state a claim under Section 1983 against any of the Defendants, warranting dismissal pursuant to Rule 12(b)(6).

### 1.  Virden and Brown

Because this Court previously dismissed Plaintiff's Section 1983 claims against Virden and Brown in their official capacities, only Plaintiff's individual capacity claims against Virden and Brown remain.[8] In their motions to dismiss, Virden and Brown argue that qualified immunity shields them from individual liability. Docs. 76 at 6-9, 101 at 4-6. For the following reasons, the Court agrees.

Qualified immunity protects public officials from civil liability provided their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 23 (2009). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Once an official has raised a defense of qualified immunity, the plaintiff bears the burden to show

---

[8]  *See supra* note 6.

(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the conduct at issue. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).[9]

Under the second prong, a right is "clearly established" for purposes of the qualified-immunity analysis where it is sufficiently clear that every reasonable official would have understood that his conduct violated that right. *Mullenix*, 136 S. Ct. at 308. To satisfy this step, courts do not require a case "directly on point," but the plaintiff must identify existing precedent—either controlling authority or "a robust 'consensus of cases of persuasive authority'"—placing the constitutional question "beyond debate." *al-Kidd*, 563 U.S. at 741-42. To do that, the precedent "must be 'particularized' to the facts of the case" before the Court. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (noting that courts should not define "clearly established law" at "a high level of generality").

Here, Plaintiff has not met his burden of showing a violation of clearly established law. In his amended complaint, in support of his constitutional claim, Plaintiff asserts: that a violation of state and federal wiretap laws is "necessarily" a violation of the Fourth Amendment; that the statutes "were specifically codified" to protect Plaintiff's constitutional rights; and that a violation of these statutes alone is sufficient to establish a cause of action under Section 1983. Doc. 71 ¶ 41. Yet Plaintiff identifies no authority—let alone a controlling opinion or a "robust consensus" of persuasive authority—supporting his contentions or otherwise holding that the Fourth Amendment is violated by the <u>specific facts</u> presented here. The onus is on Plaintiff to identify existing precedent placing the constitutional question beyond debate. Because Plaintiff has not satisfied his

---

[9]  The order in which the two prongs of the qualified-immunity analysis are evaluated is within the discretion of this Court. *See al-Kidd*, 563 U.S. at 735.

burden, qualified immunity shields Virden and Brown from individual liability on Plaintiff's constitutional claim.

### 2. Wolf

Unlike Virden and Brown, Wolf remains subject to claims against him in both his individual capacity and his official capacity as Geary County Sheriff.[10] For the reasons set forth with respect to Virden and Brown in Part III.B.1, qualified immunity also protects Wolf from individual liability for Plaintiff's Section 1983 claim. Plaintiff has not shown a violation of clearly established law. In the absence of such a showing, the Court must dismiss Plaintiff's Section 1983 claim against Wolf in his individual capacity.

Plaintiff's claims against Wolf in his official capacity likewise fail because Plaintiff fails to allege any unconstitutional policy or custom as required under Section 1983. While an individual capacity suit seeks to impose personal liability upon a government official for actions taken under color of state law, an official capacity suit is, in essence, an action against the entity that employs the officer. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Under Section 1983, although governmental entities may be subject to liability, they may not be held liable on a respondeat superior theory. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978). A plaintiff must instead show that "the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action." *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000).

Plaintiff's allegations do not permit the Court to reasonably infer that Wolf is liable under Section 1983. In his amended complaint, Plaintiff claims that Wolf (along with Virden and Brown)

---

[10]  *See supra* note 6.

11

knew Plaintiff's text messages and extra-territorial calls were illegally obtained but provided them to prosecutors anyway, asserting that this conduct demonstrated an unconstitutional policy or custom. Doc. 71 ¶ 14. Plaintiff does not allege any facts tending to show that Wolf's alleged actions were characteristic of any policy or custom of the Geary County Sheriff's Office, or that the conduct alleged infringed upon Plaintiff's constitutional rights. Although Plaintiff generally alleges that Wolf "had final decision making authority" within his office, he provides no factual allegations to support this assertion. *Id.* at ¶ 11. The allegations presented in the amended complaint do not provide a basis for the Court to reasonably infer that Wolf is liable under Section 1983. Accordingly, Plaintiff's official capacity claim against Wolf must be dismissed for failure to state a claim.

### 3. T-Mobile

Plaintiff's Section 1983 claim against T-Mobile is likewise subject to dismissal for two independent reasons. First, Plaintiff fails to allege facts sufficient to show an essential element of his claim: that T-Mobile acted under color of state law. To state a claim under Section 1983, a plaintiff must (1) allege the violation of a constitutional right or a right secured under the laws of the United States, and (2) show that the alleged violation was committed by an individual acting under color of state law. *West*, 487 U.S. at 48. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Under Section 1983, therefore, claims may only be brought against defendants who represent the state in some capacity. *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988). "Private individuals and entities may be deemed state actors, however, if they have 'acted together with or [have] obtained

significant aid from state officials, or [if their] conduct is otherwise chargeable to the state.'" *Johnson v. Rodrigues*, 293 F.3d 1196, 1202 (10th Cir. 2002) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

Plaintiff has not alleged facts sufficient to show that T-Mobile engaged in the requisite state action to support his Section 1983 claim. Indeed, although Plaintiff alleges T-Mobile "act[ed] under the color of state law," the only conduct Plaintiff attributes to T-Mobile in his amended complaint is, generally, that T-Mobile intercepted and disclosed his text messages to investigators without proper judicial authorization. Doc. 71 ¶¶ 7, 12. Acting in accordance with a court order does not itself constitute action performed under color of state law. *See Green v. Truman*, 459 F. Supp. 342, 344-45 (D. Mass. 1978) (finding state court order "does not clothe [defendant] with the authority of state law necessary to satisfy the state actor requirement"); *Melnitzky v. HSBC Bank USA*, 2007 WL 1159639, at *9 (S.D.N.Y. 2007) ("[T]he mere compliance with a court order does not constitute action under color of state law."). Plaintiff alleges no other conduct to establish that T-Mobile, as a private actor, acted under color of state law. Plaintiff's bare allegations and legal conclusions are insufficient to state a claim.

Second, T-Mobile is absolutely immune from liability for Plaintiff's Section 1983 claim. "Just as judges acting in their judicial capacity are absolutely immune from liability under section 1983, 'official[s] charged with the duty of executing a facially valid court order enjoy[] absolute immunity from liability for damages in a suit challenging conduct prescribed by that order.'" *Turney v. O'Toole*, 898 F.2d 1470, 1472 (10th Cir. 1990) (citations omitted) (quoting *Valdez v. City & Cty. of Denver*, 878 F.2d 1285, 1286 (10th Cir. 1989)). "[T]he power to execute judicial decrees is no less an important and integral part of the judicial process than the roles of those officials previously afforded absolute immunity" and "[a]bsolute immunity for officials assigned

to carry out a judge's orders is necessary to insure that such officials can perform their function without the need to secure permanent legal counsel." *Valdez*, 878 F.2d at 1287-88. The Tenth Circuit has stated:

> To force officials performing ministerial acts intimately related to the judicial process to answer in court every time a litigant believes the judge acted improperly is unacceptable. Officials must not be called upon to answer for the legality of decisions which they are powerless to control . . . <u>[I]t is simply unfair to spare the judges who give orders while punishing the officers who obey them</u>.[11]

*Id.* at 1289 (emphasis added). Under the doctrine of absolute immunity, therefore, acts taken at the direction of the state court orders cannot form the basis for Plaintiff's Section 1983 claim against T-Mobile. *See T & W Inv. Co. v. Kurtz*, 588 F.2d 801, 802-03 (10th Cir. 1978) (holding that receiver named as a defendant in corporation's civil rights action was a court officer who shared the judge's immunity to the extent he carried out the orders of his appointing judge); *Jarvis v. Roberts*, 489 F. Supp. 924, 929 (W.D. Tex. 1980) (in case involving claim under Section 1983, finding that—where bank was merely complying with court order—actions complained of "were essentially those taken by the Court through its orders" and bank could not be held liable). For these reasons, dismissal of Plaintiff's Section 1983 claim against T-Mobile is warranted.

### C. Conspiracy

Finally, Plaintiff asserts a claim for conspiracy, alleging Defendants conspired to commit the wiretap and constitutional violations asserted in his amended complaint. This claim must likewise be dismissed pursuant to Rule 12(b)(6) because the amended complaint contains only conclusory allegations of conspiracy and is devoid of any facts to support those allegations.

---

[11] Indeed, Plaintiff's Section 1983 claim against the state court judge who issued the orders—Judge Platt—was previously dismissed on the basis of absolute immunity. Docs. 9, 70.

14

To state a claim for conspiracy under Section 1983, "a plaintiff must plead that he was deprived of a constitutional right as a result of a conspiracy comprised of or including conspirators acting under color of state law." *Leatherwood v. Rios*, 705 F. App'x 735, 739 (10th Cir. 2017). A federal conspiracy action under Section 1983 "requires at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective." *Brooks v. Gaenzle*, 614 F.3d 1213, 1227-28 (10th Cir. 2010). Similarly, under Kansas law, the elements of a civil conspiracy claim are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds; (4) one or more unlawful overt acts; and (5) damages as a proximate result thereof. *Jackson v. Kan. Cty. Ass'n Multiline Pool*, 2005 WL 756773, at *6 (D. Kan. 2005). Under either state or federal law, conclusory allegations of conspiracy are insufficient; a plaintiff must instead plead specific facts to establish the requisite elements. *Brooks*, 614 F.3d at 1228; *Jackson*, 2005 WL 756773, at *6.

Here, Plaintiff's conspiracy claim fails for two reasons. First, for the reasons set forth in Parts III.A and B, *supra*, Plaintiff has failed to establish the existence of an underlying unlawful act—either a violation of state or federal wiretap law or a constitutional violation—necessary to state his claim. Second, Plaintiff does not plead facts sufficient to infer the existence of a meeting of the minds, an agreement, a general conspiratorial objective, or any concerted action among Defendants. Plaintiff alleges only: that Virden, Brown, and Wolf "knowingly conspired with one another" to commit the alleged acts; that Virden, Brown, and Wolf knew or had reason to know that the interceptions were legally required to take place only within Judge Platt's territorial jurisdiction; and that Virden, Brown, and Wolf knew that T-Mobile had intercepted text messages without judicial authorization, but nonetheless disclosed the messages to prosecutors. Doc. 71 ¶¶ 42-44. These conclusory allegations are not enough. Plaintiff has not come forward with

specific facts showing the requisite elements of a civil conspiracy. Although, given his pro se status, Plaintiff's pleadings are to be liberally construed, Plaintiff is not relieved of his burden to allege sufficient facts upon which a recognized claim can be based. *See Ivory v. Platt*, 2016 WL 5916647, at *6 (D. Kan. 2016). Dismissal of Plaintiff's conspiracy claim is warranted.

## IV.    CONCLUSION

THE COURT THEREFORE ORDERS that Defendants' motions to dismiss the amended complaint (Docs. 75, 78, 80, 100) are GRANTED.

IT IS SO ORDERED.

Dated: November 16, 2018                       /s/  *Holly L. Teeter*_____
                                               HOLLY L. TEETER
                                               UNITED STATES DISTRICT JUDGE

16

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANTHONY THOMPSON,

        Plaintiff,

        v.                                  Case No. 5:15-cv-03117-HLT-KGS

GLEN F. VIRDEN, et al.,

        Defendants.

## MEMORANDUM AND ORDER

In this action, pro se[1] Plaintiff Anthony Thompson asserts claims for violation of state and federal wiretap statutes, violation of the Fourth Amendment, and conspiracy related to the interception of his cellular communications in connection with a criminal investigation. Doc. 71. Plaintiff seeks reconsideration of the Court's November 16, 2018 Memorandum and Order granting the motions to dismiss filed by each of the remaining defendants to this action— Defendants T-Mobile U.S.A., Glen Virden, Timothy Brown, and Tony Wolf. Doc. 111. For the reasons discussed below, the Court denies Plaintiff's motion.

## I.      BACKGROUND

The factual background underlying the parties' dispute is set forth in detail in the Court's November 16, 2018 order and is not repeated at length herein. *Id.* In sum, this case stems from the interception of Plaintiff's cellular communications in connection with an investigation into a suspected narcotics-trafficking conspiracy. Following that investigation, Plaintiff was indicted on federal criminal drug trafficking charges. Plaintiff subsequently filed this civil action, alleging that

---

[1] As a pro se litigant, Plaintiff is entitled to leniency and the Court liberally construes his allegations. *See Hunt v. Sapien*, 2007 WL 1520906, at *1 (D. Kan. 2007). The Court, however, may not become an advocate for Plaintiff. *Id.* (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

Addendum C

various officials, agencies, and service providers violated state and federal law and the United States Constitution by intercepting and disclosing his communications without proper judicial authorization. Based on these allegations, Plaintiff asserted claims for: violation of the Kansas wiretap statute, K.S.A. §§ 22-2514, *et seq.*; violation of the federal Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. §§ 2510, *et seq.*; violation of the Fourth Amendment; and conspiracy.

Defendants—each of whom was associated to some extent with the investigation into the drug trafficking allegations—moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff failed to state a claim for relief. On November 16, 2018, the Court agreed, granting Defendants' motions and dismissing Plaintiff's claims. Doc. 111. In its order, the Court found that: (1) Plaintiff's claims under the Kansas wiretap statute and the federal ECPA are barred by the good faith defense; (2) qualified immunity protects Virden, Brown, and Wolf from individual liability for Plaintiff's Fourth Amendment claim; (3) Plaintiff's claim against Wolf in his official capacity likewise fails because Plaintiff does not allege any unconstitutional policy or custom; (4) Plaintiff cannot establish a Fourth Amendment claim against T-Mobile because Plaintiff cannot show the requisite state action and, regardless, T-Mobile is absolutely immune from liability; and (5) Plaintiff fails to establish the existence of an underlying unlawful act necessary to support his conspiracy claim or to plead sufficient facts. *Id.* Judgment was accordingly entered in favor of Defendants. Doc. 112. On November 30, 2018, however, Plaintiff moved to alter or amend the Court's judgment pursuant to Rule 59(e).[2] Doc. 113.

---

[2] Plaintiff has also submitted a "Request to Grant the Requested Relief Against Defendant Glen Virden." Doc. 131. In that submission, Plaintiff contends the Court should "grant the requested relief from [his] motion under Rule 59(e)" as against Virden because, as of the date of his request, he had not yet received Virden's response to his motion. *Id.* The Court denies Plaintiff's request. A district court may, in its discretion, consider an untimely filing where the failure to timely act was the result of excusable neglect. *See* FED. R. CIV. P. 6(b); *Essence, Inc. v. City of Fed. Heights*, 285 F.3d 1272, 1288 n.14 (10th Cir. 2002). The Court finds that consideration of the pertinent factors—including the relatively minimal length of delay by Virden in responding to the motion to alter or amend, the lack of any impact on

## II.     STANDARD

District of Kansas Rule 7.3(a) provides that "[p]arties seeking reconsideration of dispositive orders or judgments must file a motion pursuant to Fed. R. Civ. P. 59(e) or 60." Grounds warranting relief from judgment under Rule 59(e) include: (1) an intervening change in controlling law, (2) the availability of new evidence that could not have been obtained previously through the exercise of due diligence, and (3) the need to correct clear error or prevent manifest injustice. *Brinkman v. Norwood*, 2018 WL 1806758, at *1 (D. Kan. 2018); *see also Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Such a motion "is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Servants of the Paraclete*, 204 F.3d at 1012. But it is not a vehicle to "revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.* Nor is it "a second chance for the losing party to make its strongest case or to dress up arguments that previously failed." *Voelkel v. Gen. Motors Corp.*, 846 F. Supp. 1482, 1483 (D. Kan. 1994). The party seeking relief bears the burden of demonstrating that he is entitled to such relief. *Brinkman*, 2018 WL 1806758, at *1. Reconsideration of a judgment is an extraordinary remedy and should be used sparingly. *Id.*

## III.     ANALYSIS

Plaintiff moves under the third ground for relief only: the need to correct clear error or prevent manifest injustice. Doc. 113. Plaintiff asserts nine different bases that he alleges constitute error warranting reconsideration, arguing: (1) the Court erred in relying on the statutory good faith defense to dismiss Plaintiff's wiretap claims; (2) Judge Crabtree's findings with respect to good

---

these proceedings occasioned by that delay, and the risk of prejudice to Virden were the Court to grant Plaintiff's request—justifies denial of Plaintiff's request. *See Secure Techs. Int'l v. Block Spam Now, LLC*, 2004 WL 2005787, at *2 (D. Kan. 2004) ("In determining whether the excusable neglect standard is met, courts should consider all relevant circumstances, including (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith."). Finally, even if the Court did not consider Virden's response, Plaintiff's motion fails on the merits for the reasons explained in this order.

faith in the underlying criminal case have no applicability to the disposition of Plaintiff's claims here; (3) Tenth Circuit precedent dictates that the good faith exception does not apply to improper execution of a warrant; (4) the Court erred in finding Plaintiff failed to state a Fourth Amendment claim; (5) Virden and Brown are not entitled to qualified immunity because they violated a clearly established right; (6) Wolf is subject to liability in his official capacity because his conduct was representative of an institutional policy or custom; (7) the Court erred in finding T-Mobile did not act under color of state law; (8) T-Mobile is not entitled to absolute immunity because its actions were not authorized by the wiretap orders; and (9) Plaintiff has pleaded sufficient facts to establish a conspiracy. *Id.*

The first three bases identified by Plaintiff appear to go to the disposition of his state and federal wiretap claims, and bases four through eight are directed at his Fourth Amendment claim. The final alleged basis for error concerns the Court's dismissal of Plaintiff's conspiracy claim. The Court accordingly addresses the allegations of error with respect to each claim.

### A.  Alleged Error in Dismissal of State and Federal Wiretap Claims

Counts I and II of the amended complaint assert claims against Defendants under the Kansas wiretap statute and the federal ECPA. The Court held that both counts failed to state a claim because the wiretap statutes provide a complete defense where a defendant relies in "good faith" upon a court order authorizing interception. Doc. 111 at 7-8. Accordingly, based on Judge Crabtree's findings in the underlying criminal case, the Court held that Defendants were immune from suit under the good faith exceptions. *Id.* at 8. The Court further found that T-Mobile—as a "provider of wire or electronic communication service"—was also statutorily exempt from liability under the ECPA. *Id.* at 8 n.7.

4

In his motion, Plaintiff generally argues that the Court erred in relying on the statutory good faith defense to dismiss his wiretap claims. Doc. 113 at 2. But Plaintiff identifies no clear error in the Court's judgment, instead either rehashing arguments already advanced or presenting new legal theories that could have been—but were not—raised in his prior briefing. Neither approach is the proper function of a Rule 59(e) motion.

First, Plaintiff contends that Judge Crabtree's findings with respect to good faith in the underlying criminal case have no applicability to the disposition of Plaintiff's claims in this action. *Id.* at 3. Specifically, Plaintiff argues it was improper for the Court to rely upon Judge Crabtree's findings because Plaintiff presented facts in this action that were not considered by Judge Crabtree. *Id.* at 3-7. The Court already rejected this argument in its order, holding the Court was entitled to rely upon the findings in the underlying criminal case in concluding that Defendants' good faith provided a complete defense to Plaintiff's wiretap claims. Doc. 111 at 8; *see, e.g.*, *Wright v. Florida*, 495 F.2d 186, 1090 (5th Cir. 1974) (holding that good faith reliance on a court order is a defense to both Fourth Amendment claims and § 2520 of the ECPA); *Reed v. Labbe*, 2012 WL 5267726, at *9 (C.D. Cal. 2012) (relying on findings of the district court and court of appeals in plaintiff's underlying criminal case in concluding that § 2520(d) provided a complete defense to plaintiff's claims under the ECPA, warranting dismissal under Rule 12(b)(6)). This argument merely rehashes issues already addressed in the briefing of, and the Court's ruling on, Defendants' motions to dismiss, which is improper. *See, e.g.*, *Servants of the Paraclete*, 204 F.3d at 1012; *Brinkman*, 2018 WL 1806758, at *1. Plaintiff may not use his motion as a second chance to argue his case. *See Voelkel*, 846 F. Supp. at 1483.

Second, Plaintiff contends that Tenth Circuit precedent—*United States v. Medlin*, 798 F.2d 407 (10th Cir. 1986)—dictates that the good faith exception does not apply to improper execution

of a warrant. Doc. 113 at 7. Plaintiff argues that the Court's finding that the good faith exception applies here conflicts with *Medlin* and must be amended to comply with precedent. *Id.* Significantly, however, Plaintiff did not make this argument in his briefing on Defendants' motions to dismiss—this is the first time he has raised this theory. Rule 59(e) does not permit a losing party to present new legal arguments that could have been raised in earlier filings. *See, e.g.*, *Brinkman*, 2018 WL 1806758, at *1; *Jiying Wei v. Univ. of Wyo. Coll. of Health Sch. Pharmacy*, 2019 WL 117081, at *3 (10th Cir. 2019) (holding that motions under Rule 59 are "inappropriate for advancing new arguments or supporting facts that could have been raised in prior briefing").[3]

Plaintiff has not met his burden of showing that the Court has misapprehended the facts, his position, or the controlling law so as to justify relief under Rule 59(e). The Court accordingly rejects Plaintiff's arguments for reconsideration of its dismissal of Counts I and II.

### B. Alleged Error in Dismissal of Constitutional Claim

Count III of Plaintiff's amended complaint asserts a claim pursuant to 42 U.S.C. § 1983 for violation of Plaintiff's Fourth Amendment rights. In dismissing this claim, the Court held: (1) that qualified immunity shielded Virden, Brown, and Wolf from individual liability under § 1983; (2) that Wolf was not subject to liability in his official capacity because Plaintiff failed to allege any unconstitutional policy or custom as required under § 1983; and (3) with respect to T-Mobile, that Plaintiff could not show the requisite state action and, regardless, T-Mobile was absolutely immune from liability. Doc. 111 at 9-14.

In his motion to alter or amend, Plaintiff alleges there is clear error in the Court's ruling on this claim because he properly pleaded a Fourth Amendment claim. Doc. 113 at 7. First, Plaintiff

---

[3] Even considering this argument, however, the Court finds that *Medlin* is inapposite and that the Court's finding regarding the application of the good faith exception here is not in conflict with *Medlin*.

claims Virden and Brown violated a clearly established right and are therefore not entitled to qualified immunity.[4] *Id.* at 8-10. As the Court explained in its holding, once an official raises qualified immunity, the plaintiff bears the burden to show (1) the official violated a statutory or constitutional right and (2) the right was "clearly established" at the time of the challenged conduct. Doc. 111 at 9-10; *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Plaintiff appears to take issue with the fact that the Court, in its order on the motions to dismiss, opted to first consider the second prong of the qualified-immunity analysis—whether the right was clearly established. This argument fails. As the Court noted in its holding, the order in which the two prongs are evaluated is within the Court's discretion. Doc. 111 at 10 n.9; *see also al-Kidd*, 563 U.S. at 735. According to the Supreme Court, this flexibility reflects an understanding that "the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case." *Pearson v. Callahan*, 555 U.S. 223, 242 (2009). This Court exercised its discretion to consider the second prong first and found that Plaintiff did not meet his burden of showing a violation of clearly established law. Doc. 111 at 10-11. This was proper. *See, e.g.*, *Pearson*, 55 U.S. at 242; *al-Kidd*, 563 U.S. at 735; *Brown v. Montoya*, 662 F.3d 1152, 1171 n.15 (10th Cir. 2011) (noting that, for a qualified-immunity analysis, the court "can decide first, under *Pearson*, whether the constitutional right the defendant has allegedly violated was clearly established").

Furthermore, in his response to the motions to dismiss, Plaintiff did not identify any authority establishing that the Fourth Amendment is violated by the specific facts of this case. *See*

---

[4] Although, as discussed above, the Court's November 16, 2018 order also included a finding that Wolf was entitled to qualified immunity from individual liability under § 1983 (Doc. 111 at 11), Plaintiff's motion does not appear to contest that finding. However, to the extent it does, the Court finds that—for the reasons set forth with respect to Virden and Brown—Plaintiff has not shown the Court clearly erred in finding Wolf was entitled to qualified immunity.

*al-Kidd*, 563 U.S. at 741-42 (to show a violation of clearly established law, the plaintiff must identify either controlling authority or a "robust consensus" of persuasive authority placing the constitutional question "beyond debate"). Nor does Plaintiff now come forward with any such authority in connection with this motion to alter or amend. Plaintiff has not shown the Court clearly erred in finding Virden and Brown were entitled to qualified immunity.

Second, Plaintiff argues the Court erred in holding that Wolf was not subject to liability under § 1983 in his official capacity. Doc. 113 at 10-12. Plaintiff contends that—contrary to the Court's holding—the amended complaint pleaded sufficient facts to "clearly show" an official policy or custom or, alternatively, to "permit the Court to infer" such a custom. *Id.* To support this argument, Plaintiff reasserts a number of facts from the amended complaint that this Court has already considered and held insufficient to show a custom or policy establishing liability in Wolf's official capacity. Plaintiff may not use his Rule 59(e) motion as a vehicle to revisit issues already addressed. *See Servants of the Paraclete*, 204 F.3d at 1012. Again, Plaintiff has not shown clear error justifying amendment of the judgment.

Third, with respect to T-Mobile, Plaintiff argues the Court erred in finding T-Mobile did not act under color of state law. Doc. 113 at 12-15. Again, the Court rejected this argument in its order, holding that T-Mobile's conduct in complying with the state court's wiretap order did not constitute state action. Doc. 111 at 12-13; *see, e.g.*, *Green v. Truman*, 459 F. Supp. 342, 344-45 (D. Mass. 1978) (finding state court order "does not clothe [defendant] with the authority of state law necessary to satisfy the state actor requirement"); *Melnitzky v. HSBC Bank USA*, 2007 WL 1159639, at *9 (S.D.N.Y. 2007) ("[T]he mere compliance with a court order does not constitute action under color of state law."). Plaintiff's arguments on this point merely rehash issues raised in his prior briefing and do not provide any basis for clear error.

Fourth, Plaintiff contends that T-Mobile's conduct was not authorized by the state court wiretap orders. Doc. 113 at 15. Because Plaintiff contends the conduct was unauthorized, Plaintiff argues the Court erred in finding T-Mobile was entitled to absolute immunity. *Id.* Again, the Court has considered and rejected this argument. The Court found that T-Mobile acted in accordance with facially valid wiretap orders. Doc. 111 at 13-14. Therefore, under the doctrine of absolute immunity, those acts cannot form the basis for a § 1983 claim against T-Mobile. *Id.*; *see, e.g.*, *T & W Inv. Co. v. Kurtz*, 588 F.2d 801, 802-03 (10th Cir. 1978) (holding that receiver named as a defendant in corporation's civil rights action was a court officer who shared the judge's immunity to the extent he carried out the orders of his appointing judge); *Jarvis v. Roberts*, 489 F. Supp. 924, 929 (W.D. Tex. 1980) (in case involving claim under § 1983, finding that—where bank was merely complying with court order—actions complained of "were essentially those taken by the Court through its orders" and bank could not be held liable). Plaintiff has not showed the Court committed clear error in holding T-Mobile was entitled to absolute immunity.

Because Plaintiff fails to show that the Court has misapprehended the facts, his position, or the controlling law, the Court denies Plaintiff's request for reconsideration of its dismissal of Count III.

### C.  Alleged Error in Dismissal of Conspiracy Claim

Plaintiff's final cause of action, Count IV, asserts a claim for conspiracy, alleging Defendants conspired to commit the wiretap and constitutional violations asserted in this lawsuit. The Court dismissed this claim, finding the amended complaint contained only conclusory allegations without any supporting facts. Doc. 111 at 14-16. The Court also held that, for the reasons set forth in its analysis of Plaintiff's other claims, Plaintiff failed to establish the existence of an underlying unlawful act necessary to support his conspiracy claim. *Id.*

9

In his motion, Plaintiff argues the Court erred in finding that he did not plead sufficient facts to establish a conspiracy between Virden, Brown, and Wolf. Doc. 113 at 15-16. Plaintiff also contends the Court erred in concluding there was no constitutional violation or violation of state or federal wiretap law to support his conspiracy claim. *Id.* Again, the Court already considered and disposed of these arguments in its order on the motions to dismiss. Plaintiff may not use his motion as a vehicle to rehash issues and arguments previously addressed. *See Servants of the Paraclete*, 204 F.3d at 1012. Plaintiff has not shown that the Court misapprehended the facts, his position, or the controlling law so as to justify reconsideration. The Court therefore denies Plaintiff's request for reconsideration of its dismissal of Count IV.[5]

## IV.     CONCLUSION

THE COURT THEREFORE ORDERS that Plaintiff's motion to alter or amend the Court's judgment of dismissal (Doc. 113) is DENIED.

THE COURT FURTHER ORDERS that Plaintiff's motion for order asking that the Court grant the requested relief against Defendant Glen Virden (Doc. 131) is DENIED.

IT IS SO ORDERED.

Dated: March 20, 2019                    /s/  *Holly L. Teeter*
                                         HOLLY L. TEETER
                                         UNITED STATES DISTRICT JUDGE

---

[5]  In his motion, Plaintiff also requests the Court "certify" or "adjudicate" certain alleged "undisputed facts" in this lawsuit pursuant to Rule 54(b) and (c). Doc. 113 at 16-18. The Court denies this request as Rule 54(b) (applying where "fewer than all" claims have been decided) and 54(c) (applying to default judgments and relief to be granted) have no application to Plaintiff's motion to alter or amend.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ALBERT DEWAYNE BANKS,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 5:15-cv-03093-HLT-GEB** |
| **STEVEN L. OPAT, et al.,** | |
| **Defendants.** | |

| | |
|---|---|
| **ANTHONY THOMPSON,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 5:15-cv-03117-HLT-GEB** |
| **GLEN F. VIRDEN, et al.,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

Plaintiffs Albert Banks and Anthony Thompson[1] bring claims under state and federal wiretapping laws against Defendants Steven L. Opat, Glen F. Virden, Timothy Brown, and Tony Wolf ("Individual Defendants"). They also bring claims against Sprint/Nextel Wireless Telephone Company, Virgin Mobile USA/Sprint PCS, and T-Mobile USA Inc. ("Carrier Defendants"). All Defendants move for summary judgment. Docs. 173, 175, 177, 179, 181. For the reasons outlined below, the Court grants Individual Defendants' motions for summary judgment. But the Court denies Carrier Defendants' motion for summary judgment.

---

[1]   Banks and Thompson filed their cases separately, both initially proceeding pro se. Banks asserts claims against Opat, Virden, Brown, and Sprint. Thompson asserts claims against Virden, Brown, Wolf, and T-Mobile. The cases have since been consolidated, *see* Doc. 160, and the Court appointed counsel to represent both Plaintiffs. *Id.* Unless otherwise specified, all docket citations are to Case No. 15-03093, which is the lead case.

Addendum D

I.     **BACKGROUND**

Starting in February 2012, the Kansas Bureau of Investigation ("KBI"), the Junction City Police Department, the Geary County Sheriff's Office, and the Riley County Police Department jointly conducted a narcotics-trafficking investigation. Doc. 174 at 4; Doc. 198 at 2. The lead law enforcement officer for the KBI during the investigation was KBI Special Agent Glen Virden. Doc. 174 at 3-4; Doc. 198 at 4. The Chief of the Junction City Police Department was Timothy Brown. Doc. 176 at 8; Doc. 197 at 3. Tony Wolf was the Sheriff of Geary County starting in January 2013. Doc. 180 at 2; Doc. 199 at 1. Pursuant to this investigation, then-Geary County Attorney Steven Opat applied for and received several wiretap orders from Judge David Platt in Kansas's Eighth Judicial District. *See, e.g.*, Docs. 174-2 & 174-3. For all the applications, probable cause was supported by Virden's affidavit. *See id.*

In the spring of 2013, Judge Platt issued several wiretap orders. Relevant to Plaintiffs, the initial orders only authorized interception of wire communications (not electronic communications, i.e. text messages). *See* Doc. 174-2 at 1; Doc. 174-3 at 75, 154; Doc. 174-6 at 224. The orders also authorized interception even if the phones were taken outside the territorial jurisdiction of the Eighth Judicial District, which is where Judge Platt sat. *See* Doc. 174-3 at 75, 154; Doc. 174-6 at 224. Subsequent wiretap orders by Judge Platt explicitly authorized interception of electronic communications, but they still applied extra-territorially. *See* Doc. 379-25 at 257; Doc. 379-27 at 270. Other orders in the investigation that were directed at different individuals and phone numbers were later clarified to include text messages because certain carriers refused to intercept messages without clarification from Judge Platt. *See* Doc. 182-13 at 2; Doc. 182-14 at 2. Sprint/Nextel was one of the carriers who sought a clarification order for one of Judge Platt's

wiretap orders, but it did not seek any clarification for the orders at issue in this case. Doc. 182-14 at 2. The clarification orders do not apply to the wiretap orders in this case.[2]

As a result of the investigation, Banks and Thompson were charged in federal court with controlled-substance offenses. Banks and Thompson moved to suppress text messages that were intercepted pursuant to orders that only authorized intercepting wire communications. *Banks*, 2014 WL 4261344, at *1. The court denied the motion to suppress because it determined that text interceptions fell within the good-faith exception to the Fourth Amendment's exclusionary rule. *Id.* at *5. The court did, however, suppress 60,000 communications that were intercepted outside Judge Platt's jurisdiction. Doc. 174 at 15; Doc. 198 at 5. Still, the court noted in one of its subsequent rulings (in dicta) that the executing officers were almost certainly acting in good faith as to the extra-territorial interceptions "because one would not expect the officers executing the search warrants to have apprehended the subtle, technical jurisdictional defect that form[ed] the basis of the Court's threshold suppression ruling." *United States v. Banks*, 2015 WL 2401048, at *3 (D. Kan. 2015). Banks and Thompson were ultimately convicted of multiple controlled substance offenses. *See United States v. Thompson*, 2021 WL 3826532 (10th Cir. 2021) (declining to vacate conviction); Order, *United States v. Banks*, No. 5:13-cr-40060 (D. Kan. 2021), ECF No. 1368 (same).

Plaintiffs separately brought civil actions claiming violations of state and federal wiretap statutes, violations of the Fourth Amendment, and conspiracy. This Court dismissed their claims. *Banks v. Opat*, 2018 WL 6031188, at *8 (D. Kan. 2018); *Thompson v. Virden*, 2018 WL 6046469,

---

[2] Plaintiffs dispute the validity of the clarification orders. Doc. 196 at 8. But Plaintiffs' arguments are unpersuasive, not supported by appropriate evidence, and do not create a genuine dispute. Plaintiffs' arguments are additionally undermined because they relied on one of the clarification orders in their complaints. *See* Doc. 74 ¶13; Amended Complaint, *Thompson v. Virden*, No. 5:15-cv-03117 (D. Kan. 2018), ECF No. 71 ¶13. And the clarification orders were also used in Plaintiffs' criminal proceedings. *See United States v. Banks*, 2014 WL 4261344, at *4 (D. Kan. 2014). Thus, there is no genuine dispute of fact about the clarification orders. *See* Fed. R. Civ. P. 56(e).

at *8 (D. Kan. 2018). The Tenth Circuit affirmed in part, but it remanded for further proceedings

on Plaintiffs' state and federal statutory wiretap claims stemming from Individual Defendants'

interception and disclosure of extra-territorial communications and Carrier Defendants'

interception and disclosure of text messages. *Banks v. Opat*, 814 F. App'x 325, 338 (10th Cir.

2020); *Thompson v. Platt*, 815 F. App'x 227, 240 (10th Cir. 2020). On remand, Defendants have

all moved for summary judgment on these issues. Docs. 173, 175, 177, 179, 181.

## II.    STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party

bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that

genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586-87 (1986). In applying this standard, courts view the facts and any reasonable inferences in a

light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567,

569 (10th Cir. 1994). "An issue of material fact is genuine if a 'reasonable jury could return a

verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)).

## III.   ANALYSIS

### A.    Individual Defendants

#### 1.   Absolute Prosecutorial Immunity—Opat

Opat argues that he is entitled to absolute immunity because all his challenged actions were

undertaken in his role as a prosecutor and advocate for the State of Kansas. Banks[3] argues that

---

[3]    Only Banks asserts a claim against Opat.

Opat's actions were administrative or investigative in nature, and thus absolute immunity is not appropriate. "Functions that serve as an 'integral part of the judicial process' or that are 'intimately associated with the judicial process' are absolutely immune from civil suits." *Benavidez v. Howard*, 931 F.3d 1225, 1230 (10th Cir. 2019) (citation and alteration omitted). Absolute immunity is less likely to attach to a function that is more distant from the judicial process. *Id.*

In *Burns v. Reed*, 500 U.S. 478 (1991), the Supreme Court held that a prosecutor was absolutely immune from suit for his participation in a probable-cause hearing. *Id.* at 487. The Court reasoned that "[t]he prosecutor's actions at issue here—appearing before a judge and presenting evidence in support of a motion for a search warrant—clearly involve the prosecutor's 'role as advocate for the State,' rather than his role as 'administrator or investigative officer.'" *Id.* at 491 (citation omitted).

In contrast, in *Kalina v. Fletcher*, 522 U.S. 118 (1997), the Supreme Court held that although the prosecutor was absolutely immune for filing an information and a motion for an arrest warrant, she was not absolutely immune when she gave sworn testimony as a witness. *Id.* at 129-31. Specifically, to establish the grounds for a warrant, the prosecutor had executed a document entitled "Certification for Determination of Probable Cause," where she personally vouched for the truth of the facts set forth in the certification under penalty of perjury. *Id.* at 121.

Here, Opat was acting as an advocate for the state in the judicial process and not as a complaining witness. Like the prosecutor in *Burns*, Opat was acting as an advocate in a probable-cause hearing to secure a warrant. Unlike the prosecutor in *Kalina*, Opat's application was based on Virden's affidavit rather than his own testimony. *See, e.g.*, Doc. 174-3 at 73. Notably, Judge Crow of this Court ruled that Opat was entitled to absolute prosecutorial immunity in a nearly

identical case filed by Banks's co-conspirator Johnny Ivory. *See Ivory v. Platt*, 2016 WL 5916647, at *11-12 (D. Kan. 2016).

Banks points to *Mitchell v. Forsyth*, 472 U.S. 511 (1985), to argue that Opat is not entitled to absolute immunity. *Mitchell* stands for the rule that the Attorney General is not absolutely immune for actions taken pursuant to his national security duties, which are distinct from judicial actions. *Id.* at 523. But aside from the underlying factual similarity of a wiretap occurring, *Mitchell* has little bearing on this case. Therefore, the Court grants Opat's motion for summary judgment based on absolute prosecutorial immunity.[4]

### 2. Good Faith—Virden, Brown, and Wolf

Both Plaintiffs assert claims against Virden and Brown for violations of state and federal wiretap statutes. Thompson brings the same claims against Wolf. Virden, Brown, and Wolf all assert statutory good-faith defenses, namely that they were acting in good faith based on Judge Platt's orders. Because there is significant overlap between the arguments by Virden, Brown, and Wolf, the Court addresses their good-faith arguments jointly.

The Court must decide, assuming these officers violated Plaintiffs' statutory rights, whether the officers were acting in good faith. Plaintiffs assert that the officers violated their statutory rights by intercepting, disclosing, and/or procuring communications outside Judge Platt's jurisdiction, in violation of Kansas law. K.S.A. § 22-2516(3). They also assert that the extra-territorial interceptions violate federal law under *United States v. McNulty*, 729 F.2d 1243, 1266 (10th Cir. 1983) (en banc) ("[T]he federal statute itself requires our deference to [state] law on the question of the validity of the wiretap order obtained in state court under state law.").

---

[4]   Opat argues in the alternative that he is entitled to summary judgment based on either qualified immunity, statutory good-faith defenses, issue preclusion, or *Heck v. Humphrey*. Opat also argues that Banks's purported damages are limited by the statute of limitations. The Court does not address these arguments because it holds for Opat on prosecutorial-immunity grounds.

Under state and federal law, any person who intercepts wire, oral, or electronic communications in good-faith reliance on a court order has a complete defense against any civil action. 18 U.S.C. § 2520(d); K.S.A. § 22-2518(2). "To be in good faith, the officers' reliance must have been objectively reasonable." *Davis v. Gracey*, 111 F.3d 1472, 1484 (10th Cir. 1997).[5]

The statutory good-faith defense is like the good-faith exception to the exclusionary rule for Fourth Amendment violations. *Banks*, 814 F. App'x at 331 (citing *United States v. Moore*, 41 F.3d 370, 376 (8th Cir. 1994)). Thus, Fourth Amendment good-faith law is instructive in understanding federal statutory good faith. Furthermore, Kansas has adopted the good-faith exception to the exclusionary rule without modification. *State v. Hoeck*, 163 P.3d 252, 265 (Kan. 2007). Therefore, Fourth Amendment caselaw also sheds light on the state-law defense.

In *United States v. Workman*, 863 F.3d 1313 (10th Cir. 2017), the Tenth Circuit reversed the district court's exclusion of evidence based on an invalid warrant because the executing agents acted in an objectively reasonable manner. *Id.* at 1315, 1321. There, the plaintiff had argued the warrant was invalid because the magistrate judge who issued it "lacked territorial jurisdiction under Rule 41(b) of the Federal Rules of Criminal Procedure and the Federal Magistrates Act, 28 U.S.C. § 636(a)." *Id.* at 1316. Under Rule 41(b), magistrate judges only have the authority to issue a warrant to seize a person or property located within their districts. *See* Fed. R. Crim. P. 41(b).

---

[5]  The Court recognizes that the circuits disagree on whether statutory good faith has a subjective component or is completely objective. *See, e.g., Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 249-54 (5th Cir. 2017) (examining the circuit split over a nearly identical good faith provision pertaining to stored electronic communications). The Tenth Circuit has used a good-faith test with a subjective component. *See Dahl v. Charles F. Dahl, M.D., P.C. Defined Benefit Pension Tr.*, 744 F.3d 623, 631 (10th Cir. 2014) ("[A] defendant may invoke the defense of good faith reliance on a court order only if he can demonstrate (1) that he had a subjective good faith belief that he acted legally pursuant to a court order; and (2) that this belief was reasonable." (alteration in original)). The Tenth Circuit, however, declined to adopt the subjective-objective test for future good-faith cases. *See id.* The Tenth Circuit cited an objective test when it remanded these cases. *Banks*, 814 F. App'x at 331; *Thompson*, 815 F. App'x at 233. Thus, the Court uses the objective test in *Davis*. Notably, Plaintiffs do not contest Virden's, Brown's, or Wolf's subjective good-faith belief. Therefore, the definitive question under either test is whether the reliance on the warrants was objectively reasonable.

7

In *Workman*, the FBI got a warrant from a magistrate judge in the Eastern District of Virginia. 863 F.3d at 1315. The warrant allowed them to install software on a child pornography website that allowed them to identify the website's users. *Id.* at 1315-16. The software identified Workman, who had accessed the website from Colorado. *Id.* at 1316. The FBI then got a search warrant in Colorado to search Workman's computer, and the FBI caught Workman in the act of downloading child pornography. *Id.* The district court, however, suppressed the evidence. *Id.* at 1317.

The Tenth Circuit assumed for the sake of argument that the magistrate judge lacked the jurisdiction to issue the warrant. *Id.* It then considered whether a reasonably well-trained agent would have known that the warrant was invalid despite the magistrate judge's authorization. *Id.* at 1320. The Tenth Circuit started with the presumption that executing agents act in good faith on a warrant. *Id.* It then bolstered that presumption with the following observations: "1. The software was installed in a government server located in the Eastern District of Virginia. 2. The magistrate judge, who issued the warrant, was in the Eastern District of Virginia. 3. All of the information yielded from the search would be retrieved in the Eastern District of Virginia." *Id.* It thus concluded that executing agents without sophisticated legal training could reasonably rely on the magistrate judge's authorization. *See id.*

This case is similar. Here, it is undisputed that the cellular phones, which were the subject of the interception orders, had been used in Geary County. Judge Platt, who issued the orders, was in the Eighth Judicial District of Kansas, which includes Geary County. And the Plaintiffs engaged in the underlying criminal activity in Geary County. Thus, there were objective ties to Judge Platt's jurisdiction. Consequently, it was reasonable for these officers, who are without sophisticated legal training, to rely on the state judge's authorization. Therefore, the Court grants Virden, Brown, and

Wolf summary judgment based on their statutory good-faith defenses under Kansas and federal law.[6]

Plaintiffs don't point to any evidence from which a reasonable jury could find a different result. Instead, they argue that there is no good-faith defense for a mistake of law. Their argument, however, relies on caselaw outside the warrant context. *See, e.g.*, *State v. Oram*, 266 P.3d 1227, 1235 (Kan. 2011) ("*Leon*'s good-faith exception to the exclusionary rule generally applies only narrowly outside the context of a warrant."); *see also Quigley v. Rosenthal*, 327 F.3d 1044, 1070 & n. 15 (10th Cir. 2003) (arising outside the warrant context and involving private attorneys with sophisticated legal training).

Moreover, Plaintiffs' argument is contrary to *Workman*, where the Tenth Circuit assumed the officers were incorrect that the magistrate judge had jurisdiction. Plaintiffs essentially argue that it is objectively unreasonable to rely on a legally insufficient warrant. But that would all but eliminate the good-faith defense, which begins with the premise of a legally deficient order or warrant. Officers are entitled to rely on judges who have more sophisticated legal training. Under 8 U.S.C. § 2520(d) and K.S.A. § 22-2518(2), it is not an officer's job to research caselaw and correct the judge. Notably, in the Fourth Amendment setting, there are four contexts where the good-faith presumption does not apply. None of them are mistake of law. *See, e.g.*, *United States v. Barajas*, 710 F.3d 1102, 1110-11 (10th Cir. 2013); *State v. Zwickl*, 393 P.3d 621, 628 (Kan. 2017).[7] A reasonably well-trained officer would not have known the orders were invalid despite

---

[6]  The fact that the government could not prove that all the intercepted cellular communications occurred when the phones were in or in contact with Geary County does not change the analysis. The objective connections to Geary County were sufficient for an individual without legal training to have a reasonable belief that the warrants were valid.

[7]  In the alternative, Brown and Wolf would not be liable under the federal statute. Plaintiffs do not allege any facts supporting the proposition that Brown or Wolf personally intercepted, disclosed, or intentionally used their text messages in violation of federal law. Rather, Plaintiffs accuse Brown and Wolf of "procuring" others to intercept and disclose their text messages. Procuring text messages does not give rise to a cause of action under 18 U.S.C. § 2520, however. *See Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246 (10th Cir. 2012) ("[18 U.S.C. § 2520(a)'s]

the judge's authorization. No reasonable jury could conclude otherwise on this record. Therefore, Plaintiffs' arguments must fail.

### B.    Carrier Defendants

Carrier Defendants make two arguments for summary judgment: (1) Judge Platt's orders authorized the interception of text messages, and thus Carrier Defendants have an absolute defense under 18 U.S.C. § 2511 and federal preemption; and (2) alternatively, Carrier Defendants acted in good faith under 18 U.S.C. § 2520(d) and K.S.A. § 22-2518(2). *See* Doc. 182 at 1. In considering these arguments, the Court considers the following additional undisputed facts. On March 7, 2013, James T. Botts from the KBI sent a fax to T-Mobile that contained a March 5 wiretap order. Doc. 182 at 7; Doc. 196 at 6. Handwritten on the KBI coversheet was the phrase "Turn on SMS." Doc. 182 at 8; Doc. 196 at 6. The parties do not specify when T-Mobile started providing text messages to the KBI thereafter, however. On March 7, 2013, law enforcement also sent a fax coversheet to Sprint requesting a wiretap for the phone number in a different March 5 order, though it appears the order itself was not attached to the coversheet. *See* Doc. 182-11. Written on the Sprint fax was the phrase "upgrade to T3." Doc. 182 at 8; Doc. 196 at 6-7. The parties do not agree on what "T3" refers to. *See* Doc. 182 at 8; Doc. 196 at 6-7. On March 7, KBI's Botts "called back in to check the Wire upgrade." *See* Doc. 182-11. Shortly afterwards, Sprint began providing text messages to the KBI. Doc. 182 at 8; Doc 196 at 7.

#### 1.    Authorization by Court Order

Carrier Defendants argue that Judge Platt's orders authorized interception of text messages, and therefore they are immune under 18 U.S.C. § 2511. Furthermore, they argue that the federal

---

language does not encompass aiders or abettors."). Virden, Brown, and Wolf raise additional alternative arguments for summary judgment. Because the Court rules for Virden, Brown, and Wolf on their good-faith defenses, the Court does not address those arguments.

statutory defense preempts the state statute that lacks a similar defense. Because the Court holds that Carrier Defendants were not authorized to intercept text messages under Judge Platt's initial orders, it does not reach the preemption argument.

Under federal law, "[n]o cause of action shall lie in any court against any provider of wire or electronic communication service . . . for providing information, facilities, or assistance in accordance with the terms of a court order." 18 U.S.C. § 2511(2)(a)(ii). Text communications are electronic communications. *See Banks*, 2014 WL 4261344, at *2. "Electronic communication" does not include "wire communication" under federal or Kansas law. *See* 18 U.S.C. § 2510(12); K.S.A § 22-2514(11). Thus, an authorization to intercept wire communications does not authorize interception of text messages.

The plain text of Judge Platt's March 5 orders does not authorize the interception of electronic communications such that Carrier Defendants were acting pursuant to a court order when they began intercepting text messages. Those orders authorize law enforcement to intercept wire communications only. Carrier Defendants' arguments to the contrary are unavailing.[8]

Specifically, Carrier Defendants argue that Judge Crabtree already ruled in Plaintiffs' criminal proceedings that Judge Platt's initial orders authorized text messages. But this is incorrect. Judge Crabtree acknowledged that text messages were <u>not</u> explicitly authorized by all the orders, but the officers' good-faith belief that the orders did authorize interception of text messages prevented text messages from being completely excluded. *See Banks*, 2014 WL 4261344, at *5. Judge Platt and the officers may have intended for the orders to authorize interception of text

---

[8]    The parties do not address an April 4 order that extended the duration of the March 5 wiretap order sent to T-Mobile. *See* Doc. 174-6 at 222-27. The April 4 order does not authorize interception of electronic communications either. *Id.* at 224.

messages, but the initial orders did not so authorize. Therefore, the Court declines to grant summary judgment based on 18 U.S.C. § 2511(2)(a)(ii) on the instant record.

## 2. Good Faith

Carrier Defendants next argue that they are entitled to summary judgment because they acted in good faith on a court order. Under state and federal law, any entity that intercepts wire, oral, or electronic communications in good-faith reliance on a court order has a complete defense against any civil action. 18 U.S.C. § 2520(d); K.S.A. § 22-2518(2). "To be in good faith, a defendant's reliance on a court order must have been objectively reasonable." *Davis*, 111 F.3d at 1484.[9]

Carrier Defendants acknowledge that statutory good faith is an affirmative defense. Doc. 182 at 25 n.9. But they have not met their burden of proof. Carrier Defendants allege that most wiretap orders in general request interception of text data. Doc. 182 at 7. But that does not make it reasonable to assume that the orders at issue here authorized text-message interception. Furthermore, Carrier Defendants point to one of Agent Virden's affidavits as evidence that they were objectively reasonable in intercepting text messages. But even if using Virden's affidavit to construe the wiretap orders would have made intercepting text messages objectively reasonable, there are no facts to suggest that Carrier Defendants ever received his affidavit at the time, read it, or relied on it in interpreting the wiretap orders. There are holes in the record, and the Court can't make inferences to fill these holes in Carrier Defendants' favor under the summary judgment standard. *See Henderson*, 41 F.3d at 569.

---

[9]    The Court again acknowledges that the Tenth Circuit has not spoken clearly as to whether there is a subjective component to the good faith standard. In the face of this ambiguity, the Court applies the objective standard in *Davis* based on the Tenth Circuit's remands. *Banks*, 814 F. App'x at 331; *Thompson*, 815 F. App'x at 233.

And even more importantly, at least two carriers refused to intercept text messages pursuant to two similarly worded wiretap orders until they got clarification orders from Judge Platt. One of those carriers, Sprint/Nextel, is a party in this case. Carrier Defendants have not shown the Court how it was objectively reasonable to intercept text messages under the orders at issue when similar orders needed clarification.[10] Carrier Defendants point to no facts distinguishing the orders where carriers sought clarification from the orders here. Instead, they focus on handwriting on the coversheets transmitted to them on March 7. Following handwritten directives on coversheets is not reliance on a court order. Therefore, the Court declines to grant summary judgment based on statutory good faith.[11]

## IV.    CONCLUSION

The Court carefully reviewed the extensive record in this case. The Court finds that the Individual Defendants are entitled to summary judgment but that Carrier Defendants are not.

THE COURT THEREFORE ORDERS that Defendant Opat's Motion for Summary Judgment (Doc. 177) is GRANTED.

THE COURT FURTHER ORDERS that Defendant Virden's Motion for Summary Judgment (Doc. 173) is GRANTED.

---

[10]  Carrier Defendants note that the clarification orders only applied to orders directed to Plaintiffs' co-conspirators. They refer to the orders that were clarified, however, as Ponds Order #1 and Thompson Order #2. Based on the record, it appears that the clarified orders were for co-conspirators Ponds and Ivory. Compare the phone numbers in the clarification orders at Doc. 182-13 at 2 and Doc. 182-14 at 2 with the phone numbers for Ponds Order 1 and Ivory Order 1 in the exhibit list at Doc. 174-2 at 1.

[11]  Carrier Defendants mention in passing that they are entitled to rely on law enforcement's understanding of the orders. Doc. 182 at 24 (citing *United States v. Peterson*, 812 F.2d 486, 492 (9th Cir. 1987)). There is a federal statutory defense for following a law enforcement officer's request. *See* 18 US.C. § 2520(d)(2). To the extent Carrier Defendants rely on this statutory defense, they do not develop this argument. Furthermore, even if they had, issues of material fact remain. For example, what does "upgrade to T3" mean? Furthermore, did Agent Botts ask Sprint to intercept text messages when he called? The record does not say. It merely shows that after the call, Sprint started intercepting text messages. Correlation does not equal causation. The Court makes all reasonable inferences in favor of the non-moving party at the summary judgment phase. *Henderson*, 41 F.3d at 569. Thus, Carrier Defendants have not met the burden of proving their affirmative defense at this stage.

THE COURT FURTHER ORDERS that Defendant Brown's Motion for Summary Judgment (Doc. 175) is GRANTED.

THE COURT FURTHER ORDERS that Defendant Wolf's Motion for Summary Judgment (Doc. 179) is GRANTED.

THE COURT FURTHER ORDERS that Carrier Defendants' Motion for Summary Judgment (Doc. 181) is DENIED.

IT IS SO ORDERED.

Dated: December 27, 2021                    /s/ *Holly L. Teeter*
                                            HOLLY L. TEETER
                                            UNITED STATES DISTRICT JUDGE

 KeyCite Yellow Flag - Negative Treatment

Unconstitutional or Preempted  Prior Version's Limitation Recognized by   In re Pharmatrak, Inc.,   1st Cir.(Mass.),   May 09, 2003

United States Code Annotated
   Title 18. Crimes and Criminal Procedure (Refs & Annos)
      Part I. Crimes (Refs & Annos)
         Chapter 119. Wire and Electronic Communications Interception and Interception of Oral Communications (Refs & Annos)

18 U.S.C.A. § 2510

§ 2510. Definitions

Effective: November 2, 2002
Currentness

As used in this chapter--

**(1)** "wire communication" means any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception (including the use of such connection in a switching station) furnished or operated by any person engaged in providing or operating such facilities for the transmission of interstate or foreign communications or communications affecting interstate or foreign commerce;

**(2)** "oral communication" means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication;

**(3)** "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States;

**(4)** "intercept" means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device. [1]

**(5)** "electronic, mechanical, or other device" means any device or apparatus which can be used to intercept a wire, oral, or electronic communication other than--

**(a)** any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business; or (ii) being used by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties;

**(b)** a hearing aid or similar device being used to correct subnormal hearing to not better than normal;

**(6)** "person" means any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation;

**(7)** "Investigative or law enforcement officer" means any officer of the United States or of a State or political subdivision thereof, who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter, and any attorney authorized by law to prosecute or participate in the prosecution of such offenses;

**(8)** "contents", when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication;

**(9)** "Judge of competent jurisdiction" means--

**(a)** a judge of a United States district court or a United States court of appeals; and

**(b)** a judge of any court of general criminal jurisdiction of a State who is authorized by a statute of that State to enter orders authorizing interceptions of wire, oral, or electronic communications;

**(10)** "communication common carrier" has the meaning given that term in section 3 of the Communications Act of 1934;

**(11)** "aggrieved person" means a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed;

**(12)** "electronic communication" means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce, but does not include--

**(A)** any wire or oral communication;

**(B)** any communication made through a tone-only paging device;

**(C)** any communication from a tracking device (as defined in section 3117 of this title); or

**(D)** electronic funds transfer information stored by a financial institution in a communications system used for the electronic storage and transfer of funds;

**(13)** "user" means any person or entity who--

    **(A)** uses an electronic communication service; and

    **(B)** is duly authorized by the provider of such service to engage in such use;

**(14)** "electronic communications system" means any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications;

**(15)** "electronic communication service" means any service which provides to users thereof the ability to send or receive wire or electronic communications;

**(16)** "readily accessible to the general public" means, with respect to a radio communication, that such communication is not--

    **(A)** scrambled or encrypted;

    **(B)** transmitted using modulation techniques whose essential parameters have been withheld from the public with the intention of preserving the privacy of such communication;

    **(C)** carried on a subcarrier or other signal subsidiary to a radio transmission;

    **(D)** transmitted over a communication system provided by a common carrier, unless the communication is a tone only paging system communication; or

    **(E)** transmitted on frequencies allocated under part 25, subpart D, E, or F of part 74, or part 94 of the Rules of the Federal Communications Commission, unless, in the case of a communication transmitted on a frequency allocated under part 74 that is not exclusively allocated to broadcast auxiliary services, the communication is a two-way voice communication by radio;

**(17)** "electronic storage" means--

    **(A)** any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and

    **(B)** any storage of such communication by an electronic communication service for purposes of backup protection of such communication;

**(18)** "aural transfer" means a transfer containing the human voice at any point between and including the point of origin and the point of reception;

**(19)** "foreign intelligence information", for purposes of section 2517(6) of this title, means--

    **(A)** information, whether or not concerning a United States person, that relates to the ability of the United States to protect against--

        **(i)** actual or potential attack or other grave hostile acts of a foreign power or an agent of a foreign power;

        **(ii)** sabotage or international terrorism by a foreign power or an agent of a foreign power; or

        **(iii)** clandestine intelligence activities by an intelligence service or network of a foreign power or by an agent of a foreign power; or

    **(B)** information, whether or not concerning a United States person, with respect to a foreign power or foreign territory that relates to--

        **(i)** the national defense or the security of the United States; or

        **(ii)** the conduct of the foreign affairs of the United States;

**(20)** "protected computer" has the meaning set forth in section 1030; and

**(21)** "computer trespasser"--

    **(A)** means a person who accesses a protected computer without authorization and thus has no reasonable expectation of privacy in any communication transmitted to, through, or from the protected computer; and

    **(B)** does not include a person known by the owner or operator of the protected computer to have an existing contractual relationship with the owner or operator of the protected computer for access to all or part of the protected computer.

## CREDIT(S)

(Added Pub.L. 90-351, Title III, § 802, June 19, 1968, 82 Stat. 212; amended Pub.L. 99-508, Title I, § 101(a), (c)(1)(A), (4), Oct. 21, 1986, 100 Stat. 1848, 1851; Pub.L. 103-414, Title II, §§ 202(a), 203, Oct. 25, 1994, 108 Stat. 4290, 4291; Pub.L. 104-132, Title VII, § 731, Apr. 24, 1996, 110 Stat. 1303; Pub.L. 107-56, Title II, §§ 203(b)(2), 209(1), 217(1), Oct. 26, 2001, 115 Stat. 280, 283, 290; Pub.L. 107-108, Title III, § 314(b), Dec. 28, 2001, 115 Stat. 1402; Pub.L. 107-273, Div. B, Title IV, § 4002(e)(10), Nov. 2, 2002, 116 Stat. 1810.)

**Footnotes**

1        So in original. The period probably should be a semicolon.

18 U.S.C.A. § 2510, 18 USCA § 2510
Current through P.L.118-19. Some statute sections may be more current, see credits for details.

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

 KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

United States Code Annotated
  Title 18. Crimes and Criminal Procedure (Refs & Annos)
    Part I. Crimes (Refs & Annos)
      Chapter 119. Wire and Electronic Communications Interception and Interception of Oral Communications (Refs & Annos)

18 U.S.C.A. § 2516

§ 2516. Authorization for interception of wire, oral, or electronic communications

Effective: June 25, 2022
Currentness

**(1)** The Attorney General, Deputy Attorney General, Associate Attorney General, [1] or any Assistant Attorney General, any acting Assistant Attorney General, or any Deputy Assistant Attorney General or acting Deputy Assistant Attorney General in the Criminal Division or National Security Division specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of--

**(a)** any offense punishable by death or by imprisonment for more than one year under sections 2122 and 2274 through 2277 of title 42 of the United States Code (relating to the enforcement of the Atomic Energy Act of 1954), section 2284 of title 42 of the United States Code (relating to sabotage of nuclear facilities or fuel), or under the following chapters of this title: chapter 10 (relating to biological weapons), chapter 37 (relating to espionage), chapter 55 (relating to kidnapping), chapter 90 (relating to protection of trade secrets), chapter 105 (relating to sabotage), chapter 115 (relating to treason), chapter 102 (relating to riots), chapter 65 (relating to malicious mischief), chapter 111 (relating to destruction of vessels), or chapter 81 (relating to piracy);

**(b)** a violation of section 186 or section 501(c) of title 29, United States Code (dealing with restrictions on payments and loans to labor organizations), or any offense which involves murder, kidnapping, robbery, or extortion, and which is punishable under this title;

**(c)** any offense which is punishable under the following sections of this title: section 37 (relating to violence at international airports), section 43 (relating to animal enterprise terrorism), section 81 (arson within special maritime and territorial jurisdiction), section 201 (bribery of public officials and witnesses), section 215 (relating to bribery of bank officials), section 224 (bribery in sporting contests), subsection (d), (e), (f), (g), (h), or (i) of section 844 (unlawful use of explosives), section 1032 (relating to concealment of assets), section 1084 (transmission of wagering information), section 751 (relating to escape), section 832 (relating to nuclear and weapons of mass destruction threats), section 842 (relating to explosive materials), section 930 (relating to possession of weapons in Federal facilities), section 1014 (relating to loans and credit applications generally; renewals and discounts), section 1114 (relating to officers and employees of the United States), section 1116 (relating to protection of foreign officials), sections 1503, 1512, and 1513 (influencing or injuring an officer, juror,

or witness generally), section 1510 (obstruction of criminal investigations), section 1511 (obstruction of State or local law enforcement), section 1581 (peonage), section 1582 (vessels for slave trade), section 1583 (enticement into slavery), section 1584 (involuntary servitude), section 1585 (seizure, detention, transportation or sale of slaves), section 1586 (service on vessels in slave trade), section 1587 (possession of slaves aboard vessel), section 1588 (transportation of slaves from United States), section 1589 (forced labor), section 1590 (trafficking with respect to peonage, slavery, involuntary servitude, or forced labor), section 1591 (sex trafficking of children by force, fraud, or coercion), section 1592 (unlawful conduct with respect to documents in furtherance of trafficking, peonage, slavery, involuntary servitude, or forced labor), section 1751 (Presidential and Presidential staff assassination, kidnapping, and assault), section 1951 (interference with commerce by threats or violence), section 1952 (interstate and foreign travel or transportation in aid of racketeering enterprises), section 1958 (relating to use of interstate commerce facilities in the commission of murder for hire), section 1959 (relating to violent crimes in aid of racketeering activity), section 1954 (offer, acceptance, or solicitation to influence operations of employee benefit plan), section 1955 (prohibition of business enterprises of gambling), section 1956 (laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), section 659 (theft from interstate shipment), section 664 (embezzlement from pension and welfare funds), section 1343 (fraud by wire, radio, or television), section 1344 (relating to bank fraud), section 1992 (relating to terrorist attacks against mass transportation), sections 2251 and 2252 (sexual exploitation of children), section 2251A (selling or buying of children), section 2252A (relating to material constituting or containing child pornography), section 1466A (relating to child obscenity), section 2260 (production of sexually explicit depictions of a minor for importation into the United States), sections 2421, 2422, 2423, and 2425 (relating to transportation for illegal sexual activity and related crimes), sections 2312, 2313, 2314, and 2315 (interstate transportation of stolen property), section 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts), section 2340A (relating to torture), section 1203 (relating to hostage taking), section 1029 (relating to fraud and related activity in connection with access devices), section 3146 (relating to penalty for failure to appear), section 3521(b)(3) (relating to witness relocation and assistance), section 32 (relating to destruction of aircraft or aircraft facilities), section 38 (relating to aircraft parts fraud), section 1963 (violations with respect to racketeer influenced and corrupt organizations), section 115 (relating to threatening or retaliating against a Federal official), section 1341 (relating to mail fraud), a felony violation of section 1030 (relating to computer fraud and abuse), section 351 (violations with respect to congressional, Cabinet, or Supreme Court assassinations, kidnapping, and assault), section 831 (relating to prohibited transactions involving nuclear materials), section 33 (relating to destruction of motor vehicles or motor vehicle facilities), section 175 (relating to biological weapons), section 175c (relating to variola virus), section 956 (conspiracy to harm persons or property overseas), a felony violation of section 1028 (relating to production of false identification documentation), section 1425 (relating to the procurement of citizenship or nationalization unlawfully), section 1426 (relating to the reproduction of naturalization or citizenship papers), section 1427 (relating to the sale of naturalization or citizenship papers), section 1541 (relating to passport issuance without authority), section 1542 (relating to false statements in passport applications), section 1543 (relating to forgery or false use of passports), section 1544 (relating to misuse of passports), section 1546 (relating to fraud and misuse of visas, permits, and other documents), or section 555 (relating to construction or use of international border tunnels);

(d) any offense involving counterfeiting punishable under section 471, 472, or 473 of this title;

(e) any offense involving fraud connected with a case under title 11 or the manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic drugs, marihuana, or other dangerous drugs, punishable under any law of the United States;

(f) any offense including extortionate credit transactions under sections 892, 893, or 894 of this title;

**(g)** a violation of section 5322 of title 31, United States Code (dealing with the reporting of currency transactions), or section 5324 of title 31, United States Code (relating to structuring transactions to evade reporting requirement prohibited);

**(h)** any felony violation of sections 2511 and 2512 (relating to interception and disclosure of certain communications and to certain intercepting devices) of this title;

**(i)** any felony violation of chapter 71 (relating to obscenity) of this title;

**(j)** any violation of section 60123(b) (relating to destruction of a natural gas pipeline), section 46502 (relating to aircraft piracy), the second sentence of section 46504 (relating to assault on a flight crew with dangerous weapon), or section 46505(b)(3) or (c) (relating to explosive or incendiary devices, or endangerment of human life, by means of weapons on aircraft) of title 49;

**(k)** any criminal violation of section 2778 of title 22 (relating to the Arms Export Control Act);

**(l)** the location of any fugitive from justice from an offense described in this section;

**(m)** a violation of section 274, 277, or 278 of the Immigration and Nationality Act (8 U.S.C. 1324, 1327, or 1328) (relating to the smuggling of aliens);

**(n)** any felony violation of section 922, 924, 932, or 933 of title 18, United States Code (relating to firearms);

**(o)** any violation of section 5861 of the Internal Revenue Code of 1986 (relating to firearms);

**(p)** a felony violation of section 1028 (relating to production of false identification documents), section 1542 (relating to false statements in passport applications), section 1546 (relating to fraud and misuse of visas, permits, and other documents), section 1028A (relating to aggravated identity theft) of this title or a violation of section 274, 277, or 278 of the Immigration and Nationality Act (relating to the smuggling of aliens); or [2]

**(q)** any criminal violation of section 229 (relating to chemical weapons) or section 2332, 2332a, 2332b, 2332d, 2332f, 2332g, 2332h [3] 2339, 2339A, 2339B, 2339C, or 2339D of this title (relating to terrorism);

**(r)** any criminal violation of section 1 (relating to illegal restraints of trade or commerce), 2 (relating to illegal monopolizing of trade or commerce), or 3 (relating to illegal restraints of trade or commerce in territories or the District of Columbia) of the Sherman Act (15 U.S.C. 1, 2, 3);

**(s)** any violation of section 670 (relating to theft of medical products);

**(t)** any violation of the Export Control Reform Act of 2018; or

**(u)** any conspiracy to commit any offense described in any subparagraph of this paragraph.

**(2)** The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire, oral, or electronic communications, may apply to such judge for, and such judge may grant in conformity with section 2518 of this chapter and with the applicable State statute an order authorizing, or approving the interception of wire, oral, or electronic communications by investigative or law enforcement officers having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of the commission of the offense of murder, kidnapping, human trafficking, child sexual exploitation, child pornography production, prostitution, gambling, robbery, bribery, extortion, or dealing in narcotic drugs, marihuana or other dangerous drugs, or other crime dangerous to life, limb, or property, and punishable by imprisonment for more than one year, designated in any applicable State statute authorizing such interception, or any conspiracy to commit any of the foregoing offenses.

**(3)** Any attorney for the Government (as such term is defined for the purposes of the Federal Rules of Criminal Procedure) may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant, in conformity with section 2518 of this title, an order authorizing or approving the interception of electronic communications by an investigative or law enforcement officer having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of any Federal felony.

## CREDIT(S)

(Added Pub.L. 90-351, Title III, § 802, June 19, 1968, 82 Stat. 216; amended Pub.L. 91-452, Title VIII, § 810, Title IX, § 902(a), Title XI, § 1103, Oct. 15, 1970, 84 Stat. 940, 947, 959; Pub.L. 91-644, Title IV, § 16, Jan. 2, 1971, 84 Stat. 1891; Pub.L. 95-598, Title III, § 314(h), Nov. 6, 1978, 92 Stat. 2677; Pub.L. 97-285, §§ 2(e), 4(e), Oct. 6, 1982, 96 Stat. 1220, 1221; Pub.L. 98-292, § 8, May 21, 1984, 98 Stat. 206; Pub.L. 98-473, Title II, § 1203(c), Oct. 12, 1984, 98 Stat. 2152; Pub.L. 99-508, Title I, §§ 101(c)(1)(A), 104, 105, Oct. 21, 1986, 100 Stat. 1851, 1855; Pub.L. 99-570, Title I, § 1365(c), Oct. 27, 1986, 100 Stat. 3207-35; Pub.L. 100-690, Title VI, § 6461, Title VII, §§ 7036, 7053(d), 7525, Nov. 18, 1988, 102 Stat. 4374, 4399, 4402, 4502; Pub.L. 101-298, § 3(b), May 22, 1990, 104 Stat. 203; Pub.L. 101-647, Title XXV, § 2531, Title XXXV, § 3568, Nov. 29, 1990, 104 Stat. 4879, 4928; Pub.L. 103-272, § 5(e)(11), July 5, 1994, 108 Stat. 1374; Pub.L. 103-322, Title XXXIII, §§ 330011(c) (1), (q)(1), (r), 330021(1), Sept. 13, 1994, 108 Stat. 2144, 2145, 2150; Pub.L. 103-414, Title II, § 208, Oct. 25, 1994, 108 Stat. 4292; Pub.L. 103-429, § 7(a)(4)(A), Oct. 31, 1994, 108 Stat. 4389; Pub.L. 104-132, Title IV, § 434, Apr. 24, 1996, 110 Stat. 1274; Pub.L. 104-208, Div. C, Title II, § 201, Sept. 30, 1996, 110 Stat. 3009-564; Pub.L. 104-287, § 6(a)(2), Oct. 11, 1996, 110 Stat. 3398; Pub.L. 104-294, Title I, § 102, Title VI, § 601(d), Oct. 11, 1996, 110 Stat. 3491, 3499; Pub.L. 105-318, § 6(b), Oct. 30, 1998, 112 Stat. 3011; Pub.L. 106-181, Title V, § 506(c)(2)(B), Apr. 5, 2000, 114 Stat. 139; Pub.L. 107-56, Title II, §§ 201, 202, Oct. 26, 2001, 115 Stat. 278; Pub.L. 107-197, Title III, § 301(a), June 25, 2002, 116 Stat. 728; Pub.L. 107-273, Div. B, Title IV, §§ 4002(c)(1), 4005(a)(1), Nov. 2, 2002, 116 Stat. 1808, 1812; Pub.L. 108-21, Title II, § 201, Apr. 30, 2003, 117 Stat. 659; Pub.L. 108-458, Title VI, § 6907, Dec. 17, 2004, 118 Stat. 3774; Pub.L. 109-162, Title XI, § 1171(b), Jan. 5, 2006, 119 Stat. 3123; Pub.L. 109-177, Title I, §§ 110(b)(3)(C), 113, Title V, § 506(a)(6), Mar. 9, 2006, 120 Stat. 208, 209, 248; Pub.L. 112-127, § 4, June 5, 2012, 126 Stat. 371; Pub.L. 112-186, § 5, Oct. 5, 2012, 126 Stat. 1429; Pub.L. 114-22, Title I, § 106, May 29, 2015, 129 Stat. 238; Pub.L. 115-232, Div. A, Title XVII, § 1761(f), Aug. 13, 2018, 132 Stat. 2228; Pub.L. 115-392, § 13, Dec. 21, 2018, 132 Stat. 5256; Pub.L. 117-159, Div. A, Title II, § 12004(a)(2), June 25, 2022, 136 Stat. 1328.)

**Footnotes**

1    See 1984 Amendments note set out under this section.

2    So in original. The word "or" probably should not appear.

3    So in original. A comma probably should appear.

18 U.S.C.A. § 2516, 18 USCA § 2516
Current through P.L.118-19. Some statute sections may be more current, see credits for details.

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

United States Code Annotated
   Title 18. Crimes and Criminal Procedure (Refs & Annos)
     Part I. Crimes (Refs & Annos)
       Chapter 119. Wire and Electronic Communications Interception and Interception of Oral Communications (Refs & Annos)

18 U.S.C.A. § 2517

§ 2517. Authorization for disclosure and use of intercepted wire, oral, or electronic communications

Effective: January 5, 2023
Currentness

**(1)** Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication, or evidence derived therefrom, may disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.

**(2)** Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication or evidence derived therefrom may use such contents to the extent such use is appropriate to the proper performance of his official duties.

**(3)** Any person who has received, by any means authorized by this chapter, any information concerning a wire, oral, or electronic communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof.

**(4)** No otherwise privileged wire, oral, or electronic communication intercepted in accordance with, or in violation of, the provisions of this chapter shall lose its privileged character.

**(5)** When an investigative or law enforcement officer, while engaged in intercepting wire, oral, or electronic communications in the manner authorized herein, intercepts wire, oral, or electronic communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1) and (2) of this section. Such contents and any evidence derived therefrom may be used under subsection (3) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter. Such application shall be made as soon as practicable.

**(6)** Any investigative or law enforcement officer, or attorney for the Government, who by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication, or evidence derived therefrom, may disclose such contents to any other Federal law enforcement, intelligence, protective, immigration, national defense, or national

security official to the extent that such contents include foreign intelligence or counterintelligence (as defined in section 3 of the National Security Act of 1947 (50 U.S.C. 401a)), [1] or foreign intelligence information (as defined in subsection (19) of section 2510 of this title), to assist the official who is to receive that information in the performance of his official duties. Any Federal official who receives information pursuant to this provision may use that information only as necessary in the conduct of that person's official duties subject to any limitations on the unauthorized disclosure of such information.

**(7)** Any investigative or law enforcement officer, or other Federal official in carrying out official duties as such Federal official, who by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication, or evidence derived therefrom, may disclose such contents or derivative evidence to a foreign investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure, and foreign investigative or law enforcement officers may use or disclose such contents or derivative evidence to the extent such use or disclosure is appropriate to the proper performance of their official duties.

**(8)** Any investigative or law enforcement officer, or other Federal official in carrying out official duties as such Federal official, who by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication, or evidence derived therefrom, may disclose such contents or derivative evidence to any appropriate Federal, State, local, or foreign government official to the extent that such contents or derivative evidence reveals a threat of actual or potential attack or other grave hostile acts of a foreign power or an agent of a foreign power, domestic or international sabotage, domestic or international terrorism, or clandestine intelligence gathering activities by an intelligence service or network of a foreign power or by an agent of a foreign power, within the United States or elsewhere, for the purpose of preventing or responding to such a threat. Any official who receives information pursuant to this provision may use that information only as necessary in the conduct of that person's official duties subject to any limitations on the unauthorized disclosure of such information, and any State, local, or foreign official who receives information pursuant to this provision may use that information only consistent with such guidelines as the Attorney General and Director of Central Intelligence shall jointly issue.

## CREDIT(S)

(Added Pub.L. 90-351, Title III, § 802, June 19, 1968, 82 Stat. 217; amended Pub.L. 91-452, Title IX, § 902(b), Oct. 15, 1970, 84 Stat. 947; Pub.L. 99-508, Title I, § 101(c)(1)(A), Oct. 21, 1986, 100 Stat. 1851; Pub.L. 107-56, Title II, § 203(b)(1), Oct. 26, 2001, 115 Stat. 280; Pub.L. 107-296, Title VIII, § 896, Nov. 25, 2002, 116 Stat. 2257; Pub.L. 117-347, Title III, § 323(a)(1)(A), Jan. 5, 2023, 136 Stat. 6206.)

## Footnotes

1    Reclassified to 50 U.S.C.A. § 3003.

18 U.S.C.A. § 2517, 18 USCA § 2517
Current through P.L.118-19. Some statute sections may be more current, see credits for details.

**End of Document**                                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

 KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

United States Code Annotated
  Title 18. Crimes and Criminal Procedure (Refs & Annos)
    Part I. Crimes (Refs & Annos)
      Chapter 119. Wire and Electronic Communications Interception and Interception of Oral Communications (Refs & Annos)

18 U.S.C.A. § 2518

§ 2518. Procedure for interception of wire, oral, or electronic communications

Effective: October 20, 1998

Currentness

**(1)** Each application for an order authorizing or approving the interception of a wire, oral, or electronic communication under this chapter shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:

**(a)** the identity of the investigative or law enforcement officer making the application, and the officer authorizing the application;

**(b)** a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including (i) details as to the particular offense that has been, is being, or is about to be committed, (ii) except as provided in subsection (11), a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted;

**(c)** a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;

**(d)** a statement of the period of time for which the interception is required to be maintained. If the nature of the investigation is such that the authorization for interception should not automatically terminate when the described type of communication has been first obtained, a particular description of facts establishing probable cause to believe that additional communications of the same type will occur thereafter;

**(e)** a full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire, oral, or electronic communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge on each such application; and

**(f)** where the application is for the extension of an order, a statement setting forth the results thus far obtained from the interception, or a reasonable explanation of the failure to obtain such results.

**(2)** The judge may require the applicant to furnish additional testimony or documentary evidence in support of the application.

**(3)** Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire, oral, or electronic communications within the territorial jurisdiction of the court in which the judge is sitting (and outside that jurisdiction but within the United States in the case of a mobile interception device authorized by a Federal court within such jurisdiction), if the judge determines on the basis of the facts submitted by the applicant that--

**(a)** there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;

**(b)** there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;

**(c)** normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;

**(d)** except as provided in subsection (11), there is probable cause for belief that the facilities from which, or the place where, the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

**(4)** Each order authorizing or approving the interception of any wire, oral, or electronic communication under this chapter shall specify--

**(a)** the identity of the person, if known, whose communications are to be intercepted;

**(b)** the nature and location of the communications facilities as to which, or the place where, authority to intercept is granted;

**(c)** a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates;

**(d)** the identity of the agency authorized to intercept the communications, and of the person authorizing the application; and

**(e)** the period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained.

An order authorizing the interception of a wire, oral, or electronic communication under this chapter shall, upon request of the applicant, direct that a provider of wire or electronic communication service, landlord, custodian or other person shall furnish the

applicant forthwith all information, facilities, and technical assistance necessary to accomplish the interception unobtrusively and with a minimum of interference with the services that such service provider, landlord, custodian, or person is according the person whose communications are to be intercepted. Any provider of wire or electronic communication service, landlord, custodian or other person furnishing such facilities or technical assistance shall be compensated therefor by the applicant for reasonable expenses incurred in providing such facilities or assistance. Pursuant to section 2522 of this chapter, an order may also be issued to enforce the assistance capability and capacity requirements under the Communications Assistance for Law Enforcement Act.

**(5)** No order entered under this section may authorize or approve the interception of any wire, oral, or electronic communication for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than thirty days. Such thirty-day period begins on the earlier of the day on which the investigative or law enforcement officer first begins to conduct an interception under the order or ten days after the order is entered. Extensions of an order may be granted, but only upon application for an extension made in accordance with subsection (1) of this section and the court making the findings required by subsection (3) of this section. The period of extension shall be no longer than the authorizing judge deems necessary to achieve the purposes for which it was granted and in no event for longer than thirty days. Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter, and must terminate upon attainment of the authorized objective, or in any event in thirty days. In the event the intercepted communication is in a code or foreign language, and an expert in that foreign language or code is not reasonably available during the interception period, minimization may be accomplished as soon as practicable after such interception. An interception under this chapter may be conducted in whole or in part by Government personnel, or by an individual operating under a contract with the Government, acting under the supervision of an investigative or law enforcement officer authorized to conduct the interception.

**(6)** Whenever an order authorizing interception is entered pursuant to this chapter, the order may require reports to be made to the judge who issued the order showing what progress has been made toward achievement of the authorized objective and the need for continued interception. Such reports shall be made at such intervals as the judge may require.

**(7)** Notwithstanding any other provision of this chapter, any investigative or law enforcement officer, specially designated by the Attorney General, the Deputy Attorney General, the Associate Attorney General, or by the principal prosecuting attorney of any State or subdivision thereof acting pursuant to a statute of that State, who reasonably determines that--

**(a)** an emergency situation exists that involves--

**(i)** immediate danger of death or serious physical injury to any person,

**(ii)** conspiratorial activities threatening the national security interest, or

**(iii)** conspiratorial activities characteristic of organized crime,

that requires a wire, oral, or electronic communication to be intercepted before an order authorizing such interception can, with due diligence, be obtained, and

**(b)** there are grounds upon which an order could be entered under this chapter to authorize such interception,

105

may intercept such wire, oral, or electronic communication if an application for an order approving the interception is made in accordance with this section within forty-eight hours after the interception has occurred, or begins to occur. In the absence of an order, such interception shall immediately terminate when the communication sought is obtained or when the application for the order is denied, whichever is earlier. In the event such application for approval is denied, or in any other case where the interception is terminated without an order having been issued, the contents of any wire, oral, or electronic communication intercepted shall be treated as having been obtained in violation of this chapter, and an inventory shall be served as provided for in subsection (d) of this section on the person named in the application.

**(8)(a)** The contents of any wire, oral, or electronic communication intercepted by any means authorized by this chapter shall, if possible, be recorded on tape or wire or other comparable device. The recording of the contents of any wire, oral, or electronic communication under this subsection shall be done in such a way as will protect the recording from editing or other alterations. Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions. Custody of the recordings shall be wherever the judge orders. They shall not be destroyed except upon an order of the issuing or denying judge and in any event shall be kept for ten years. Duplicate recordings may be made for use or disclosure pursuant to the provisions of subsections (1) and (2) of section 2517 of this chapter for investigations. The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire, oral, or electronic communication or evidence derived therefrom under subsection (3) of section 2517.

**(b)** Applications made and orders granted under this chapter shall be sealed by the judge. Custody of the applications and orders shall be wherever the judge directs. Such applications and orders shall be disclosed only upon a showing of good cause before a judge of competent jurisdiction and shall not be destroyed except on order of the issuing or denying judge, and in any event shall be kept for ten years.

**(c)** Any violation of the provisions of this subsection may be punished as contempt of the issuing or denying judge.

**(d)** Within a reasonable time but not later than ninety days after the filing of an application for an order of approval under section 2518(7)(b) which is denied or the termination of the period of an order or extensions thereof, the issuing or denying judge shall cause to be served, on the persons named in the order or the application, and such other parties to intercepted communications as the judge may determine in his discretion that is in the interest of justice, an inventory which shall include notice of--

**(1)** the fact of the entry of the order or the application;

**(2)** the date of the entry and the period of authorized, approved or disapproved interception, or the denial of the application; and

**(3)** the fact that during the period wire, oral, or electronic communications were or were not intercepted.

The judge, upon the filing of a motion, may in his discretion make available to such person or his counsel for inspection such portions of the intercepted communications, applications and orders as the judge determines to be in the interest of justice. On an ex parte showing of good cause to a judge of competent jurisdiction the serving of the inventory required by this subsection may be postponed.

**(9)** The contents of any wire, oral, or electronic communication intercepted pursuant to this chapter or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in a Federal or State court unless each party, not less than ten days before the trial, hearing, or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved. This ten-day period may be waived by the judge if he finds that it was not possible to furnish the party with the above information ten days before the trial, hearing, or proceeding and that the party will not be prejudiced by the delay in receiving such information.

**(10)(a)** Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that--

**(i)** the communication was unlawfully intercepted;

**(ii)** the order of authorization or approval under which it was intercepted is insufficient on its face; or

**(iii)** the interception was not made in conformity with the order of authorization or approval.

Such motion shall be made before the trial, hearing, or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion. If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter. The judge, upon the filing of such motion by the aggrieved person, may in his discretion make available to the aggrieved person or his counsel for inspection such portions of the intercepted communication or evidence derived therefrom as the judge determines to be in the interests of justice.

**(b)** In addition to any other right to appeal, the United States shall have the right to appeal from an order granting a motion to suppress made under paragraph (a) of this subsection, or the denial of an application for an order of approval, if the United States attorney shall certify to the judge or other official granting such motion or denying such application that the appeal is not taken for purposes of delay. Such appeal shall be taken within thirty days after the date the order was entered and shall be diligently prosecuted.

**(c)** The remedies and sanctions described in this chapter with respect to the interception of electronic communications are the only judicial remedies and sanctions for nonconstitutional violations of this chapter involving such communications.

**(11)** The requirements of subsections (1)(b)(ii) and (3)(d) of this section relating to the specification of the facilities from which, or the place where, the communication is to be intercepted do not apply if--

**(a)** in the case of an application with respect to the interception of an oral communication--

**(i)** the application is by a Federal investigative or law enforcement officer and is approved by the Attorney General, the Deputy Attorney General, the Associate Attorney General, an Assistant Attorney General, or an acting Assistant Attorney General;

**(ii)** the application contains a full and complete statement as to why such specification is not practical and identifies the person committing the offense and whose communications are to be intercepted; and

**(iii)** the judge finds that such specification is not practical; and

**(b)** in the case of an application with respect to a wire or electronic communication--

**(i)** the application is by a Federal investigative or law enforcement officer and is approved by the Attorney General, the Deputy Attorney General, the Associate Attorney General, an Assistant Attorney General, or an acting Assistant Attorney General;

**(ii)** the application identifies the person believed to be committing the offense and whose communications are to be intercepted and the applicant makes a showing that there is probable cause to believe that the person's actions could have the effect of thwarting interception from a specified facility;

**(iii)** the judge finds that such showing has been adequately made; and

**(iv)** the order authorizing or approving the interception is limited to interception only for such time as it is reasonable to presume that the person identified in the application is or was reasonably proximate to the instrument through which such communication will be or was transmitted.

**(12)** An interception of a communication under an order with respect to which the requirements of subsections (1)(b)(ii) and (3)(d) of this section do not apply by reason of subsection (11)(a) shall not begin until the place where the communication is to be intercepted is ascertained by the person implementing the interception order. A provider of wire or electronic communications service that has received an order as provided for in subsection (11)(b) may move the court to modify or quash the order on the ground that its assistance with respect to the interception cannot be performed in a timely or reasonable fashion. The court, upon notice to the government, shall decide such a motion expeditiously.

**CREDIT(S)**

    (Added Pub.L. 90-351, Title III, § 802, June 19, 1968, 82 Stat. 218; amended Pub.L. 91-358, Title II, § 211(b), July 29, 1970, 84 Stat. 654; Pub.L. 95-511, Title II, § 201(d) to (g), Oct. 25, 1978, 92 Stat. 1797, 1798; Pub.L. 98-473, Title II, § 1203(a), (b), Oct. 12, 1984, 98 Stat. 2152; Pub.L. 99-508, Title I, §§ 101(c)(1)(A), (8), (e), 106(a) to (d)(3), Oct. 21, 1986, 100 Stat. 1851-1853, 1856, 1857; Pub.L. 103-414, Title II, § 201(b)(1), Oct. 25, 1994, 108 Stat. 4290; Pub.L. 105-272, Title VI, § 604, Oct. 20, 1998, 112 Stat. 2413.)

18 U.S.C.A. § 2518, 18 USCA § 2518
Current through P.L.118-19. Some statute sections may be more current, see credits for details.

United States Code Annotated
    Title 18. Crimes and Criminal Procedure (Refs & Annos)
        Part I. Crimes (Refs & Annos)
            Chapter 119. Wire and Electronic Communications Interception and Interception of Oral Communications (Refs & Annos)

18 U.S.C.A. § 2520

§ 2520. Recovery of civil damages authorized

Effective: November 16, 2018

Currentness

**(a) In general.**--Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

**(b) Relief.**--In an action under this section, appropriate relief includes--

    **(1)** such preliminary and other equitable or declaratory relief as may be appropriate;

    **(2)** damages under subsection (c) and punitive damages in appropriate cases; and

    **(3)** a reasonable attorney's fee and other litigation costs reasonably incurred.

**(c) Computation of damages.--(1)** In an action under this section, if the conduct in violation of this chapter is the private viewing of a private satellite video communication that is not scrambled or encrypted or if the communication is a radio communication that is transmitted on frequencies allocated under subpart D of part 74 of the rules of the Federal Communications Commission that is not scrambled or encrypted and the conduct is not for a tortious or illegal purpose or for purposes of direct or indirect commercial advantage or private commercial gain, then the court shall assess damages as follows:

    **(A)** If the person who engaged in that conduct has not previously been enjoined under section 2511(5) and has not been found liable in a prior civil action under this section, the court shall assess the greater of the sum of actual damages suffered by the plaintiff, or statutory damages of not less than $50 and not more than $500.

    **(B)** If, on one prior occasion, the person who engaged in that conduct has been enjoined under section 2511(5) or has been found liable in a civil action under this section, the court shall assess the greater of the sum of actual damages suffered by the plaintiff, or statutory damages of not less than $100 and not more than $1000.

**(2)** In any other action under this section, the court may assess as damages whichever is the greater of--

**(A)** the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or

**(B)** statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

**(d) Defense.**--A good faith reliance on--

**(1)** a court warrant or order, a grand jury subpoena, a legislative authorization, or a statutory authorization;

**(2)** a request of an investigative or law enforcement officer under section 2518(7) of this title; or

**(3)** a good faith determination that section 2511(3), 2511(2)(i), or 2511(2)(j) of this title permitted the conduct complained of;

is a complete defense against any civil or criminal action brought under this chapter or any other law.

**(e) Limitation.**--A civil action under this section may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation.

**(f) Administrative discipline.**--If a court or appropriate department or agency determines that the United States or any of its departments or agencies has violated any provision of this chapter, and the court or appropriate department or agency finds that the circumstances surrounding the violation raise serious questions about whether or not an officer or employee of the United States acted willfully or intentionally with respect to the violation, the department or agency shall, upon receipt of a true and correct copy of the decision and findings of the court or appropriate department or agency promptly initiate a proceeding to determine whether disciplinary action against the officer or employee is warranted. If the head of the department or agency involved determines that disciplinary action is not warranted, he or she shall notify the Inspector General with jurisdiction over the department or agency concerned and shall provide the Inspector General with the reasons for such determination.

**(g) Improper disclosure is violation.**--Any willful disclosure or use by an investigative or law enforcement officer or governmental entity of information beyond the extent permitted by section 2517 is a violation of this chapter for purposes of section 2520(a).

### CREDIT(S)

(Added Pub.L. 90-351, Title III, § 802, June 19, 1968, 82 Stat. 223; amended Pub.L. 91-358, Title II, § 211(c), July 29, 1970, 84 Stat. 654; Pub.L. 99-508, Title I, § 103, Oct. 21, 1986, 100 Stat. 1853; Pub.L. 107-56, Title II, § 223(a), Oct. 26, 2001, 115 Stat. 293; Pub.L. 107-296, Title XXII, § 2207(e), formerly Title II, § 225(e), Nov. 25, 2002, 116 Stat. 2157; renumbered § 2207(e), Pub.L. 115-278, § 2(g)(2)(I), Nov. 16, 2018, 132 Stat. 4178; amended Pub.L. 115-141, Div. V, § 104(1)(B), Mar. 23, 2018, 132 Stat. 1216.)

18 U.S.C.A. § 2520, 18 USCA § 2520
Current through P.L.118-19. Some statute sections may be more current, see credits for details.

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

West's Kansas Statutes Annotated
  Chapter 20. Courts
    Article 3. District Courts
    General Provisions

K.S.A. 20-301

20-301. District court in each county; jurisdiction

Currentness

There shall be in each county a district court, which shall be a court of record, and shall have general original jurisdiction of all matters, both civil and criminal, unless otherwise provided by law, and also shall have such appellate jurisdiction as prescribed by law.

**Credits**

Laws 1951, ch. 243, § 1; Laws 1971, ch. 176, § 14; Laws 1976, ch. 146, § 9.

**Codifications:** G.S. 1868, ch. 28, § 1; R.S. 1923, 20-301.

K. S. A. 20-301, KS ST 20-301
Statute are current through laws enacted during the 2023 Regular Session of the Kansas Legislature.

---

**End of Document**
© 2023 Thomson Reuters. No claim to original U.S. Government Works.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.     Addendum F     1

West's Kansas Statutes Annotated
  Chapter 22. Criminal Procedure
    Article 25. Search and Seizure

K.S.A. 22-2514

22-2514. Authorized interception of wire, oral or electronic communications; definitions

Currentness

This act shall be a part of and supplemental to the code of criminal procedure. As used in this act:

(1) "Wire communication" means any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable or other like connection between the point of origin and the point of reception, including the use of such connection in a switching station, furnished or operated by any person engaged in providing or operating such facilities for the transmission of intrastate, interstate or foreign communications. Wire communication shall include any electronic storage of such communication;

(2) "oral communication" means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication;

(3) "intercept" means the aural or other acquisition of the contents of any wire, oral or electronic communication through the use of any electronic, mechanical or other device;

(4) "persons" means any individual, partnership, association, joint stock company, trust or corporation, including any official, employee or agent of the United States or any state or any political subdivision thereof;

(5) "investigative or law enforcement officer" means any law enforcement officer who is empowered by the law of this state to conduct investigations of or to make arrests for offenses enumerated in this act, including any attorney authorized by law to prosecute or participate in the prosecution of such offenses and agents of the United States federal bureau of investigation, drug enforcement administration, marshals service, secret service, treasury department, customs service, justice department and internal revenue service;

(6) "contents" when used with respect to any wire, oral or electronic communication, includes any information concerning the substance, purport or meaning of such communication;

(7) "aggrieved person" means a person who was a party to any intercepted wire, oral or electronic communication or a person against whom the interception was directed;

(8) "judge of competent jurisdiction" means a justice of the supreme court, a judge of the court of appeals or any district judge but does not include a district magistrate judge;

(9) "electronic, mechanical or other device" means any device or apparatus which can be used to intercept a wire, oral or electronic communication other than:

(a) Any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business or (ii) being used by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of the officer's duties; or

(b) a hearing aid or similar device being used to correct subnormal hearing to not better than normal;

(10) "communication common carrier" means common carrier, as defined by section 153(h) of title 47 of the United States Code;

(11) "electronic communication" means any transfer of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photo-optical system but does not include:

(a) Any wire or oral communication;

(b) any communication made through a tone-only paging device; or

(c) any communication from a tracking device, as defined in section 3117, chapter 205 of title 18, United States Code;

(12) "user" means any person or entity who:

(a) Uses an electronic communication service; and

(b) is duly authorized by the provider of such service to engage in such use;

(13) "electronic communications system" means any wire, radio, electromagnetic, photo-optical or photoelectronic facilities for the transmission of electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications;

(14) "electronic communication service" means any service which provides to users thereof the ability to send or receive wire or electronic communications;

(15) "readily accessible to the general public" means, with respect to a radio communication, that such communication is not:

(a) Scrambled or encrypted;

(b) transmitted using modulation techniques whose essential parameters have been withheld from the public with the intention of preserving the privacy of such communication;

(c) carried on a subcarrier or other signal subsidiary to a radio transmission;

(d) transmitted over a communication system provided by a common carrier, unless the communication is a tone-only paging system communication; or

(e) transmitted on frequencies allocated under part 25, subpart D, E or F of part 74, or part 94 of the rules of the federal communications commission, unless, in the case of a communication transmitted on a frequency allocated under part 74 that is not exclusively allocated to broadcast auxiliary services, the communication is a two-way voice communication by radio;

(16) "electronic storage" means:

(a) Any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and

(b) any storage of such communication by an electronic communication service for purposes of backup protection of such communication; and

(17) "aural transfer" means a transfer containing the human voice at any point between and including the point of origin and the point of reception.

**Credits**

Laws 1974, ch. 150, § 1; Laws 1976, ch. 165, § 1; Laws 1976, ch. 163, § 4; Laws 1976, ch. 165, § 2; Laws 1986, ch. 115, § 55; Laws 1988, ch. 117, § 1; Laws 1995, ch. 92, § 1.

K. S. A. 22-2514, KS ST 22-2514

Statute are current through laws enacted during the 2023 Regular Session of the Kansas Legislature.

   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

West's Kansas Statutes Annotated
  Chapter 22. Criminal Procedure
    Article 25. Search and Seizure

K.S.A. 22-2516

22-2516. Same; application for order, form and contents; issuance of order; contents; duration; extension;
recordation of intercepted communications; custody of application and order, disclosure; inventory,
notice to certain persons; evidentiary status of intercepted communications; motion to suppress, appeal

Currentness

(1) Each application for an order authorizing the interception of a wire, oral or electronic communication shall be made in writing, upon oath or affirmation, to a judge of competent jurisdiction, and shall state the applicant's authority to make such application. Each application shall include the following information:

(a) The identity of the prosecuting attorney making the application, and the identity of the investigative or law enforcement officer requesting such application to be made;

(b) a full and complete statement of the facts and circumstances relied upon by the applicant to justify such applicant's belief that an order should be issued, including (i) details as to the particular offense that has been, is being or is about to be committed, (ii) except as provided in subsection (10), a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, and (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted;

(c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;

(d) a statement of the period of time for which the interception is required to be maintained and, if the nature of the investigation is such that the authorization for interception should not automatically terminate when the described type of communication first has been obtained, a particular description of facts establishing probable cause to believe that additional communications of the same type will occur thereafter;

(e) a full and complete statement of the facts known to the applicant concerning all previous applications made to any judge for authorization to intercept wire, oral or electronic communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge on each such application; and

(f) where the application is for the extension of an order, a statement setting forth the results thus far obtained from the interception, or a reasonable explanation of the failure to obtain such results.

(2) The judge may require the applicant to furnish additional testimony or documentary evidence in support of the application. Oral testimony shall be under oath or affirmation, and a record of such testimony shall be made by a certified shorthand reporter and reduced to writing.

(3) Upon such application the judge may enter an *ex parte* order, as requested or as modified, authorizing the interception of wire, oral or electronic communications within the territorial jurisdiction of such judge, if the judge determines on the basis of the facts submitted by the applicant that:

(a) There is probable cause for belief that a person is committing, has committed or is about to commit a particular offense enumerated in subsection (1) of K.S.A. 22-2515, and amendments thereto;

(b) there is probable cause for belief that particular communications concerning the offense will be obtained through such interception;

(c) normal investigative procedures have been tried and have failed, or reasonably appear to be unlikely to succeed if tried, or to be too dangerous; and

(d) except as provided in subsection (10), there is probable cause for belief that the facilities from which, or the place where, the wire, oral or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of or commonly used by such person.

(4) Each order authorizing the interception of any wire, oral or electronic communication shall:

(a) Specify the identity of the person, if known, whose communications are to be intercepted;

(b) specify the nature and location of the communications facilities as to which, or the place where, authority to intercept is granted;

(c) specify with particularity a description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates;

(d) specify the identity of each agency authorized to intercept the communications, and of the person authorizing the application;

(e) specify the period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained; and

(f) upon request of the applicant, direct that a provider of wire communication, electronic communication service, regardless of the location or principal place of business of such provider of electronic communication service, or public utility, landlord, custodian or other person shall furnish the applicant forthwith all information, facilities and technical assistance necessary to

accomplish the interception unobtrusively and with a minimum of interference with the services that such service provider, utility, landlord, custodian or person is according the person whose communications are to be intercepted. Any provider of wire or electronic communication service or public utility, landlord, custodian or other person furnishing such facilities or technical assistance shall be compensated therefor by the applicant for reasonable expenses incurred in providing such facilities or technical assistance.

(5) No order entered under this section may authorize the interception of any wire, oral or electronic communication for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than 30 days. Such thirty-day period begins on the earlier of the day on which the investigative or law enforcement officer first begins to conduct an interception under the order or 10 days after the order is entered. Extensions of an order may be granted, but only upon application for an extension made in accordance with subsection (1) of this section and the court making the findings required by subsection (3) of this section. The period of any such extension shall be no longer than the authorizing judge deems necessary to achieve the purposes for which it was granted and in no event for longer than 30 days. Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this act, and must terminate upon attainment of the authorized objective, or in any event in 30 days. In the event the intercepted communication is in a code or foreign language, and an expert in that foreign language or code is not reasonably available during the interception period, minimization may be accomplished as soon as practicable after such interception. An interception under this chapter may be conducted in whole or in part by government personnel, or by an individual operating under a contract with the government, acting under the supervision of an investigative or law enforcement officer authorized to conduct the interception.

(6) Whenever an order authorizing the interception of wire or oral communications is entered pursuant to this act, the order may require reports to be made to the judge who issued the order showing what progress has been made toward achievement of the authorized objective and the need for continued interception. Such reports shall be made at such intervals as the judge may require.

(7)(a) The contents of any wire, oral or electronic communication intercepted by any means authorized by this act shall be recorded, if possible, on tape or wire or other comparable device. The recording of the contents of any wire, oral or electronic communication under this subsection shall be done in a manner which will protect the recording from editing or other alterations. Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under such judge's directions. Custody of the recordings shall be wherever the judge orders, and the recordings shall not be destroyed except upon order of the issuing or denying judge and, in any event, shall be kept for not less than 10 years. Duplicate recordings may be made for use or disclosure pursuant to the provisions of subsections (b) and (c) of K.S.A. 22-2515, and amendments thereto, for investigations. The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire, oral or electronic communication or evidence derived therefrom under subsection (d) of K.S.A. 22-2515, and amendments thereto.

(b) Applications made and orders granted under this act shall be sealed by the judge. Custody of the applications and orders shall be wherever the judge directs. Such applications and orders shall be disclosed only upon a showing of good cause before a judge of competent jurisdiction and shall not be destroyed except on order of the issuing or denying judge, and in any event shall be kept for not less than 10 years.

(c) Any violation of the provisions of paragraph (a) or (b) of this subsection may be punished as contempt of the issuing or denying judge.

(d) Within a reasonable time but not later than 90 days after the termination of the period of an order or extensions thereof the issuing or denying judge shall cause to be served on the persons named in the order or the application and, in the interest of justice, such other parties to intercepted communications as the judge may determine, an inventory which shall include notice of:

(i) The fact of the entry of the order or the application;

(ii) the date of the entry and the period of authorized, approved or disapproved interception, or the denial of the application; and

(iii) the fact that during the period wire, oral or electronic communications were or were not intercepted.

The judge, upon the filing of a motion in such judge's discretion, may make available to such person or such person's counsel for inspection, such portions of the intercepted communications, applications and orders as the judge determines to be in the interest of justice. On an *ex parte* showing of good cause to a judge of competent jurisdiction the serving of the inventory required by this subsection may be postponed.

(8) The contents of any intercepted wire, oral or electronic communication or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing or other proceeding in any federal court or court of this state, unless each party, not less than 10 days before the trial, hearing or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized. Such ten-day period may be waived by the judge, if the judge finds that it was not possible to furnish the party with the above information 10 days before the trial, hearing or proceeding, and that the party will not be prejudiced by the delay in receiving such information.

(9)(a) Any aggrieved person in any trial, hearing or proceeding in or before any court, department, officer, agency, regulatory body or other authority of the United States, this state, or a political subdivision thereof, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that:

(i) The communication was unlawfully intercepted;

(ii) the order of authorization under which it was intercepted is insufficient on its face; or

(iii) the interception was not made in conformity with the order of authorization.

Such motion shall be made before the trial, hearing or proceeding, unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion. If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this act. Upon the filing of such motion by the aggrieved person, the judge in such judge's discretion may make available to the aggrieved person or such person's counsel for inspection such portions of the intercepted communication or evidence derived therefrom as the judge determines to be in the interest of justice.

(b) In addition to any other right to appeal, the state shall have the right to appeal:

(i) From an order granting a motion to suppress made under paragraph (a) of this subsection. Such appeal shall be taken within 14 days after the order of suppression was entered and shall be diligently prosecuted as in the case of other interlocutory appeals or under such rules as the supreme court may adopt;

(ii) from an order denying an application for an order authorizing the interception of wire or oral communications, and any such appeal shall be *ex parte* and shall be in camera in preference to all other pending appeals in accordance with rules promulgated by the supreme court.

(10) The requirements of subsections (1)(b)(ii) and (3)(d) of this section relating to the specification of the facilities from which, or the place where, the communication is to be intercepted do not apply if:

(a) In the case of an application with respect to the interception of an oral communication:

(i) The application is by a law enforcement officer and is approved by the attorney general and the county or district attorney where the application is sought;

(ii) the application contains a full and complete statement as to why such specification is not practical and identifies the person committing the offense and whose communications are to be intercepted; and

(iii) the judge finds that such specification is not practical; and

(b) in the case of an application with respect to a wire or electronic communication:

(i) The application is by a law enforcement officer and is approved by the attorney general and the county or district attorney where the application is sought;

(ii) the application identifies the person believed to be committing the offense and whose communications are to be intercepted and the applicant makes a showing of a purpose, on the part of that person, to thwart interception by changing facilities; and

(iii) the judge finds that such purpose has been adequately shown.

(11) An interception of a communication under an order with respect to which the requirements of subsections (1)(b)(ii) and (3)(d) of this section do not apply by reason of subsection (10) shall not begin until the facilities from which, or the place where, the communication is to be intercepted is ascertained by the person implementing the interception order. A provider of wire or electronic communications service that has received an order as provided for in subsection (10)(b) may move the court to modify or quash the order on the ground that its assistance with respect to the interception cannot be performed in a timely or reasonable fashion. The court, upon notice to the government, shall decide such a motion expeditiously.

(12) The remedies and sanctions described in this chapter with respect to the interception of electronic communications are the only judicial remedies and sanctions for nonconstitutional violations of this act involving such communications.

(13) Nothing in this section shall be construed as requiring a search warrant for cellular location information in an emergency situation pursuant to K.S.A. 22-4615, and amendments thereto.

**Credits**

Laws 1974, ch. 150, § 3; Laws 1976, ch. 165, § 4; Laws 1988, ch. 117, § 3; Laws 2010, ch. 135, § 14, eff. July 1, 2010; Laws 2011, ch. 100, § 6, eff. July 1, 2011.

K. S. A. 22-2516, KS ST 22-2516

Statute are current through laws enacted during the 2023 Regular Session of the Kansas Legislature.

**End of Document**                                      © 2023 Thomson Reuters. No claim to original U.S. Government Works.

West's Kansas Statutes Annotated
  Chapter 22. Criminal Procedure
    Article 25. Search and Seizure

K.S.A. 22-2518

22-2518. Same; civil action for damages; defense available in civil and criminal actions

Currentness

(1) Any person whose wire, oral or electronic communication is intercepted, disclosed or used in violation of this act shall have a civil cause of action against any person who intercepts, discloses or uses, or procures any other person to intercept, disclose or use, such communications, and shall be entitled to recover from any such person:

  (a) Actual damages, but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is greater;

  (b) punitive damages; and

  (c) reasonable attorneys' fees and other litigation costs reasonably incurred.

(2) A good faith reliance by any person on a court order authorizing the interception of any wire, oral or electronic communication shall constitute a complete defense in any civil or criminal action brought against such person based upon such interception.

**Credits**
Laws 1974, ch. 150, § 5; Laws 1988, ch. 117, § 4.

K. S. A. 22-2518, KS ST 22-2518
Statute are current through laws enacted during the 2023 Regular Session of the Kansas Legislature.

End of Document                                            © 2023 Thomson Reuters. No claim to original U.S. Government Works.

West's Kansas Statutes Annotated
  Chapter 60. Procedure, Civil
    Article 2. Rules of Civil Procedure

K.S.A. 60-203

60-203. Commencement of action

Currentness

(a) *Time of commencement.* A civil action is commenced at the time of: (1) Filing a petition with the court, if service of process is obtained or the first publication is made for service by publication within 90 days after the petition is filed, except that the court may extend that time an additional 30 days upon a showing of good cause by the plaintiff; or (2) service of process or first publication, if service of process or first publication is not made within the time specified by paragraph (1).

(b) *Curing invalid service.* If service of process or first publication purports to have been made but is later adjudicated to have been invalid due to an irregularity in form or procedure or a defect in making service, the action is considered to have been commenced at the applicable time under subsection (a) if valid service is obtained or first publication is made within 90 days after that adjudication, except that the court may extend that time an additional 30 days upon a showing of good cause by the plaintiff.

(c) *Entry of appearance.* The filing of an entry of appearance has the same effect as service. Written contact with the court by a defendant, or an attorney for the defendant invoking protection for the defendant under the servicemembers civil relief act (50 U.S.C. § 501 et seq.), and amendments thereto, is not an entry of appearance.

(d) *Electronic filing.* As used in this section, filing a petition with the court includes receipt by the court of a petition by electronic means complying with supreme court rules.

**Credits**

Laws 1963, ch. 303, § 60-203; Laws 1983, ch. 193, § 1; Laws 1990, ch. 202, § 1; Laws 1991, ch. 169, § 1; Laws 1992, ch. 128, § 12; Laws 2005, ch. 45, § 4; Laws 2010, ch. 135, § 70, eff. July 1, 2010; Laws 2011, ch. 48, § 3, eff. July 1, 2011.

K. S. A. 60-203, KS ST 60-203

Statute are current through laws enacted during the 2023 Regular Session of the Kansas Legislature.

End of Document                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

West's Kansas Statutes Annotated
  Chapter 60. Procedure, Civil
    Article 5. Limitations of Actions
      Personal Actions and General Provisions

K.S.A. 60-512

60-512. Actions limited to three years

Currentness

The following actions shall be brought within three (3) years: (1) All actions upon contracts, obligations or liabilities expressed or implied but not in writing. (2) An action upon a liability created by a statute other than a penalty or forfeiture.

**Credits**
Laws 1963, ch. 303, 60-512.

K. S. A. 60-512, KS ST 60-512
Statute are current through laws enacted during the 2023 Regular Session of the Kansas Legislature.

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

West's Kansas Statutes Annotated
  Chapter 60. Procedure, Civil
    Article 5. Limitations of Actions
      Personal Actions and General Provisions

K.S.A. 60-515

60-515. Persons under legal disability

Currentness

(a) *Effect.* Except as provided in K.S.A. 60-523, if any person entitled to bring an action, other than for the recovery of real property or a penalty or a forfeiture, at the time the cause of action accrued or at any time during the period the statute of limitations is running, is less than 18 years of age, an incapacitated person or imprisoned for a term less than such person's natural life, such person shall be entitled to bring such action within one year after the person's disability is removed, except that no such action shall be commenced by or on behalf of any person under the disability more than eight years after the time of the act giving rise to the cause of action.

Notwithstanding the foregoing provision, if a person imprisoned for any term has access to the court for purposes of bringing an action, such person shall not be deemed to be under legal disability.

(b) *Death of person under disability.* If any person entitled to bring an action dies during the continuance of any disability specified in subsection (a) and no determination is made of the cause of action accrued to the deceased, any person entitled to claim from, by or under the deceased, may commence such action within one year after the deceased's death, but in no event shall any such action be commenced more than eight years beyond the time of the act giving rise to the cause of action.

**Credits**
Laws 1963, ch. 303, 60-515; Laws 1965, ch. 354, § 13; Laws 1972, ch. 161, § 15; Laws 1976, ch. 254, § 3; Laws 1981, ch. 234, § 1; Laws 1992, ch. 307, § 2.

K. S. A. 60-515, KS ST 60-515
Statute are current through laws enacted during the 2023 Regular Session of the Kansas Legislature.

End of Document    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

# RULES OF CIVIL PROCEDURE

### FOR THE

## UNITED STATES DISTRICT COURTS[1]

**Effective September 16, 1938, as amended to December 1, 2022**

TITLE I. SCOPE OF RULES; FORM OF ACTION

### Rule 1. Scope and Purpose

These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81. They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.

(As amended Dec. 29, 1948, eff. Oct. 20, 1949; Feb. 28, 1966, eff. July 1, 1966; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 29, 2015, eff. Dec. 1, 2015.)

### Rule 2. One Form of Action

There is one form of action—the civil action.

(As amended Apr. 30, 2007, eff. Dec. 1, 2007.)

TITLE II. COMMENCING AN ACTION; SERVICE OF PROCESS, PLEADINGS, MOTIONS, AND ORDERS

### Rule 3. Commencing an Action

A civil action is commenced by filing a complaint with the court.

(As amended Apr. 30, 2007, eff. Dec. 1, 2007.)

### Rule 4. Summons

(a) CONTENTS; AMENDMENTS.
    (1) *Contents.* A summons must:
        (A) name the court and the parties;
        (B) be directed to the defendant;
        (C) state the name and address of the plaintiff's attorney or—if unrepresented—of the plaintiff;
        (D) state the time within which the defendant must appear and defend;
        (E) notify the defendant that a failure to appear and defend will result in a default judgment against the defendant for the relief demanded in the complaint;
        (F) be signed by the clerk; and
        (G) bear the court's seal.

---

[1] Title amended December 29, 1948, effective October 20, 1949.

(1)

Addendum J

(2) *Amendments.* The court may permit a summons to be amended.

(b) ISSUANCE. On or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal. If the summons is properly completed, the clerk must sign, seal, and issue it to the plaintiff for service on the defendant. A summons—or a copy of a summons that is addressed to multiple defendants—must be issued for each defendant to be served.

(c) SERVICE.

(1) *In General.* A summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service.

(2) *By Whom.* Any person who is at least 18 years old and not a party may serve a summons and complaint.

(3) *By a Marshal or Someone Specially Appointed.* At the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court. The court must so order if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915 or as a seaman under 28 U.S.C. § 1916.

(d) WAIVING SERVICE.

(1) *Requesting a Waiver.* An individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons. The plaintiff may notify such a defendant that an action has been commenced and request that the defendant waive service of a summons. The notice and request must:

(A) be in writing and be addressed:

(i) to the individual defendant; or

(ii) for a defendant subject to service under Rule 4(h), to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process;

(B) name the court where the complaint was filed;

(C) be accompanied by a copy of the complaint, 2 copies of the waiver form appended to this Rule 4, and a prepaid means for returning the form;

(D) inform the defendant, using the form appended to this Rule 4, of the consequences of waiving and not waiving service;

(E) state the date when the request is sent;

(F) give the defendant a reasonable time of at least 30 days after the request was sent—or at least 60 days if sent to the defendant outside any judicial district of the United States—to return the waiver; and

(G) be sent by first-class mail or other reliable means.

(2) *Failure to Waive.* If a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court must impose on the defendant:

(A) the expenses later incurred in making service; and

(B) the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses.

(3) *Time to Answer After a Waiver*. A defendant who, before being served with process, timely returns a waiver need not serve an answer to the complaint until 60 days after the request was sent—or until 90 days after it was sent to the defendant outside any judicial district of the United States.

(4) *Results of Filing a Waiver*. When the plaintiff files a waiver, proof of service is not required and these rules apply as if a summons and complaint had been served at the time of filing the waiver.

(5) *Jurisdiction and Venue Not Waived*. Waiving service of a summons does not waive any objection to personal jurisdiction or to venue.

(e) SERVING AN INDIVIDUAL WITHIN A JUDICIAL DISTRICT OF THE UNITED STATES. Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

(A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

(f) SERVING AN INDIVIDUAL IN A FOREIGN COUNTRY. Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

(A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

(B) as the foreign authority directs in response to a letter rogatory or letter of request; or

(C) unless prohibited by the foreign country's law, by:

(i) delivering a copy of the summons and of the complaint to the individual personally; or

(ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders.

(g) SERVING A MINOR OR AN INCOMPETENT PERSON. A minor or an incompetent person in a judicial district of the United States

must be served by following state law for serving a summons or like process on such a defendant in an action brought in the courts of general jurisdiction of the state where service is made. A minor or an incompetent person who is not within any judicial district of the United States must be served in the manner prescribed by Rule 4(f)(2)(A), (f)(2)(B), or (f)(3).

(h) SERVING A CORPORATION, PARTNERSHIP, OR ASSOCIATION. Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:

(1) in a judicial district of the United States:

(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or

(B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant; or

(2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).

(i) SERVING THE UNITED STATES AND ITS AGENCIES, CORPORATIONS, OFFICERS, OR EMPLOYEES.

(1) *United States.* To serve the United States, a party must:

(A)(i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought—or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—or

(ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;

(B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and

(C) if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

(2) *Agency; Corporation; Officer or Employee Sued in an Official Capacity.* To serve a United States agency or corporation, or a United States officer or employee sued only in an official capacity, a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee.

(3) *Officer or Employee Sued Individually.* To serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g).

(4) *Extending Time.* The court must allow a party a reasonable time to cure its failure to:

(A) serve a person required to be served under Rule 4(i)(2), if the party has served either the United States attorney or the Attorney General of the United States; or

(B) serve the United States under Rule 4(i)(3), if the party has served the United States officer or employee.

(j) SERVING A FOREIGN, STATE, OR LOCAL GOVERNMENT.

(1) *Foreign State.* A foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. §1608.

(2) *State or Local Government.* A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by:

(A) delivering a copy of the summons and of the complaint to its chief executive officer; or

(B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

(k) TERRITORIAL LIMITS OF EFFECTIVE SERVICE.

(1) *In General.* Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant.

(A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located;

(B) who is a party joined under Rule 14 or 19 and is served within a judicial district of the United States and not more than 100 miles from where the summons was issued; or

(C) when authorized by a federal statute.

(2) *Federal Claim Outside State-Court Jurisdiction.* For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:

(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and

(B) exercising jurisdiction is consistent with the United States Constitution and laws.

(*l*) PROVING SERVICE.

(1) *Affidavit Required.* Unless service is waived, proof of service must be made to the court. Except for service by a United States marshal or deputy marshal, proof must be by the server's affidavit.

(2) *Service Outside the United States.* Service not within any judicial district of the United States must be proved as follows:

(A) if made under Rule 4(f)(1), as provided in the applicable treaty or convention; or

(B) if made under Rule 4(f)(2) or (f)(3), by a receipt signed by the addressee, or by other evidence satisfying the court that the summons and complaint were delivered to the addressee.

(3) *Validity of Service; Amending Proof.* Failure to prove service does not affect the validity of service. The court may permit proof of service to be amended.

(m) TIME LIMIT FOR SERVICE. If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its

own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1), or to service of a notice under Rule 71.1(d)(3)(A).

(n) ASSERTING JURISDICTION OVER PROPERTY OR ASSETS.

(1) *Federal Law.* The court may assert jurisdiction over property if authorized by a federal statute. Notice to claimants of the property must be given as provided in the statute or by serving a summons under this rule.

(2) *State Law.* On a showing that personal jurisdiction over a defendant cannot be obtained in the district where the action is brought by reasonable efforts to serve a summons under this rule, the court may assert jurisdiction over the defendant's assets found in the district. Jurisdiction is acquired by seizing the assets under the circumstances and in the manner provided by state law in that district.

(As amended Jan. 21, 1963, eff. July 1, 1963; Feb. 28, 1966, eff. July 1, 1966; Apr. 29, 1980, eff. Aug. 1, 1980; Pub. L. 97–462, §2, Jan. 12, 1983, 96 Stat. 2527, eff. Feb. 26, 1983; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 17, 2000, eff. Dec. 1, 2000; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 29, 2015, eff. Dec. 1, 2015; Apr. 28, 2016, eff. Dec. 1, 2016; Apr. 27, 2017, eff. Dec. 1, 2017.)

RULE 4 NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF SUMMONS.

(Caption)

To (*name the defendant or—if the defendant is a corporation, partnership, or association—name an officer or agent authorized to receive service*):

WHY ARE YOU GETTING THIS?

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver. To avoid these expenses, you must return the signed waiver within (*give at least 30 days or at least 60 days if the defendant is outside any judicial district of the United States*) from the date shown below, which is the date this notice was sent. Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

WHAT HAPPENS NEXT?

If you return the signed waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

7          FEDERAL RULES OF CIVIL PROCEDURE          **Rule 4**

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date:_____

_____
(Signature of the attorney
or unrepresented party)

_____
(Printed name)

_____
(Address)

_____
(E-mail address)

_____
(Telephone number)

RULE 4 WAIVER OF THE SERVICE OF SUMMONS.

(Caption)

To (*name the plaintiff's attorney or the unrepresented plaintiff*):

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date:_____

_____
(Signature of the attorney
or unrepresented party)

_____
(Printed name)

_____
(Address)

_____
(E-mail address)

_____
(Telephone number)

(Attach the following)

DUTY TO AVOID UNNECESSARY EXPENSES
OF SERVING A SUMMONS

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

''Good cause'' does not include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

## Rule 4.1. Serving Other Process

(a) IN GENERAL. Process—other than a summons under Rule 4 or a subpoena under Rule 45—must be served by a United States marshal or deputy marshal or by a person specially appointed for that purpose. It may be served anywhere within the territorial limits of the state where the district court is located and, if authorized by a federal statute, beyond those limits. Proof of service must be made under Rule 4(*l*).

(b) ENFORCING ORDERS: COMMITTING FOR CIVIL CONTEMPT. An order committing a person for civil contempt of a decree or injunction issued to enforce federal law may be served and enforced in any district. Any other order in a civil-contempt proceeding may be served only in the state where the issuing court is located or elsewhere in the United States within 100 miles from where the order was issued.

(As added Apr. 22, 1993, eff. Dec. 1, 1993; amended Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 5. Serving and Filing Pleadings and Other Papers

(a) SERVICE: WHEN REQUIRED.

(1) *In General.* Unless these rules provide otherwise, each of the following papers must be served on every party:

(A) an order stating that service is required;

(B) a pleading filed after the original complaint, unless the court orders otherwise under Rule 5(c) because there are numerous defendants;

(C) a discovery paper required to be served on a party, unless the court orders otherwise;

(D) a written motion, except one that may be heard ex parte; and

Apr. 29, 2002, eff. Dec. 1, 2002; Mar. 27, 2003, eff. Dec. 1, 2003; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)

## Rule 55. Default; Default Judgment

(a) ENTERING A DEFAULT. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

(b) ENTERING A DEFAULT JUDGMENT.

(1) *By the Clerk.* If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk— on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

(2) *By the Court.* In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals— preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:

(A) conduct an accounting;

(B) determine the amount of damages;

(C) establish the truth of any allegation by evidence; or

(D) investigate any other matter.

(c) SETTING ASIDE A DEFAULT OR A DEFAULT JUDGMENT. The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b).

(d) JUDGMENT AGAINST THE UNITED STATES. A default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court.

(As amended Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009; Apr. 29, 2015, eff. Dec. 1, 2015.)

## Rule 56. Summary Judgment

(a) MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT. A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

(b) TIME TO FILE A MOTION. Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.

(c) PROCEDURES.

Addendum K

(1) *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2) *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3) *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

(4) *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

(d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

(e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or

(4) issue any other appropriate order.

(f) Judgment Independent of the Motion. After giving notice and a reasonable time to respond, the court may:

(1) grant summary judgment for a nonmovant;

(2) grant the motion on grounds not raised by a party; or

(3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

(g) Failing to Grant All the Requested Relief. If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case.

(h) Affidavit or Declaration Submitted in Bad Faith. If satisfied that an affidavit or declaration under this rule is submitted

in bad faith or solely for delay, the court—after notice and a reasonable time to respond—may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009; Apr. 28, 2010, eff. Dec. 1, 2010.)

## Rule 57. Declaratory Judgment

These rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. §2201. Rules 38 and 39 govern a demand for a jury trial. The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate. The court may order a speedy hearing of a declaratory-judgment action.

(As amended Dec. 29, 1948, eff. Oct. 20, 1949; Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 58. Entering Judgment

(a) SEPARATE DOCUMENT. Every judgment and amended judgment must be set out in a separate document, but a separate document is not required for an order disposing of a motion:

(1) for judgment under Rule 50(b);

(2) to amend or make additional findings under Rule 52(b);

(3) for attorney's fees under Rule 54;

(4) for a new trial, or to alter or amend the judgment, under Rule 59; or

(5) for relief under Rule 60.

(b) ENTERING JUDGMENT.

(1) *Without the Court's Direction.* Subject to Rule 54(b) and unless the court orders otherwise, the clerk must, without awaiting the court's direction, promptly prepare, sign, and enter the judgment when:

(A) the jury returns a general verdict;

(B) the court awards only costs or a sum certain; or

(C) the court denies all relief.

(2) *Court's Approval Required.* Subject to Rule 54(b), the court must promptly approve the form of the judgment, which the clerk must promptly enter, when:

(A) the jury returns a special verdict or a general verdict with answers to written questions; or

(B) the court grants other relief not described in this subdivision (b).

(c) TIME OF ENTRY. For purposes of these rules, judgment is entered at the following times:

(1) if a separate document is not required, when the judgment is entered in the civil docket under Rule 79(a); or

(2) if a separate document is required, when the judgment is entered in the civil docket under Rule 79(a) and the earlier of these events occurs:

(A) it is set out in a separate document; or

(B) 150 days have run from the entry in the civil docket.

(d) REQUEST FOR ENTRY. A party may request that judgment be set out in a separate document as required by Rule 58(a).

## RULE 56.1
## MOTIONS FOR SUMMARY JUDGMENT

**(a)**   **Supporting Brief.**  The brief in support of a motion for summary judgment must begin with a section that contains a concise statement of material facts as to which the movant contends no genuine issue exists.  The facts must be numbered and must refer with particularity to those portions of the record upon which movant relies. All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.

**(b)**   **Opposing Brief.**

    (1)   A brief in opposition to a motion for summary judgment must begin with a section containing a concise statement of material facts as to which the party contends a genuine issue exists.  Each fact in dispute must be numbered by paragraph, refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, state the number of movant's fact that is disputed.

    (2)   If the party opposing summary judgment relies on any facts not contained in movant's brief, that party must set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above.  All material facts set forth in this statement of the non-moving party will be deemed admitted for the purpose of summary judgment unless specifically controverted by the reply of the moving party.

**(c)**   **Reply Brief.**  In a reply brief, the moving party must respond to the non-moving party's statement of additional material facts in the manner prescribed in subsection (b)(1).

**(d)**   **Notice to Pro Se Litigant Who Opposes a Summary Judgment Motion.**  Any represented party moving for summary judgment against a party proceeding pro se must serve and file as a separate document, together with the papers in support of the motion, the following "Notice To Pro Se Litigant Who Opposes a Motion For Summary Judgment" with the full texts of Fed. R. Civ. P. 56 and D. Kan. Rule 56.1 attached.  Where the pro se party is not the plaintiff, the movant must amend the form notice as necessary to reflect that fact.

<strong>"Notice to Pro Se Litigant Who Opposes a<br>Motion for Summary Judgment"</strong>

The defendant in this case has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  This means that the defendant has asked the court to decide this case without a trial, based on written materials, including affidavits, submitted in support of the motion.  The claims you assert in your complaint may be dismissed without a trial if you do not respond to this motion on time by filing sworn affidavits and/or other documents as required by Rule 56(c) of the Federal Rules of Civil Procedure and by D. Kan. Rule 56.1. The full text of these two rules is attached to this notice.

In short, Fed. R. Civ. P. 56 provides that you may not oppose summary judgment simply by relying upon the allegations in your complaint.  Rather, you must submit evidence, such as witness statements or documents, countering the

46

Addendum L

facts asserted by the defendant and raising specific facts that support your claim. If you have proof of your claim, now is the time to submit it. Any witness statements must be in the form of affidavits. An affidavit is a sworn statement of fact based on personal knowledge stating facts that would be admissible in evidence at trial. You may submit your own affidavit and/or the affidavits of others. You may submit affidavits that were prepared specifically in response to defendant's motion for summary judgment.

If you do not respond to the motion for summary judgment on time with affidavits and/or documents contradicting the material facts asserted by the defendant, the court may accept defendant's facts as true, in which event your case may be dismissed and judgment entered in defendant's favor without a trial.

\* \* \*

As amended 12/1/22, 10/13, 9/00.

## RULE 58.1
## JOURNAL ENTRIES AND ORDERS

In all cases where the court directs that a judgment be settled by journal entry pursuant to Fed R. Civ. P. 58, it must be prepared in accordance with the directions of the court. Attorneys preparing the journal entry must, within 14 days – unless the court orders otherwise – serve copies on all other attorneys involved who must, within 14 days after service is made, serve on the attorney(s) preparing said journal entry any objections in writing. At the expiration of the time for serving objections, the attorney(s) preparing said journal entry must submit the original, together with any objections received, to the court for approval. If the attorneys cannot agree as to the form of the journal entry, the court will settle the journal entry.

\* \* \*

As amended 12/01/09.

## RULE 62.1
## MANDATES OF AN APPELLATE COURT

When an appellate court remands a case to this court for further proceedings, the clerk will refer the case to the judge who heard the case, unless the appellate court has otherwise directed. Any other order or mandate of an appellate court, when filed with the clerk of this court, automatically becomes the order or judgment of this court. The clerk will enter it as such without further order.

\* \* \*

## RULE 62.2
## SECURITY

A bond or other security staying execution of a money judgment must, unless the court otherwise directs, be in the amount of the judgment, plus 25% of that amount to cover interest and any award of damages for delay.

\* \* \*

As amended 12/1/22

47

# Fed. R. App. P. Rule 28. Briefs

**(a) Appellant's Brief.** The appellant's brief must contain, under appropriate headings and in the order indicated:

**(1)** a disclosure statement if required by Rule 26.1;

**(2)** a table of contents, with page references;

**(3)** a table of authorities—cases (alphabetically arranged), statutes, and other authorities—with references to the pages of the brief where they are cited;

**(4)** a jurisdictional statement, including:

**(A)** the basis for the district court's or agency's subject-matter jurisdiction, with citations to applicable statutory provisions and stating relevant facts establishing jurisdiction;

**(B)** the basis for the court of appeals' jurisdiction, with citations to applicable statutory provisions and stating relevant facts establishing jurisdiction;

**(C)** the filing dates establishing the timeliness of the appeal or petition for review; and

**(D)** an assertion that the appeal is from a final order or judgment that disposes of all parties' claims, or information establishing the court of appeals' jurisdiction on some other basis;

**(5)** a statement of the issues presented for review;

**(6)** a concise statement of the case setting out the facts relevant to the issues submitted for review, describing the relevant procedural history, and identifying the rulings presented for review, with appropriate references to the record (Rule 28(e));

**(7)** a summary of the argument, which must contain a succinct, clear, and accurate statement of the arguments made in the body of the brief, and which must not merely repeat the argument headings;

**(8)** the argument, which must contain:

Addendum M

**(A)** appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies; and

**(B)** for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues);

**(9)** a short conclusion stating the precise relief sought; and

**(10)** the certificate of compliance, if required by Rule 32(g)(1).

**(b) Appellee's Brief.** The appellee's brief must conform to the requirements of Rule 28(a)(1)-(8) and (10), except that none of the following need appear unless the appellee is dissatisfied with the appellant's statement:

**(1)** the jurisdictional statement;

**(2)** the statement of the issues;

**(3)** the statement of the case; and

**(4)** the statement of the standard of review.

**(c) Reply Brief.** The appellant may file a brief in reply to the appellee's brief. Unless the court permits, no further briefs may be filed. A reply brief must contain a table of contents, with page references, and a table of authorities—cases (alphabetically arranged), statutes, and other authorities—with references to the pages of the reply brief where they are cited.

**(d) References to Parties.** In briefs and at oral argument, counsel should minimize use of the terms "appellant" and "appellee." To make briefs clear, counsel should use the parties' actual names or the designations used in the lower court or agency proceeding, or such descriptive terms as "the employee," "the injured person," "the taxpayer," "the ship," "the stevedore."

**(e) References to the Record.** References to the parts of the record contained in the appendix filed with the appellant's brief must be to the pages of the appendix. If the appendix is prepared after the briefs are filed, a party referring to the record must follow one of the methods detailed in Rule 30(c). If the original record is used under Rule 30(f) and is not consecutively paginated, or if the brief refers to an unreproduced part of the record, any reference must be to the page of the original document. For example:

- Answer p. 7;

- Motion for Judgment p. 2;

- Transcript p. 231.

Only clear abbreviations may be used. A party referring to evidence whose admissibility is in controversy must cite the pages of the appendix or of the transcript at which the evidence was identified, offered, and received or rejected.

**(f) Reproduction of Statutes, Rules, Regulations, etc.** If the court's determination of the issues presented requires the study of statutes, rules, regulations, etc., the relevant parts must be set out in the brief or in an addendum at the end, or may be supplied to the court in pamphlet form.

**(g) [Reserved]**

**(h) [Reserved]**

**(i) Briefs in a Case Involving Multiple Appellants or Appellees.** In a case involving more than one appellant or appellee, including consolidated cases, any number of appellants or appellees may join in a brief, and any party may adopt by reference a part of another's brief. Parties may also join in reply briefs.

**(j) Citation of Supplemental Authorities.** If pertinent and significant authorities come to a party's attention after the party's brief has been filed—or after oral argument but before decision—a party may promptly advise the circuit clerk by letter, with a copy to all other parties, setting forth the citations. The letter must state the reasons for the supplemental citations, referring either to the page of the brief or to a point argued orally. The body of the letter must not exceed 350 words. Any response must be made promptly and must be similarly limited.

(As amended Apr. 16, 2013, eff. Dec. 1, 2013; Apr. 28, 2016, eff. Dec. 1, 2016; Apr. 25, 2019, eff. Dec. 1, 2019.)

91

# Fed. R. App. P. Rule 32. Form of Briefs, Appendices, and Other Papers

**(a) Form of a Brief.**

**(1) Reproduction.**

**(A)** A brief may be reproduced by any process that yields a clear black image on light paper. The paper must be opaque and unglazed. Only one side of the paper may be used.

**(B)** Text must be reproduced with a clarity that equals or exceeds the output of a laser printer.

**(C)** Photographs, illustrations, and tables may be reproduced by any method that results in a good copy of the original; a glossy finish is acceptable if the original is glossy.

**(2) Cover.** Except for filings by unrepresented parties, the cover of the appellant's brief must be blue; the appellee's, red; an intervenor's or amicus curiae's, green; any reply brief, gray and any supplemental brief, tan. The front cover of a brief must contain:

**(A)** the number of the case centered at the top;

**(B)** the name of the court;

**(C)** the title of the case (*see* Rule 12(a));

**(D)** the nature of the proceeding (e.g., Appeal, Petition for Review) and the name of the court, agency, or board below;

**(E)** the title of the brief, identifying the party or parties for whom the brief is filed; and

**(F)** the name, office address, and telephone number of counsel representing the party for whom the brief is filed.

**(3) Binding.** The brief must be bound in any manner that is secure, does not obscure the text, and permits the brief to lie reasonably flat when open.

**(4) Paper Size, Line Spacing, and Margins.** The brief must be on 8 ½ by 11 inch paper. The text must be double-spaced, but quotations more than two lines

Addendum N

long may be indented and single-spaced. Headings and footnotes may be single-spaced. Margins must be at least one inch on all four sides. Page numbers may be placed in the margins, but no text may appear there.

**(5) Typeface.** Either a proportionally spaced or monospaced face may be used.

**(A)** A proportionally spaced face must include serifs, but sans-serif type may be used in headings and captions. A proportionally spaced face must be 14-point or larger.

**(B)** A monospaced face may not contain more than 10 ½ characters per inch.

**(6) Type Styles.** A brief must be set in a plain, roman style, although italics or boldface may be used for emphasis. Case names must be italicized or underlined.

**(7) Length.**

**(A) Page limitation.** A principal brief may not exceed 30 pages, or a reply brief 15 pages, unless it complies with Rule 32(a)(7)(B).

**(B) Type-volume limitation.**

**(i)** A principal brief is acceptable if it:

- contains no more than 13,000 words; or

- uses a monospaced face and contains no more than 1,300 lines of text.

**(ii)** A reply brief is acceptable if it contains no more than half of the type volume specified in Rule 32(a)(7)(B)(i).

**(b) Form of an Appendix.** An appendix must comply with Rule 32(a)(1), (2), (3), and (4), with the following exceptions:

**(1)** The cover of a separately bound appendix must be white.

**(2)** An appendix may include a legible photocopy of any document found in the record or of a printed judicial or agency decision.

112

**(3)** When necessary to facilitate inclusion of odd-sized documents such as technical drawings, an appendix may be a size other than 8 ½ by 11 inches, and need not lie reasonably flat when opened.

**(c) Form of Other Papers.**

**(1) Motion.** The form of a motion is governed by Rule 27(d).

**(2) Other Papers.** Any other paper, including a petition for panel rehearing and a petition for hearing or rehearing en banc, and any response to such a petition, must be reproduced in the manner prescribed by Rule 32(a), with the following exceptions:

**(A)** A cover is not necessary if the caption and signature page of the paper together contain the information required by Rule 32(a)(2). If a cover is used, it must be white.

**(B)** Rule 32(a)(7) does not apply.

**(d) Signature.** Every brief, motion, or other paper filed with the court must be signed by the party filing the paper or, if the party is represented, by one of the party's attorneys.

**(e) Local Variation.** Every court of appeals must accept documents that comply with the form requirements of this rule and the length limits set by these rules. By local rule or order in a particular case a court of appeals may accept documents that do not meet all of the form requirements of this rule or the length limits set by these rules.

**(f) Items Excluded from Length**. In computing any length limit, headings, footnotes, and quotations count toward the limit but the following items do not:

- cover page;

- disclosure statement;

- table of contents;

- table of citations;

- statement regarding oral argument;

- addendum containing statutes, rules, or regulations;

113

- certificates of counsel;

- signature block;

- proof of service; and

- any item specifically excluded by these rules or by local rule.

**(g) Certificates of Compliance.**

**(1) Briefs and Papers that Require a Certificate.** A brief submitted under Rules 28.1(e)(2), 29(b)(4), or 32(a)(7)(B)—and a paper submitted under Rules 5(c)(1), 21(d)(1), 27(d)(2)(A), 27(d)(2)(C), 35(b)(2)(A), or 40(b)(1)—must include a certificate by the attorney, or an unrepresented party, that the document complies with the type-volume limitation. The person preparing the certificate may rely on the word or line count of the word-processing system used to prepare the document. The certificate must state the number of words—or the number of lines of monospaced type—in the document.

**(2) Acceptable Form.** Form 6 in the Appendix of Forms meets the requirements for a certificate of compliance.

(As amended Apr. 24, 1998, eff. Dec. 1, 1998; Apr. 29, 2002, eff. Dec. 1, 2002; Apr. 25, 2005, eff. Dec. 1, 2005; Apr. 28, 2016, eff. Dec. 1, 2016; Apr. 25, 2019, eff. Dec. 1, 2019.)

## 10th Cir. R. 32

**(A)    Font sizes in briefs.**

The court prefers 14-point type as required by Federal Rule of Appellate Procedure 32(a)(5)(A), but 13-point type is acceptable. Footnote font size should be the same as that used in the body of the brief.

**(B)    Word count where glossary included.**

In calculating the number of words and lines that count toward the word and line limitations, the glossary required by 10th Cir. R. 28.2(C)(4) may be excluded, in addition to the items listed in Federal Rule of Appellate Procedure 32(f).

114

# 10th Cir. R. 28

**28.1  References to appendix or record.**

**(A)  Record references.** For each issue raised on appeal, all briefs must cite the precise references in the record where the issue was raised and ruled on. Counsel are encouraged to include a footnote in the briefs at the point of the first record citation to confirm the citation convention.

   **(1)  Appendix.** References to the appendix should be by volume and page number (e.g., App. Vol. 2 at 27, or Supp. App. Vol. 2 at 14).

   **(2)  Record.** In cases without an appendix, references to the record should be to the record volume and page number (e.g., ROA, Vol. II, at 6). References to the transcript should be by volume and page number.

**(B)  Particular record references.** Briefs must cite the precise references in the record where a required objection was made and ruled on, if the appeal is based on:

   **(1)  a** failure to admit or exclude evidence;

   **(2)  the** giving of or refusal to give a particular jury instruction; or

   **(3)  any** other act or ruling for which a party must record an objection to preserve the right to appeal.

**28.2  Additional requirements.**

**(A)  Appellant's brief.** In addition to all other requirements of the Federal Rules of Appellate Procedure and these rules, the appellant's brief must include as an attachment the following (even though they are also included in the appendix or record):

   **(1)  copies** of all pertinent written findings, conclusions, opinions, or orders of a district judge, bankruptcy judge, or magistrate judge (if the district court adopts a magistrate's report and recommendation, that report must also be included);

   **(2)  if** any judicial pronouncement listed in (1) is oral, a copy of the transcript pages;

Addendum O

      (3)    in social security cases, copies of the decisions of the administrative law judge and the appeals council;

      (4)    in immigration cases, a copy of the transcript from the Immigration Judge's oral ruling, plus copies of the written rulings of the Immigration Judge and the Board of Immigration Appeals; and

      (5)    the judgment.

**(B)** **Appellee's brief.** If the appellant's brief fails to attach all the rulings required by (A), the appellee's brief must attach them.

**(C)** **All principal briefs.**

      (1)    **Name of court, judge, and originating case number.** The front cover of each brief must contain the name of the court, the judge whose judgment is being appealed, and the originating case number.

      (2)    **Oral argument statement.** The front cover of each party's first brief must state whether oral argument is requested. If argument is requested, a statement of the reasons why argument is necessary must follow the brief's conclusion.

      (3)    **Statement of related cases.** At the end of the Table of Authorities, the first brief filed by each party must list all prior or related appeals, with appropriate citations, or a statement that there are no prior or related appeals.

      (4)    **Glossary.** All briefs containing acronyms or abbreviations not in common use (other than names of parties) must include a Glossary on a page immediately following the Table of Authorities.

      (5)    **Brief Attachments and the Table of Contents.** All attachments to briefs, including those required by Rule 28.2(A), shall be identified and included in the Table of Contents.

      (6)    **Citizenship Statement in Appeals Based on Diversity Jurisdiction—Identifying Members and Partners.**

           Where the asserted basis for federal jurisdiction is 28 U.S.C. § 1332 and a party or parties to the appeal are formed as a limited liability company (LLC), partnership, or any other unincorporated entity, each party so defined must:

93

      (a) include in that party's brief a statement identifying each of its members and their states of citizenship; and

      (b) submit a supplemental statement if any of the required information changes.

*See Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 382 (2016) (for diversity jurisdiction, the citizenship of an unincorporated entity depends on the citizenship of all of its members).

### 28.3  Disfavored practices.

(**A**)  **Motions to exceed word counts are disfavored**. Motions to exceed the word count will be denied unless extraordinary and compelling circumstances can be shown. A motion filed within 14 days of the brief's due date must show why earlier filing was not possible.

(**B**)  **Incorporating by reference disapproved.** Incorporating by reference portions of lower court or agency briefs or pleadings is disapproved and does not satisfy the requirements of Federal Rules of Appellate Procedure 28(a) and (b).

(**C**)  **Use of passim discouraged.** Use of passim as a citation form is discouraged. Parties are encouraged to include page references for all authorities and sources.

94